# Exhibit A

# J.B. Hunt Transport, Inc.

## Intermodal Independent Contractor Operating Agreement

This agreement is made this __10__ day of __Nov.__, 20 __11__

between __DUY NAM LY__ as "Contractor" and J.B. HUNT

TRANSPORT, INC., as "Carrier," and shall begin on the date and time appearing on Appendix

A. This agreement shall end at midnight exactly one year from the start date appearing on

Appendix A. In consideration of the mutual promises made in this agreement, Contractor and

Carrier agree as follows:

## PREAMBLE

J.B. HUNT TRANSPORT, INC. is a motor carrier authorized to transport freight in

interstate and intrastate commerce. Contractor is the owner of motor vehicle equipment which

Contractor desires to lease to Carrier with qualified driver(s). The parties acknowledge this Lease

must follow certain regulations of the United States Department of Transportation ("USDOT")

including, but not limited to, safety and leasing regulations. Contractor agrees to provide the

motor vehicle identified below and a driver for that motor vehicle. The driver and the motor

vehicle will be in compliance with all USDOT requirements. Carrier will pay Contractor in

accordance with the terms of this Lease Agreement.

## AGREEMENT

1.    Identity of Parties:

Contractor is:

Full Name: __DUY NAM LY__

Address: __716 Rio Del Sol Ave Montebello, CA 90640__

Phone Number: __(626) 789-4406__

SSN or FEIN No. if a corporation: __[redacted]__

Exhibit A
Page 2

1

Carrier (also referred to as "JBHT") is:

J.B. HUNT TRANSPORT, INC.
615 J. B. Hunt Corporate Drive, PO Box 425
Lowell, Arkansas 72745
Phone: 479-820-0000

2. <u>Identification of Equipment to be Leased:</u>  Contractor leases to

Carrier the motor vehicle or vehicles described as follows:

**Tractor**

Year: _____ 2005 _____

Make/Model: _____ FREIGHTLINER / COLUMBIA _____

State Registration: _____ IN _____

Vehicle Identification Number: _____ 1FUJAGCK55LN57129 _____

3.   <u>Receipt of Equipment:</u>   The equipment which Contractor will lease to Carrier pursuant to

the terms and conditions of this Agreement is identified in the attached Appendix A,

which, when executed, will show the date and time of the receipt of the equipment by

Carrier.  Upon termination of this lease, or when possession by Carrier of the equipment

identified in Appendix A ends, Contractor shall give Carrier or its authorized

representative a receipt evidencing the date and time of the return of the equipment to

Contractor's control.

4.   <u>Exclusive Use:</u>   Contractor agrees neither it nor its drivers shall have authority to enter

into any agreement for the use of the leased equipment covered by this Agreement for the

benefit of any person other than Carrier without prior written consent of Carrier.

5.   <u>Payment to Contractor:</u>   Reference the Intermodal Addendum to the Independent

Contractor Operating Agreement Attachment B.

6.   <u>Time and Conditions of Payment:</u>  Payment to the Contractor shall be made within fifteen

(15) days after submission of the necessary delivery documents, logbooks required by the

USDOT, and those documents necessary for Carrier to secure payment from the shipper,

2

Exhibit A
Page 3

which are the bill of lading, signed delivery receipt or other proof of delivery acceptable to Carrier.  Payment of compensation to Contractor shall not be contingent upon submission of a bill of lading to which no exceptions have been taken.  In the case of a C.O.D. shipment only, Contractor must deliver the certified check or money order due the Carrier and any other documents necessary for Carrier to secure payment from the shipper. Carrier shall provide Contractor with notice at the time of dispatch that the particular shipment is a C.O.D. delivery, specifying which documents are required to be delivered to Carrier.

7.    Term and Termination:    The term of this Agreement will commence upon execution and delivery of the receipt of equipment to Carrier, as reflected by Appendix A, and shall end at midnight one year later.  It shall be renewed and extended automatically from year to year thereafter unless cancelled or terminated under the provisions of this Lease Agreement.  Either party may terminate this Agreement upon 30 days written notice. Carrier may terminate this Agreement upon written notice or by on-board written transmission in the event of serious breach by Contractor.  A serious breach shall be defined as (1) evidence of a felony committed while in operation of the leased equipment; (2) evidence of a chargeable personal injury accident; (3) violations of U.S. DOT safety regulations which imperil Carrier's safety rating; (4) unauthorized use of leased equipment; and (5) and any breach of service obligations which imperil carrier's license, permits, insurance, or customer relations.

8.    Exclusive Possession and Responsibilities:   Carrier shall have exclusive possession, control and use of the equipment for the duration of the Lease.  Carrier shall assume complete responsibility for the operation of the equipment for the duration of the Lease. Contractor specifically agrees it will not use the authorities, placards or vehicle identification numbers of Carrier to perform services for any other person, firm or company without having the express written consent of Carrier.

9. <u>Status as Independent Contractor:</u>   At all times during the period this lease is in effect, Contractor shall be an independent contractor with respect to the transportation operations conducted on behalf of the Carrier.   Neither Contractor nor its employees are to be considered employees of Carrier at any time, except as may be specified by federal or state law.   Neither party is the agent of the other nor shall have the right to bind the other by contract or otherwise except as herein specifically provided.

10. <u>Driver Qualification:</u>   Contractor warrants that each driver of the Equipment shall be qualified to drive under USDOT regulations which require among other things the driver to have a validly issued Commercial Driver's License, health card and any other documentation required by the USDOT.   Contractor agrees that the person will not operate the Equipment during the term of this lease without first being qualified by Carrier.  Contractor acknowledges its driver must pass all of the USDOT tests, including drug and alcohol tests and agrees to submit to and bear the costs of such testing. Contractor further agrees to be solely responsible for compensating its driver, including but not limited to, wages, withholding taxes, FICA, worker's compensation, overtime and any and all other costs associated with employing its driver.

11. <u>Carrier's Duty:</u>   During the term of this Agreement, Carrier agrees to make freight available to Contractor for transportation by Contractor; provided, however, Contractor understands and agrees that in no event shall Carrier guarantee to Contractor any specific number of miles or loads, any specific amount of freight or any specific times, dates or routes.

12. <u>Warranties of Contractor:</u>   Contractor agrees and warrants as follows:

     a.    <u>Contractor</u> is the owner of the equipment described in this lease, within the meaning of 49 C.F.R. §376.2(d).

     b.    <u>Equipment Warranties.</u> The above-described equipment is in good condition and fully complies with all safety regulations and requirements of the

4

USDOT and that Contractor will maintain such equipment in good condition and compliance during the term of this lease. Costs of all expenses to maintain that equipment in good and lawful condition in compliance with USDOT standards shall be borne by Contractor. The U.S. Department of Transportation Federal Motor Carrier Safety Regulations found at 49 C.F.R. 396 et seq. or any successor regulations specify that all motor vehicles subject to an independent contractor operating agreement be subjected to systematic inspections and repairs. Contractor hereby agrees that, pursuant to said regulations and at such times as Carrier may reasonably require, Contractor shall cause the Equipment to be inspected at such facilities as Carrier shall have approved (such approval not to be unreasonably withheld) and to effect needed repairs at Contractor's sole cost and expense. Contractor shall submit to Carrier records of inspections, repairs and maintenance as required by Federal Safety Regulations.

c.      Expenses. Contractor shall bear the operational expenses incurred in performing the transportation services requested by Carrier under this lease agreement. Those expenses are limited to: all fuel, oil, tires and equipment, accessories, or devices used in connection with the operation of the equipment; maintenance costs including repairs; taxes and assessments, fuel and fuel use taxes; fines and penalties resulting solely from the acts or omissions of Contractor and its employees; insurance costs relating to insurance coverage required to comply with this agreement; federal highway use tax on the equipment; federal, provincial, state or city income taxes, and any self-employment or payroll taxes; and any sales, use, excise and other taxes due and owing to ownership or operation of the equipment. Contractor shall also bear any expenses necessary to maintain the equipment in compliance with all applicable federal and state safety laws and regulations.   Contractor shall be responsible for all costs associated with

5

detention, loading and unloading.  Carrier will compensate Contractor for such

services in accordance with the schedule set forth in Appendix B. Upon

termination of this lease if there are any costs associated with unused portions of

any of the above referenced operational expenses, those costs shall be borne by

Contractor unless otherwise specified in this lease.

     d.    <u>Services and Compliance</u>.  Contractor agrees to transport the freight

tendered to it by Carrier from point of origin to point of destination in a reasonable

and timely manner.  If Contractor does not or cannot complete the load, Contractor

will be responsible for the costs of repowering the load – unless Carrier's acts or

omissions have caused Contractor's inability to complete the load.  Contractor and

its drivers shall comply with all laws, rules and regulations of the USDOT and

other federal, state and local governmental agencies.  Nothing contained herein

shall require the Contractor to violate the safe transportation of the equipment or

the hours-of-service rules of the USDOT, and Contractor may refuse to transport

the freight tendered to it by Carrier if Contractor believes that the transportation

would result in such violation.

     e.    <u>Use of Carrier Equipment</u>.  Contractor will be responsible for Carrier's

actual costs in recovering any "non-owned" trailer for which Contractor has

accepted dispatch and which he/she has also wrongfully abandoned.  For the

purposes of this Agreement, a "non-owned" trailer is a trailer that either Carrier or

Carrier's customer has provided to Contractor for providing his/her transportation

services for Carrier.  In the event Contractor uses the trailers for any other

purpose, Carrier shall, in addition to any other remedies, be entitled to liquidated

damages for the loss of use of each such trailer in the amount of twenty cents

($0.20) per mile of unauthorized use plus fifty dollars ($50.00) for each day, or

portion of a day, of such unauthorized use.  Unauthorized use of the trailers shall

6

constitute a material breach of this Agreement. Carrier shall have the right to deduct the amount of such liquidated damages from the Contractor's settlements or escrow funds.

f.    <u>Service Standards</u>. Contractor shall perform freight transportation services in compliance with all applicable laws and regulations and further shall make every reasonable effort to perform freight transportation services hereunder in a prompt, competent and diligent manner consistent with Carrier's standards of customer service and satisfaction. Contractor shall immediately report to Carrier any disagreements, altercations or other circumstances or disputes involving shippers or their agents, employee or consignees that would tend, in any way, to detract from the quality and reliability of Carrier's service or to damage Carrier's reputation.

g.    <u>Acceptance of Loads</u>. Contractor shall have the right to reject any shipment tendered to it by Carrier. When Contractor accepts a shipment tendered to it for transportation, Contractor agrees to perform its services hereunder in such a manner as to satisfy the requirements of Carrier's customers including, but not limited to, complying with pick-up and/or delivery dates and times specified by Carrier's customers and by complying with the Carrier's operating policies and procedures. The failure of the Contractor to fulfill this obligation will constitute a material breach of this Agreement. Contractor agrees that it is liable and will reimburse Carrier for the entire amount of any claims paid by Carrier as the result of late delivery of shipments accepted by Contractor where such late delivery is the Contractor's fault. Carrier shall have the right to deduct the amount of such claims from Contractor's settlements or escrow account.

7

h.    <u>Taxes.</u>

(1)    <u>Income Taxes</u>.  Contractor shall pay all taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government on account of the receipt of income by Contractor for freight transportation services rendered under this Agreement.  Contractor understands and agrees that Carrier shall not be required to withhold any income or other taxes imposed on income earned by Contractor hereunder and Contractor agrees to take any action necessary to ensure that Carrier is not subject to such a requirement. Contractor shall file all Federal, Provincial, State or local government tax forms and returns as required in connection with the receipt of income by Contractor and shall pay when due all taxes and contributions reported in such forms and returns. Contractor shall furnish Carrier with such evidence of compliance with the foregoing as Carrier shall reasonably request.

(2)    <u>Operating Taxes</u>.  Contractor shall pay all Federal Heavy Vehicle Use taxes, fuel taxes, road taxes, mileage taxes, property taxes and all other taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government related to the use and operation of the equipment leased by Contractor to Carrier hereunder.  Carrier will set aside funds from the Contractor's weekly settlement for this purpose and will reconcile actual Contractor liabilities on a quarterly basis.  Carrier will file all Federal and State government tax forms and returns as required in connection with the use and operation of the equipment hereunder.

(3)    <u>Employment Taxes</u>.  Contractor shall pay or withhold all employment-related taxes and fees and other related taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government by virtue of Contractor's status as an employer or sole proprietor, as

8

Exhibit A
Page 9

the case may be.  Contractor shall file all Federal, Provincial, State or local

government tax forms and returns as required in connection with its status as an

employer or sole proprietor and shall pay or withhold when due all taxes and

contributions reported in such forms and returns.  Contractor shall furnish Carrier

with such evidence of compliance with the foregoing as Carrier shall reasonably

request.

     (4)    Toll Operating Costs.  Carrier shall provide Contractor an

E-Z Pass to be permanently attached to the tractor for toll transactions in all E-Z

Pass participating states for the duration of this Agreement.  Carrier shall also

provide toll charge cards to Contractor for other states as needed.  Carrier will

deduct $28 from Contractor as a deposit for the E-Z Pass and $5 for each

additional toll card issued.  These deposits will be returned to Contractor

following the termination of the lease, provided the E-Z Pass and toll card(s) are

returned to Carrier.  Carrier will charge Contractor for any toll violations incurred

by Contractor.

13. Insurance:  Carrier will provide primary insurance for the protection of the public pursuant to

USDOT regulations presently found under 49 U.S.C. 13906. Non-Trucking "Bobtail"

insurance must be provided by Contractor in the amount of $1,000,000 per occurrence and

Carrier will be provided with a suitable certificate of insurance naming Carrier as additional

insured. If Contractor desires to purchase insurance through Carrier's insurance agent,

Contractor will so signify by signing Appendix C of this Agreement and will authorize a

deduction from compensation in the amount shown thereon. Carrier will provide Contractor

with a copy of any policy for which a deduction is agreed to upon request.

14. Worker's Compensation/Occupational Accident Insurance:

    a.    Insurance.  During the term of this Agreement, Contractor shall, at Contractor's

expense, carry and maintain in full force and effect either worker's compensation

9

and other employer's liability insurance as required by applicable law covering all persons employed by Contractor, or a substitute policy acceptable to Carrier if Contractor is a sole proprietor, such as occupational accident insurance providing similar coverage and benefits, in connection with the performance of freight transportation services hereunder as will fully protect Contractor from any and all claims under applicable law.

b.   <u>Certificate of Insurance</u>.  All such insurance policies required under Paragraph 14(a) above shall be non-cancellable and non-amendable without at least thirty (30) days prior written notice to Carrier.  Such insurance may be furnished under any blanket policy carried by Contractor or under a separate policy therefor. Contractor shall furnish to Carrier the most current certificates of insurance for such policies.  Carrier shall be named as an additional insured on Contractor's policy.  Contractor acknowledges that its worker's compensation or occupational accident insurance shall be its sole source of recovery and that no claim to Carrier's own worker's compensation policy exists at any time during the term of this contract.

c.   <u>Purchase of Policy through Carrier</u>.  In the event Contractor purchases the worker's compensation and/or occupational accident insurance above, through the Carrier for the Contractor's convenience, Contractor shall pay the premiums therefor in advance to Carrier.  Such premiums shall be refundable only to the extent allowed under the terms and conditions of the insurance policy.  If Contractor fails to pay Carrier the premium for such policy when due, Carrier shall make the necessary set-offs and deductions pursuant to paragraph 22-23 below. Carrier shall furnish to Contractor the most current certificates of insurance for all such policies purchased through Carrier, and Carrier shall otherwise comply with the requirements of 49 C.F.R. §376.12(j)(2) or any successor regulations.

Exhibit A
Page 11

      d.     <u>Disclaimer</u>.  With respect to the insurance policy purchased through the Carrier for the Contractor's convenience pursuant to Paragraph (c) above, Contractor understands and agrees that Carrier is not an agent of nay insurance company that may issue such insurance coverage.  CONTRACTOR UNDERSTANDS AND AGREES THAT CARRIER DOES NOT MAKE ANY REPRESENTATION THAT ANY INSURANCE OFFERED TO CONTRACTOR BY CARRIER IS ADEQUATE TO COVER CONTRACTOR'S EXPOSURES.  Under no circumstances shall Contractor attempt to hold Carrier responsible for any failure on the part of any insurance company to honor the terms and conditions of any policy Contractor may purchase through Carrier.

15.  <u>Purchase of Items from Carrier:</u>  Contractor is not required to purchase or rent any products, equipment, or services from Carrier as a condition of this Agreement.  Any product, equipment, or service which Contractor elects to purchase or rent from Carrier shall be set forth with specificity in this Agreement and Appendix B and C hereto.

16.  <u>Shortage, Loss or Damage to Cargo:</u>  Contractor will be responsible for the loading and unloading of freight under this Agreement, and shall be compensated in the event of hand loading or unloading in accordance with Appendix B. Contractor is responsible for making sure the freight is properly counted and is in apparently good condition when loaded and is responsible for viewing the freight when being unloaded.  If there is any loss, shortage or damage of the freight when in Contractor's possession, Contractor shall indemnify Carrier as specified in Paragraph 20 of this Agreement.  In the event of any such claim, Carrier will deliver to Contractor a written explanation and itemization of any deductions for cargo or property damage made from Contractor's compensation prior to taking such deduction from Contractor's compensation.

17.  <u>Trailers:</u>  In the event either Carrier or a customer provides a trailer for the use of Contractor in providing its transportation services, Contractor shall inspect the trailer for prior damage and

Exhibit A
Page 12

road worthiness.  If Contractor notices any damage to the trailer or road unworthiness,
Contractor shall immediately notify Carrier. Contractor shall not commence operation until the
problem has been repaired.  Any physical damage to the trailer while in the possession of
Contractor will be assessed to Contractor if no notification has been presented to Carrier,
except as provided under Paragraph 18 of this Agreement.  The parties acknowledge CDL
drivers are required to inspect all equipment including trailers before commencing
transportation.  Upon notification, Carrier will cause repairs to the trailer to be made as soon as
possible.

18. <u>Fines, Penalties, Court Costs:</u>  Contractor will reimburse Carrier for the actual cost to Carrier
of all fines, penalties and reasonable attorney fees and costs resulting from Contractor's
improper operation of the Equipment.  Contractor will notify Carrier if it has an overweight
load so that corrective action may be taken.  Except when the violation results from the acts or
omissions of Contractor, Carrier shall assume the risks and costs of fines for overweight and
oversized trailers when the trailers are preloaded, sealed, or the load is containerized, or when
the trailer or lading is otherwise outside of Contractor's control and for improperly permitted
over-dimension and overweight loads and shall reimburse the Contractor for any fines paid by
Contractor.  Contractor shall assume responsibility for inspecting and weighing all loads prior
to departure to ensure that the trailers are loaded and otherwise in accordance with all
applicable law and regulations.  Any penalties or fines resulting from Contractor's failure to
undertake such responsibilities promptly and properly or failure to take appropriate action to
bring the loads and trailers in compliance with all applicable law and regulations, including
fines and penalties for overweight trailers shall be deemed to be the obligation of Contractor, if
such action is within the control of Contractor.

19. <u>Administrative Costs:</u>  Contractor agrees to pay to Carrier a fee of $50.00 per year to
compensate Carrier for the cost of qualifying contractor's drivers under US DOT regulations
as set forth in paragraph 10 of the lease.  Further, Contractor agrees to bear the costs associated

12

Exhibit A
Page 13

with monies advanced to Contractor in accordance with paragraphs 22 and 23 of this Agreement.

20. <u>Indemnification:</u>   Contractor agrees to indemnify, defend, save and hold harmless Carrier from any and all claims, fines, or other expenses (including reasonable attorney fees) imposed by reason of Contractor's (or Contractor's employee's or driver's) wrongful actions, wrongful omissions, negligence, or wrongful violation of the terms of this Agreement, when such expenses are based upon the following: damage to property; any violation by Contractor of USDOT regulations or those regulations of any state or local authority; the loss, shortage, or damage to cargo while in Contractor's possession; the damage to owned trailers while in the Contractor's possession.  When any claim, fine, or other expense for which Contractor must indemnify Carrier is covered by Carrier's insurance, Contractor will only have to indemnify Carrier for the amount of the insurance deductible that Carrier actually pays for such covered expense, minus any related insurance proceeds due Carrier.  The provisions of this paragraph are subject to the exceptions contained in Paragraph 18 above.  This indemnification shall apply to the first $500.00 of any cargo loss and to the first $1,500 per occurrence for property damage and personal injury resulting from preventable accidents.

21. <u>On-Board Communications:</u>  A portion of the cost of establishing and maintaining on-board communications between Carrier dispatch and the leased unit shall be borne by the Contractor. Carrier's customers require each owned or leased tractor to carry compatible on-board equipment which Contractor, at its option, may purchase, install and maintain.  If Contractor elects to rent such equipment from Carrier, Contractor will reimburse Carrier in accordance with paragraph 23.  Carrier's duties and obligations with respect to on- board communication devices are set forth in Appendix E.

22. <u>Charge-Back Items:</u>  Carrier may, at its option, advance monies directly to Contractor for the benefit of Contractor, including advances for single state registration, fuel, fuel advances, cash advances, and repair costs. Contractor hereby agrees that Carrier may deduct from

13

Exhibit A

Page 14

Contractor's compensation the costs of fuel advances, cash advances, and cash advance charges and items which Contractor elects to purchase or rent from Carrier pursuant to paragraph 15. Contractor further agrees that Carrier may deduct from Contractor's compensation for shortage, loss and damage to cargo that Contractor is responsible for under Paragraph 16, for damage to trailers that Contractor is responsible for under Paragraph 17, for re-powering and abandoned trailer recovery costs that Contractor is responsible for under Paragraph 12, for indemnification in accordance with paragraph 20, and for insurance charges that Contractor is responsible for under Appendix C. Contractor further authorizes Carrier to deduct whatever amount is required by law in the event of a garnishment or attachment. Carrier is authorized to deduct for any federal, state or provincial taxes, fines, or benefits that Carrier is required to pay as a result of Contractor's failure to comply with the terms of this Agreement. Carrier is authorized to deduct the replacement cost of any equipment issued by it to Contractor which is lost or destroyed and the repair cost for damaged items. Other miscellaneous charge-back items and the amount of authorized deductions are set forth in Appendix B. The computations of the above deductions are stated in Paragraph 23 below.

23. <u>Computation of Deductions/Copies:</u>   All deductions from Contractor's compensation shall be equal to the exact net amount paid by Carrier and charged by the provider of the item charged, minus any related rebates, discounts, or refunds due Carrier. The computation of deductions will be made as follows:

    a.   <u>Cash Advances Requested by Contractor.</u>   Carrier pays a fee for each transaction requested by Contractor (or its driver). The amount to be deducted from Contractor's compensation for each advance will be the amount of the advance plus the provider's transaction charge, which is currently <u>$1.20</u> plus an <u>$8.80</u> administrative charge. Should the transaction provider alter its fee, Carrier shall provide Contractor written notice of the amount of the new charge before such new amount is deducted from Contractor's compensation.

Exhibit A
Page 15

b.      Driver Qualifications/Related Administrative Costs.  Carrier will deduct from Contractor's compensation the exact net amount paid by Carrier and charged by the provider(s) of driver qualification services, less any related rebates, discounts, or refunds due Carrier.  Carrier will also deduct 15% of such net amount as an administrative fee.  Such driver qualification services and fees are as follows:

No driver qualification fees will be charged under this agreement.

c.      Insurance.   The amount of any insurance premium to be charged back to Contractor shall be shown on Appendix C.

d.      On-board Communications.  The charge to Contractor for onboard communications which is installed and maintained by Carrier shall be $25.00 per month for a 3-piece unit and $50.00 per month for a 2-piece unit, deducted from Contractor's weekly settlement.

e.      Fines/Penalties/Court Costs.   The amount of chargeback for costs and expenses to Carrier within the limitations of Paragraphs 18 and 20 of this Agreement shall be the exact net amount paid by Carrier and imposed by the charging authority, minus any related rebates, discounts, or refunds due Carrier.  The amount of reasonable attorney fees and costs due Carrier under Paragraphs 18 and 20 shall be equal to the actual fees and costs paid by Carrier in connection with the particular court proceeding.

f.      Shortage, Loss and Damage.  The amount for shortage, loss or damage to freight that Contractor must pay to Carrier pursuant to Paragraph 20 of this Agreement shall be equal to the exact net amount paid by Carrier, minus any related rebates, discounts, or refunds due Carrier and subject to the per occurrence limitations set forth above.  When any claim, fine, or other expense for which Contractor must indemnify Carrier under Paragraph 20 is covered by Carrier's

insurance, Contractor will only have to pay to Carrier the actual cost to Carrier for such covered expense, minus any related insurance proceeds due Carrier. The amount of reasonable attorney fees and costs due Carrier under Paragraph 20 shall be equal to the actual fees and costs paid by Carrier in connection with the particular court proceeding. Contractor's maximum liability is $500 per incident.

g. <u>Repowering/Recovery of Trailers</u>. The repowering charge will be computed by the actual amount paid to driver/contractor to reposition its equipment and deliver the freight to the customer pursuant to Paragraph 12(d) of this Agreement. The abandoned trailer recovery charge pursuant to Paragraph 12(e) of this Agreement will be computed by actual cost to Carrier to recover the abandoned trailer.

h. <u>Base Plates and Single State Registration</u>. Carrier shall pay the costs associated with base plates and compliance with single state registration.

i. <u>Other Charge-Back Items</u>. For any additional charge-back items specifically authorized under the terms of this lease, but not specifically enumerated in this paragraph, the computation of the deduction and the calculation method of said deduction will be the exact net amount paid by Carrier and charged by the provider of the item charged, minus any related rebates, discounts, or refunds due Carrier. Carrier may make deductions for operating taxes on an accrual basis.

j. <u>Copies</u>. Upon request, Carrier will provide Contractor with all documentation supporting the validity of the charge-back items under the terms of this Agreement, and the validity of all deductions taken from Contractor's compensation.

k. <u>Equipment Purchase Agreement</u>. If Contractor has elected to acquire ownership of the subject equipment through a lease purchase agreement with

16

Exhibit A
Page 17

Carrier or its affiliate or through a sublease guaranteed in whole or in part by Carrier, the terms and conditions of that agreement will be attached as Appendix F and incorporated by reference. *Note: Additional chargeback items may be set forth in Appendix B if applicable.*

24. **Escrow Funds:** Carrier may require an escrow fund under the following terms:

    a.  <u>Amount</u>.  The minimum amount of the escrow fund or performance bond which Carrier may require from Contractor is <u>$1,500.</u>

    b.  <u>Specific Items</u>.  The specific items for which Carrier may deduct from the escrow fund under the terms of this lease are those items specified in the <u>Chargeback</u> and <u>Computation of Deductions</u> Paragraphs and Appendix B and C of this lease. The failure of Carrier to take monies from such fund for the benefit of Contractor will not be waived by Carrier if Carrier does not deduct those amounts from previous settlements.

    c.  <u>HVUT Set-Off</u>.  Notwithstanding Contractor's obligation to pay the Federal Highway Vehicle Use Tax as required under Paragraph 12(h) above, Contractor and Carrier hereby agree that Carrier shall file and submit payment on behalf of Contractor for such tax.  In order to submit payment for the Federal Heavy Vehicle Use Tax, Carrier shall set-off additional amounts from IC Compensation as set forth in the Compensation and Fee Schedule over a period of time leading up to the filing date as may be necessary until the required amount to pay such tax has been accumulated and deposited in the Escrow Funds.

    d.  <u>Right to Replenish Funds</u>.  In the event Escrow Funds are reduced below the required balance as a result of deductions made therefrom pursuant to the terms of this agreement, Carrier shall have the right to replenish the Escrow Funds by setting off amounts from compensation due Contractor over a period of time as

17

Exhibit A
Page 18

may be necessary to reach again the required balance at the rate of $50.00 per week.

e.  Accountings.  While the escrow fund is under the control of Carrier, Carrier shall provide an accounting to the Contractor of any transaction involving the escrow fund by clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund. Furthermore, the Contractor has the right to demand at any time an accounting of any transactions involving the escrow fund.

f.  Interest.  While the escrow fund is under the control of Carrier, Carrier shall pay interest on the escrow fund on at least a quarterly basis.  For purposes of calculating the balance of the escrow fund on which interest must be paid, Carrier will deduct a sum equal to the average advance made to the Contractor during the period of time for which interest is paid.  The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91 day, 13-week Treasury bills as established by the Department of Treasury at the beginning of the quarter.

g.  Return of Escrow Fund.  At the time of the return of the escrow fund, Carrier may deduct monies for those obligations incurred by the Contractor which have been previously specified in this lease, and Carrier shall provide a final accounting to the Contractor for all such final deductions made to the escrow fund. In no event shall the escrow fund be returned later than 45 days from the date of termination of this lease.

h.  Excess Funding.  Contractor at its election may deposit funds above the required escrow minimum with Carrier for Contractor's unrestricted use.  Carrier will fully comply with Section (a) through (e) with respect to such funds reserving its full rights of deduction.

25. Identification of Equipment and Return of Identification Upon Termination:  During the period

of the lease, and while the equipment is being operated on behalf of Carrier, the equipment

shall be identified in accordance with all applicable federal regulations.  Contractor agrees that

upon termination of this Agreement, Contractor will promptly return all placards and will no

longer operate its equipment under Carrier's authority from the USDOT or other state

agencies.  If Carrier's identification numbers are "painted," Contractor will warrant or exhibit

to Carrier or its agent that the painted numbers have been removed from the equipment.

Contractor warrants it will not perform motor carrier service under Carrier's USDOT

operating authority or have Carrier's USDOT numbers or state numbers on the equipment as

working for Carrier while not dispatched by Carrier.  Upon termination of the lease, Carrier

may withhold final payment to Contractor until Contractor either returns the above-referenced

identification devices, or sends a letter to Carrier certifying that such devices have been lost or

stolen. If Contractor does not provide Carrier with a receipt for the equipment upon

termination and either return the above-described identification devices or offer evidence that

painted signage has been removed, Carrier shall have the right to immediate possession of the

equipment to secure removal of signage and Contractor shall bear all reasonable cost,

including attorney's fees to accomplish this result.

26. Surrender of Possession at Termination:  In the event of breach or default by Contractor of its

obligation to surrender possession of any trailer, base plate, or equipment as reflected in

Appendix B, Contractor shall be liable to Carrier for all expenses and damages including, but

not limited to, attorney's fees, court costs and loss of use, incurred by Carrier in reacquiring

possession.  In the event Contractor retains custody of property of Carrier or otherwise fails or

refuses to deliver possession thereof to Carrier, upon demand or upon termination of this

Agreement, in addition to any other remedies available to Carrier, Contractor shall be liable to

Carrier in the amount of Fifty Dollars ($50.00) for each day or portion thereof that the item is

not returned to the actual or constructive possession of the carrier, not as a penalty, but as liquidated damages to cover the cost to Carrier of the loss of use.

27. <u>Condition Upon Surrender of Possession</u>: Contractor agrees it will surrender possession of items to Carrier in as good a condition as they were when Contractor received them, normal wear and tear from use excepted.

28. <u>Effect of Termination</u>: Upon termination of this Agreement as to any or all tractors leased hereunder:

a. Contractor shall do all of the following: (A) submit to Carrier all necessary delivery documents and other paperwork showing full and proper performance of all trips, (B) all identification, permits, plates and decals of Carrier on each tractor shall have been removed by Contractor and returned to Carrier in accordance with the provisions of paragraph 26 above, or if such identification, permits, plates and decals have been lost or stolen, Contractor shall have given written notice to Carrier certifying that same have been removed from the tractor, (C) any OBC shall have been returned to Carrier in accordance with the provisions of paragraph 21 above. (D) all E-Z Pass and toll cards have been returned to Carrier and (E) any other Carrier-issued equipment utilized by Contractor shall have been returned to Carrier in accordance with the provisions of paragraph 12 above.

b. Notwithstanding anything contained in paragraph 28(a) above to the contrary, and without affecting Carrier's rights under paragraph 20 above, the final IC compensation settlement, and funds on deposit in the Escrow Funds, shall be paid and disbursed to Contractor within forty-five (45) days of termination. Carrier shall provide Contractor with an accounting of all such final settlements and disbursements, and any set-offs and deductions thereto, as to any or all tractors so terminated.

20

Exhibit A
Page 21

c.        Neither party hereto shall, by reason of the termination of this Agreement as to any or all tractors leased hereunder or otherwise, be liable to the other for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated revenues or on account of any expenditures, investments or commitments made in connection with the business or goodwill of Contractor or Carrier or for any other loss arising by reason of the termination hereof.  Any effect of termination on Contractor's rights with respect to any lease/purchase options concerning involved equipment will be set forth in Appendix C.

29.  <u>Assignment</u>:  This Agreement is not assignable by either party without the written consent of both parties.

30.  <u>Entire Agreement</u>:  This Agreement, and Appendices A-E, constitute the entire agreement and understanding between the parties and shall not be modified, altered or changed without the express written consent of both parties.

31.  <u>Waiver</u>:   No waiver by Contractor or Carrier of any provision of this Agreement shall be deemed to be a waiver of any other provision hereof.

32.  <u>Multiple Copies</u>:   This Agreement is made in multiple copies.  Contractor shall keep one (1) copy for himself or herself, and keep one (1) copy in the equipment at all times while operating under dispatch for Carrier.

33.  <u>Jurisdiction and Venue</u>:   This Agreement is executed in Arkansas and any legal proceeding, whether state or federal, involving this Agreement shall be brought in the State of Arkansas.

**J.B. HUNT TRANSPORT, INC.**          **INDEPENDENT CONTRACTOR**

Signature: _____          Signature: _____

Printed Name: <u>Don Ingersoll</u>          Printed Name:  <u>DUY NAM LY</u>

Title: <u>Vice President of Operations</u>          Date:  <u>11 - 10 - 11</u>

### J.B. Hunt Transport, Inc.
#### Intermodal Addendum To The
#### Intermodal Independent Contractor Operating Agreement

**THIS ADDENDUM** is made to the Independent Contractor Operating Agreement ("IC Agreement"), dated _11 - 10 - 11_ between J.B. Hunt Transport, Inc. ("Carrier") and _DUY NAM LY_ ("Contractor").  The terms of this Addendum shall be effective upon the _11 - 10_ , 20 _11_ .

**WHEREAS,** Contractor has agreed to provide transportation services for Carrier as an independent contractor; and,

**WHEREAS,** Carrier and Contractor have agreed that such services are to be rendered strictly at one or more of Carrier's Intermodal **Locations**.

**NOW, THEREFORE,** Contractor and Carrier agree that the following terms and conditions are hereby added to the IC Agreement:

1. Addendum:

    a.  Appendix A - Any specific customer service expectations with which Carrier is bound to comply at any Intermodal locations shall be attached as an Appendix A to this Addendum. As Contractor may be required to perform services at one or more Intermodal locations each Appendix A shall name the location to which it applies. Contractor shall comply with these customer services requirements in providing services to Carrier.

    b.  Appendix B - The original IC Compensation table from Appendix B of the IC Agreement shall be superceded by project-specific IC Compensation Tables, copies of which shall be negotiated and attached to the Addendum as one or more Appendices B.  Project-specific IC Compensation Tables are necessary since Intermodal negotiates varied rates of payment with each Intermodal customer. Therefore, each IC Compensation table will need to be negotiated separately to ensure that payment to Contractor falls within the parameters of Intermodal pricing models for each separate **location**.

2.  All other terms and conditions of the IC Agreement remain unchanged hereby.

| **J.B. HUNT TRANSPORT, INC.** | **INDEPENDENT CONTRACTOR** |
|---|---|
| Signature: _Donald J. Ingersoll_ | Signature: _____ |
| Printed Name: _Don Ingersoll_ | Printed Name: _DUY NAM LY_ |
| Title: _Vice President of Operations_ | Date: _11 - 10 - 11_ |

Exhibit A
Page 23

SS# ████████████

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

#### Appendix C:  Insurance Appendix

This Appendix relates to the Owner/Operator Contract and Lease Agreement between J.B. HUNT TRANSPORT, INC. ("Carrier") and the Contractor named below:

Contractor is not required to purchase insurance from or through Carrier.  In fact, Carrier desires Contractor to purchase insurance on its own and to provide certificates of insurance pursuant to the Agreement.  If Contractor, at its option, desires to purchase any insurance through Carrier's independent agent, this Appendix must be signed by Contractor and Carrier.

Contractor desires to purchase the following insurance through Carrier's independent insurance agent and have Carrier advance the cost for the same.  Contractor hereby authorizes Carrier to deduct from compensation otherwise owed to Contractor for this insurance.  The calculation for the following insurance costs to the Contractor will be the exact net amount of the premium paid by the Carrier and charged by the insurer for that coverage, less any related rebates, discounts, or refunds due Carrier.

a.   Bobtail Insurance:  Contractor hereby agrees to pay $ 18.00 per month for Bobtail Insurance.
Initial if Yes  D.L
Initial if No

b.   Physical Damage:  Contractor hereby agrees to pay $ 25.50 per month for Physical Damage Insurance.
Initial if Yes  D.L
Initial if No

c.   Occupational Accident:  Contractor hereby agrees to pay $ 148.28 per month for Occupational Accident Insurance.
Initial if Yes  D.L
Initial if No

Carrier will provide a copy of any such policy upon the request of Contractor.  Carrier will provide a certificate of insurance for each such policy, including the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage.  Contractor hereby authorizes Carrier to deduct from its compensation the amounts specified above.

**J.B. HUNT TRANSPORT, INC.**

Signature: _Donald J. Ingersoll_

Printed Name: Don Ingersoll

Title: Vice President of Operations

**INDEPENDENT CONTRACTOR**

Signature: _____

Printed Name: DUY NAM LY

Date: 11 - 10 - 11

23

Exhibit A
Page 24

SS# _____

# J.B. Hunt Transport, Inc.
## Intermodal Independent Contractor Operating Agreement

### Appendix D:  General Savings Fund Authorization

Independent Contractor hereby authorizes to deduct, to the extent available, amounts from IC Compensation otherwise due Independent Contractor with respect to the tractor specified below in the manner set forth below and to deposit such amounts into the General Fund:

Tractor Number: _381779_

Effective Date: _11 – 10 – 11_

Deduction Amount:

     Cents Per Paid Mile Per Week      $ _0.01_

This General Savings Fund Authorization is entered into in connection with an Independent Contractor Agreement executed by Independent Contractor and J.B. Hunt Transport, Inc. The maximum balance in the General Savings Fund at any time will be limited to $10,000.

**Independent Contractor**

_(signature)_
(Signature)

_DUY NAM LY_
(Typed or Printed Name)

_11 – 10 – 11_
(Date)

Exhibit A

Page 25

24

SS# ███████████████

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

#### Appendix E: On-Board Computer (OBC) Operations

1. <u>Non-Use While in Motion</u>: Contractor hereby represents to Carrier that the OBC will not be used while tractor is in motion. If, and only if, a tractor is being operated by a team, then the non-driver may use the OBC while the tractor is in motion.

2. <u>Maintenance</u>: Contractor shall protect the OBC from damage and abuse so as to keep the OBC in good repair, condition and working order during the term of this agreement, normal wear and tear excepted. Carrier will at its own cost and expense, repair or replace a damaged or defective OBC. Contractor shall promptly notify Carrier of any problems associated with the OBC.

3. <u>Risk of Loss</u>: Contractor shall bear the entire risk of loss, damage or destruction of the OBC resulting from any theft, fire, accident or other casualty whatsoever. Contractor shall promptly notify Carrier of any such loss. Contractor shall pay Carrier the amount as set forth in the compensation and fee schedule for any such loss.

4. <u>OBC Return</u>: Upon termination of this Agreement for any reason:

   (a) Contractor shall deliver the tractor to such point as requested by Carrier for removal of the OBC. Contractor shall return OBC in the same condition as when received, normal wear and tear excepted.

   (b) In the event Contractor fails to return the OBC within (3) days of termination, Contractor agrees to pay Carrier the liquidated damages as set forth in Appendix B of the Agreement. Carrier reserves the right to deduct such amount from Contractor's escrow funds as necessary to satisfy this obligation.

   (c) In the event Contractor fails to return the OBC as requested, Carrier shall be entitled to receive the costs and expenses (including reasonable attorneys' fees) incurred by Carrier in recovering such OBC. Carrier shall make the necessary set-offs and deductions as required.

Date OBC Received by Independent Contractor: __11____,20 _11_.

Type of Unit Installed:_____(2 Piece) ✓ (3 Piece).

Acknowledgement of Receipt of OBC: _____
(Contractor Signature)

_DUY NAM LY_____
(Typed or Printed Name)

## J.B. Hunt Transport, Inc.

### Intermodal Independent Contractor Operating Agreement

### Appendix A: Service Requirements

To the Intermodal Addendum to the Independent Contractor Operating Agreement. This Appendix A applies to services render at the Intermodal location of **South Gate, CA** and shall be effective the ___11−10___, 20 11.

In addition to any service expectations set out in the IC Agreement, listed below are customer service expectations that Contractor shall meet in servicing Carrier's transportation needs at the above-named Intermodal location.

I. Service Standards

Contractor shall comply with any additional service standards as set out in Article VI of the transportation agreement between Carrier's Intermodal group and the Intermodal customer. That agreement states:

1. Carrier shall transport such shipments as Shipper may require by motor vehicle from and to such points between which service may be required, without delay, subject to the availability of suitable equipment for the traffic offered and the specific shipment instructions, all in accordance with the terms and conditions of this Contract and Appendices.

2. Carrier will accept tender of shipments as directed by Shipper and transport and deliver such shipments promptly and efficiently. Carrier shall perform loading and unloading services as required by Shipper and agreed to by Carrier. Each shipment shall be evidenced by a bill of lading or other receipt. Such bill of lading or receipt is to be signed by Carrier and will show the kind, condition and quantity of commodities received and delivered by Carrier at the loading and unloading points.

3. Carrier understands and agrees in performing services under this Contract that time is of the essence in the pickup, transportation and delivery of individual shipments and that it agrees to meet all prearranged pickup and delivery times."

*On Time Service Percentage*

**Business which is handled by J.B. Hunt Transport, Inc. Intermodal group shall provide 98% on-time performance. Drivers will be put on probation after two service failures within a quarter. The third service failure during the next six month period immediately following the second service failure will result in the termination of the contract.**

**All Service Failures will be measured and reported with proper reason codes. Service Failures resulting from driver error or mechanical will be classified as JB Hunt failures, which affect the contracted service percentage. Failures resulting from shipper or receiver delays, railroad, dispatch error, weather, abnormal traffic flow, and/or other Acts of God, will be measured but not included in the contracted service percentage.**

| Initials: | _L M_ | Initials: | _D. L._ |
|---|---|---|---|
| For: | J.B. Hunt Transport, Inc. | For: | Independent Contractor |

Exhibit A

Page 27

# J.B. Hunt Transport, Inc.
## Intermodal Independent Contractor Operating Agreement

### Appendix A:  Service Requirements

II. Provision of Proof of Delivery

Contractor shall provide Carrier with copies of signed bills of lading and signed delivery receipts as evidence of the complete performance of such services.

III. Refused and Rejected Shipments

In order to comply with the Intermodal customer requirements set out under Article XI(2) Contractor shall adhere to the following procedures. When a shipment is refused or rejected by the consignee, or Contractor is unable to deliver it for any reason, Contractor shall notify Carrier in order to receive disposition instructions Contractor shall provide constant and sufficient security and safety for the shipment until such disposition instructions are received.

IV.    Confidentiality

Contractor hereby agrees, to the extent he becomes aware of any terms of the relationship between Carrier and the Customer, to be bound to the terms of confidentiality to which Carrier is bound.  They are:

> "Without the express written consent of the other party, no party shall disclose the terms of this Contract or Appendices to any third party, except (a) as required by law or regulation, (b) to an authorized audit agency designated by a party for audit purposes or (c) to an affiliate or potential affiliate of a party."

V.    *The following are additional factors affecting service derived from customer requirements and expectations established in the Intermodal transportation agreement:*

*Primary Traffic Lanes or areas of Service: Within a 125 mile radius of South Gate, CA*

*Supervisory Hours of Operation:  24 hours a day/7 days a week*

*Supervisory Responsibility for non-dedicated deliveries:  24 hours a day/7 days a week.*

*Loading Hours:  24 hours a day 7 days a week.*

*Operating Days per year:  365 days*

*Delivery Hours:  24 hours a day/7 days a week*

| Initials: | *L m* | Initials: | *D. L.* |
| --- | --- | --- | --- |
| For: | J.B. Hunt Transport, Inc. | For: | Independent Contractor |

Exhibit A
Page 28

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

#### Appendix B:  Compensation and Fees

To the Intermodal Addendum to the Independent Contractor Operating Agreement.  This Appendix B applies to services render at the Intermodal location of **South Gate, CA** and shall be effective ___11 - 10___, 20 _11_.

| (a)  IC Compensation | Intermodal |
|---|---|
| Linehaul-Loaded (Per Mile) | $0.85 |
| Linehaul-Empty (Per Mile) | $0.85 |
| Pick-up / Delivery (Drop/Hook) | $45 |
| Pick-up / Delivery (Live) | $65 |
| Otay Mesa, CA Border Repowering of Load | $45 |
| Empty Trailer Reposition | $30 |
| Hazmat Load | $10 |
| Customer Refused Load | $65 |
| Truck Ordered Not Used (TONU) | $30 |
| Safety Training | $30/Hour |
| Driver Orientation (Per Truck) | $75/Day |
| (After 4 days holdover rate is $50/day) | |
| Fuel Surcharge  (Revised 2-18-03) | Surcharge Schedule |
| Tolls | Carrier Paid |
| Base Plates | Carrier Paid |
| Permits | Carrier Paid |
| Scales | Reimbursed |

| Initials: | _L M_ | Initials: | _D.L._ |
|---|---|---|---|
| For: | J.B. Hunt Transport, Inc. | For: | Independent Contractor |

Exhibit A
Page 29

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B: Compensation and Fees

#### Fees, Charges, Balances and Other Amounts

Pursuant to the applicable provisions of the Independent Contractor Agreement, Independent Contractor shall be liable for the fees, charges, balances and other amounts as set forth in the table below, including, but not limited to the following:

| Nature of Fee/Amount | Fee/Amount |
|---|---|
| Truck Lease/Purchase Payment | NA |
| Independent Contractor-Initiated Re-Power: Minimum Charge | $50 |
| Non-trucking Liability Insurance (Single Limit) | $1,000,000 |
| Preventable Loss: Personal Injury/Property Damage | $1,500 |
| Preventable Loss: Cargo Shortage/Damage | $500 |
| Escrow Funds: Required Balance | $1,500 |
| Escrow Funds: Minimum Weekly Set-Off for Required Balance | $50 |
| Escrow Funds: Minimum HVUT (2290) Set-Off | $550/Year |
| Annual Administrative Fee | No Charge |
| Fuel Use/Tax Reserve (per Carrier Directed Mile) | $0.01 |
| Miscellaneous Equipment Issued to Independent Contractor | Equipment Value |
| OBC Monthly Usage Charge | $25 |
| OBC Replacement Value | $2,000 |
| OBC Daily Liquidated Damages (Improper Turn-In) | $50 |
| OBC Maximum Liquidated Damages (Improper Turn-In) | $2,000 |
| Failure to Return Decals/Permits/Plates: Daily Liquidated Damages | $50 |
| Road Service Fee (Tractor Maintenance) | $20/Event |
| Annual Motor Carrier Property Tax (AR, KS, KY, TN) | $55/Year |

Initials: _____          Initials: _D.L._____
For:   **J.B. Hunt Transport, Inc.**          For:   **Independent Contractor**

Exhibit A
Page 30

# J.B. Hunt Transport, Inc.
## Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Miscellaneous**

    A.  Carrier's Right to Modify or Terminate

Independent Contractor specifically understands and agrees that Carrier, in its sole discretion, shall have the right to modify or terminate from time to time the compensation rates as set forth in Part I of this Schedule and the fees and related amounts set forth in Part II of this Schedule. Carrier shall give Independent Contractor not less than thirty (30) days written notice prior to the effective date of any such change with the exception of the fuel surcharge payment which will vary at the discretion of the Carrier. The terms of this document supercede any previously executed agreement.

| Initials: | _L W_ | Initials: | _D. L_ |
|-----------|-------|-----------|--------|
| For: | **J.B. Hunt Transport, Inc.** | For: | **Independent Contractor** |

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Detention Schedule**

Contractor will be eligible for compensation (detention) in the event that he/she is detained longer than 1.5 hours at a customer.  Contractor will be paid following his arrival or customer appointment time, whichever comes last.  Contractor becomes ineligible if JBHT is unable to charge the customer detention *due to a driver related service failure*.  After 1.5 hours of detention, pay is $30.00 per hour excluding any time the driver is legally required to be off duty or taking a 10 hour break.   All detention pay will be paid in 15 minute increments and administered as follows:

| Detention Minutes Incurred | Detention Hours Paid |
|---|---|
| 0-7 minutes | 0 hours |
| 8-22 minutes | ¼ hour the hourly rate |
| 23-37 minutes | ½ hour the hourly rate |
| 38-52 minutes | ¾ hour the hourly rate |
| 53-60 minutes | 1 hour |

Initials: _L m_       Initials: _D. L._

For:      **J.B. Hunt Transport, Inc.**      For:      **Independent Contractor**

Exhibit A
Page 32

**J.B. Hunt Transport, Inc.**

**Intermodal Independent Contractor Operating Agreement**

### Appendix B:  Compensation and Fees

## South Gate Local Intermodal Independent Contractor Incentive

As an additional incentive for contractor to accept shipments when tendered and to provide error free service that is needed to meet the needs of carrier's customers as set forth in other addenda hereto, carrier shall pay monthly the additional compensation set forth below.  Such additional compensation is contingent upon:

1 - Contractor accepting all tendered shipments during the month consistent with U.S. DOT safety regulations.

2 - The absence of any service failure caused by contractor.  A disqualifying service failure shall be defined as any instant in which (a) contractor fails to meet customer's performance requirements through a late pick up or delivery caused by something other than late releases, weather, construction/accidents, prior stops, scheduling -- DC, overweight; or acts of God or public enemy; (b) contractor causes a reportable accident which affects carrier's Safestat score or (c) contractor is responsible for an overage, shortage or damage claim.

3 - Contractor must work the equivalent of the total amount of business days in the calendar month excluding holidays.

4 – If the contractor is stopped for a DOT Inspection, the contractor must pass with No Violations Discovered.

***South Gate Intermodal Incentive Compensation Bonus = $300.00***

*Incentive bonus will be paid after the first full pay period of a new month.*

CARRIER:
J.B. Hunt Transport, Inc.

Donald Yhg_ll
(Signature)

Donald L. Ingersoll
(Printed Name)

Vice President
(Title)

08/02/2011
(Date)

INDEPENDENT CONTRACTOR:

(Signature)

DUY NAM LY
(Printed Name)

Independent. Contractor.
(Title)

11-10-11
(Date)

Exhibit A
Page 33



C2# SSN _____ 



# Intermodal

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement
### Appendix A: Certificate of Authorized Operation and Customer Specifications

**Contractor Information**

Name: Duy NAM LY

Address: 716 Rio Del Sol Ave   Montebello ca 90640

**Description of Equipment**

Tractor No. 381779

Make: Freightliner

Year: 2005                    VIN: 1FUJACCKS5LN57129

Tractor Weight:

Wheel Base:

Fifth Wheel Height:

License No. 2004224          State: IN.

Independent Contractor Operating Agreement Start Date:
Hub Reading at Start Date:

**Carrier's Customers' Specifications:**

Contractor agrees to perform services in accordance with customer specifications, identified in this Appendix A, that may be safely complied with without violation applicable law or Carrier's Policies or Procedures, and without endangering the public, Contractor's workers, and the property being transported.

I. Service Standards

  1.    Contractor shall transport such shipments, that Contractor accepts, as Carrier's customer may require by motor vehicle from and to such points between which service may be required, without delay, subject to the availability of suitable equipment for the traffic offered and the specific shipment instructions.

  2.    Contractor agrees to perform loading and unloading services as required by Carrier's customer. Each shipment shall be evidenced by a bill of lading or other receipt. Such bill of lading or receipt is to be signed by Contractor, or Contractor's driver or worker, and will

Exhibit A
Page 34

show the kind, condition and quantity of commodities received and delivered by Contractor at the loading and unloading points.

3.　　Contractor understands and agrees in performing services under the Agreement that time is of the essence in the pickup, transportation and delivery of individual shipments and that it agrees to meet all prearranged pickup and delivery times.

### *On-Time Service Percentage*

**Contractor agrees Carrier's customer requires, and Contractor will use best efforts to provide 98% on-time performance.  Carrier's customer may require that Contractor, or Contractor's driver, is disqualified and removed from its account temporarily after two service failures within a quarter, and permanently in the event of a third service failure during the next six-month period.**

**A Service Failure includes incidents of driver error or mechanical error.  A Service Failure does not include shipper or receiver delays, railroad, dispatch error, weather, abnormal traffic flow, and/or other Acts of God.**

II. Provision of Proof of Delivery

Contractor shall provide Carrier with copies of signed bills of lading and signed delivery receipts as evidence of the complete performance of such services.

III. Refused and Rejected Shipments

In the event Contractor attempts to deliver a shipment at the customer's designated delivery location and such shipment is refused or rejected by the consignee, or Contractor is unable to deliver it for any reason, Contractor shall notify Carrier in order to receive disposition instructions from Carrier or Carrier's customer. Contractor shall provide constant and sufficient security and safety for the shipment until such disposition instructions are received.

IV.　Confidentiality

Contractor hereby agrees to the following terms of confidentiality related to the performance of services for Carrier's customer.  They are:

Without the express written consent of the other party, no party shall disclose the terms of Carrier's customer's service specifications and/or shipment information to any third party, except (a) as required by law or regulation, (b) to an authorized audit agency designated by a party for audit purposes or (c) to an affiliate or potential affiliate of a party.

V.　*The following are additional factors related to service performed for Carrier's customer:*

*Primary Traffic Lanes or areas of Service: Within a 125-mile radius of South Gate CA.*
**This Appendix A is agreed to by the undersigned parties on the latest date set forth below.**

**Carrier:  J.B. Hunt Transport, Inc.**　　　　　　　**Contractor:** DUY NAM LY

By: _____　　　　　　By: _____
　　Signature　　　　　　　　　　　　　　　　Signature

Page 2 of 6



SSN 

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B: Compensation and Fees

This Appendix B to the Intermodal Independent Contractor Operating Agreement applies to services rendered at the Intermodal location of **South Gate, CA** and shall be effective ___02/25___, 20_18_.

| (a)  IC Compensation | Intermodal |
|---|---|
| Linehaul-Loaded (Per Mile) | $0.90 |
| Linehaul-Empty (Per Mile) | $0.90 |
| Pick-up / Delivery (Drop/Hook) | $45 |
| Pick-up / Delivery (Live) | $70 |
| Otay Mesa, CA Border Repowering of Load | $45 |
| Empty Trailer Reposition | $30 |
| Hazmat Load | $20 |
| Customer Refused Load | $70 |
| Truck Ordered Not Used (TONU) | $30 |
| Safety Training | $30/Hour |
| Driver Orientation (Per Truck) (After 4 day's holdover rate is $50/day) | $75/Day |
| Fuel Surcharge (Revised 3-29-17) | Surcharge Schedule |
| Tolls | Carrier Paid |
| Base Plates | Carrier Paid |
| Permits | Carrier Paid |
| Scales | Reimbursed |

Initials:  
For:     **J.B. Hunt Transport, Inc.**

Initials:  
For:     **Independent Contractor**

Exhibit A
Page 36



SSN: ███████████

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Fees, Charges, Balances and Other Amounts**

Pursuant to the applicable provisions of the Independent Contractor Agreement, Independent Contractor shall be liable for the fees, charges, balances and other amounts as set forth in the table below, including, but not limited to the following:

| Nature of Fee/Amount | Fee/Amount |
|---|---|
| Truck Lease/Purchase Payment | NA |
| Independent Contractor-Initiated Re-Power: Minimum Charge | $50 |
| Non-trucking Liability Insurance (Single Limit) | $1,000,000 |
| Preventable Loss: Personal Injury/Property Damage | $1,500 |
| Preventable Loss: Cargo Shortage/Damage | $500 |
| Escrow Funds: Required Balance | $1,500 |
| Escrow Funds: Minimum Weekly Set-Off for Required Balance | $50 |
| Annual Administrative Fee | No Charge |
| Fuel Use/Tax Reserve (per Carrier Directed Mile) | $0.01 |
| Miscellaneous Equipment Issued to Independent Contractor | Equipment Value |
| OBC Monthly Usage Charge | $25 |
| OBC Replacement Value | $2,000 |
| OBC Daily Liquidated Damages (Improper Turn-In) | $50 |
| OBC Maximum Liquidated Damages (Improper Turn-In) | $2,000 |
| Failure to Return Decals/Permits/Plates: Daily Liquidated Damages | $50 |
| Road Service Fee (Tractor Maintenance) | $20/Event |
| Annual Motor Carrier Property Tax (AR, KS, KY, TN) | $55/Year |

Initials:  
For:        **J.B. Hunt Transport, Inc.**

Initials:  
For:        **Independent Contractor**

Exhibit A
Page 37



SSN:__

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Miscellaneous**

A.  Carrier's Right to Modify or Terminate

Independent Contractor specifically understands and agrees that Carrier, in its sole discretion, shall have the right to modify or terminate from time to time the compensation rates as set forth in Part I of this Schedule and the fees and related amounts set forth in Part II of this Schedule. Carrier shall give Independent Contractor not less than thirty (30) days written notice prior to the effective date of any such change with the exception of the fuel surcharge payment which will vary at the discretion of the Carrier. The terms of this document supersede any previously executed agreement.

Initials: _____     Initials:  D. L
For:     **J.B. Hunt Transport, Inc.**     For:          **Independent Contractor**

Page 5 of 6

Exhibit A
Page 38



SSN: 

# J.B. Hunt Transport, Inc.
## Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Detention Schedule**

Contractor will be eligible for compensation (detention) in the event that he/she is detained longer than 1.5 hours at a customer.  Contractor will be paid following his arrival or customer appointment time, whichever comes last.  Contractor becomes ineligible if JBHT is unable to charge the customer detention *due to a driver related service failure*.  After 1.5 hours of detention, pay is $30.00 per hour excluding any time the driver is legally required to be off duty or taking a 10-hour break.   All detention pay will be paid in 15 minute increments and administered as follows:

| Detention Minutes Incurred | Detention Hours Paid |
|---|---|
| 0-7 minutes | 0 hours |
| 8-22 minutes | ¼ hour the hourly rate |
| 23-37 minutes | ½ hour the hourly rate |
| 38-52 minutes | ¾ hour the hourly rate |
| 53-60 minutes | 1 hour |

Initials: _____  Initials: _____
For:       **J.B. Hunt Transport, Inc.**  For:       **Independent Contractor**

Exhibit A
Page 39

SS#_ 



**Intermodal**
**J.B. Hunt Transport, Inc.**

## INDEPENDENT CONTRACTOR OPERATING AGREEMENT

This agreement is made this 27 day of APRIL , 2017 between
KIET NGUYEN as "Contractor" and J.B. HUNT TRANSPORT,
INC., as "Carrier," and shall begin on the date and time appearing on Appendix A. This agreement shall
end at midnight exactly one year from the start date appearing on Appendix A. In consideration of the
mutual promises made in this agreement, Contractor and Carrier agree as follows:

### PREAMBLE

J.B. HUNT TRANSPORT, INC. is a motor carrier authorized to transport freight in interstate and
intrastate commerce. Contractor is the owner of motor vehicle equipment which Contractor desires to
lease to Carrier with qualified driver(s). The parties acknowledge this Lease must follow certain
regulations of the United States Department of Transportation ("USDOT") including but not limited to
safety and leasing regulations. Contractor agrees to provide the motor vehicle identified below and a
driver for that motor vehicle. The driver and the motor vehicle will be in compliance with all USDOT
requirements. Carrier will pay Contractor in accordance with the terms of this Lease Agreement.

### AGREEMENT

1.      Identity of Parties:

Contractor is:

KIET NGUYEN
(Full Name)

14378 RAGUS ST
(Address) LA PUENTE , CA   91746


(Phone Number) (626) 384 - 9701

1



(SSN or FEIN No. if a corporation):

Carrier (also referred to as "JBHT") is:

J.B. HUNT TRANSPORT, INC.
615 J. B. Hunt Corporate Drive, P.O. Box 130,
Lowell, Arkansas 72745
Phone: 479-820-0000

2.   Identification of Equipment to be Leased:  Contractor leases to Carrier the

motor vehicle or vehicles described as follows:

Tractor

Year: 2009

Make/Model:   FREIGHTLINER    CASCADIA

State Registration:   INDIANA

Vehicle Identification Number: 1FUJGLDR09LAB4378

3.   Receipt of Equipment:   The equipment which Contractor will lease to Carrier pursuant to the

terms and conditions of this Agreement is identified in the attached Appendix A, which, when executed,

will show the date and time of the receipt of the equipment by Carrier.  Upon termination of this lease,

or when possession by Carrier of the equipment identified in Appendix A ends, Contractor shall give

Carrier or its authorized representative a receipt evidencing the date and time of the return of the

equipment to Contractor's control.

4.   Exclusive Use:   Consistent with the leasing regulations which require Carrier to have exclusive

possession and control of the equipment, Contract agrees neither it nor its driver shall have authority to

enter into any agreement for use of the leased equipment covered by this Agreement for the benefit of

any other person without Carrier's express written authority. With notice to Carrier, during the term of

this Agreement, Contractor and its qualified drivers are free to work for other carriers or customers.

5.   Payment to Contractor:   Carrier agrees to pay Contractor as specified in Appendix B of this

document.  Carrier will not be required to pay mileage for transportation by Contractor or its driver

which is made for the convenience of Contractor or its driver while not under dispatch by Carrier.  The

dispatched mileage will be determined from each point of origin to each point of destination as

2



determined by the mileage guide published by Rand McNally Mileage Guide. Even though Contractor's method of payment is not in any way associated with Carrier's rates and charges, Contractor will be permitted to examine copies of Carrier's tariff and portions of pertinent contracts upon request.

6.  Time and Conditions of Payment:   Payment to the Contractor shall be made within fifteen (15) days after submission of the necessary delivery documents, logbooks required by the USDOT, and those documents necessary for Carrier to secure payment from the shipper, which are the bill of lading, signed delivery receipt or other proof of delivery acceptable to Carrier.  Payment of compensation to Contractor shall not be contingent upon submission of a bill of lading to which no exceptions have been taken.  In the case of a C.O.D. shipment only, Contractor must deliver the certified check or money order due the Carrier and any other documents necessary for Carrier to secure payment from the shipper. Carrier shall provide Contractor with notice at the time of dispatch that the particular shipment is a C.O.D. delivery, specifying which documents are required to be delivered to Carrier.

7.  Term and Termination:  The term of this Agreement will commence upon execution and delivery of the receipt of equipment to Carrier, as reflected by Appendix A, and shall end at midnight one year later.  It shall be renewed and extended automatically from year to year thereafter unless cancelled or terminated under the provisions of this Lease Agreement.  Either party may terminate this Agreement upon 30 days written notice.  Carrier may terminate this Agreement upon written notice or by on-board written transmission in the event of serious breach by Contractor.  A serious breach shall be defined as (1) evidence of a felony committed while in operation of the leased equipment; (2) evidence of a chargeable personal injury accident; (3) violations of U.S. DOT safety regulations which imperil Carrier's safety rating; (4) unauthorized use of leased equipment; and (5) and any breach of service obligations which imperil carrier's license, permits, insurance, or customer relations.  The company reserves the right to cancel this contract immediately and without notice if in the sole discretion of its contract administrator, the contractor's actions adversely reflect on the company, threaten its safe operations, reputation or ongoing efficient operations.



8.   Exclusive possession and responsibilities.  Carrier shall have exclusive possession, control and use of the equipment for the duration of the Lease.  Carrier shall assume complete responsibility for the operation of the equipment for the duration of the Lease. Contractor specifically agrees it will not use the authorities, placards or vehicle identification numbers of Carrier to perform services for any other person, firm or company without having the express written consent of Carrier.

9.  Contractor Independence/Control of Operations.

   (a)   Federal and State Laws.  At all times, Contractor shall remain solely responsible for payment of all federal and state taxes accruing as a result of its maintenance and use of the leased vehicle and retention and payment of driver personnel to perform services under this agreement.  Contractor warrants that it is familiar with and shall comply with all applicable employment laws and applicable taxes including and not limited to federal and state income tax, state worker's compensation, unemployment compensation taxes, and overtime requirements which may be applicable.   Contractor shall indemnify and hold carrier harmless from these obligations.

   To the extent not inconsistent with federal, state and safety regulations, including but not limited to hours of service requirements, highway speed limits and other restrictions, Contractor shall be free to set the method and time of performance for all delivery of loads accepted by it. The parties agree and understand that federal and state laws and regulations impose duties on carriers including the maintaining of records of Contractor operations, equipment maintenance, hours of service, reporting for state tax purposes all miles run by the vehicle as well as additional obligations imposed by carrier's insurer whose federal filings are a prerequisite of operations. Contractor agrees to comply with these federal duties and statutes with respect to the equipment leased to carrier and will provide all necessary supporting documents as required by law.

   (b)   Customer-Specific Requirements.  The parties agree that in the performance of this contract, carrier in its sole discretion will tender Contractor individual loads, subject to its equipment availability on a load-by-load basis.  It is agreed that any load may have customer-

4



imposed service requirements which will be conveyed to the Contractor at time of tender. Contractor agrees to accept or reject the load tender and is not subject to forced dispatch. In accepting the load, Contractor agrees to perform in accordance with any special ground rules imposed by the customer and further warrants that the expected service can be provided in a safe and non-negligent fashion.

(c) Routes and Methods. The parties agree that federal regulation requires a carrier to be responsible for accounting for all miles run by the involved commercial vehicle while under lease and for the hours of service of the driver operating the leased vehicle, regardless of whether the truck is under dispatch. Notwithstanding these requirements, Contractor is free to select the routing for performing any dispatch consistent with state and federal highway speed limits, weight and other restrictions. Carrier will assist Contractor by providing practical routing information for its use. Contractor agrees to indemnify and hold harmless carrier from any claim, fine, loss or damage which arises from the "deadhead or bobtail" use by it of the equipment.

Contractor agrees to indemnify and hold harmless Contractor from any claim, fine or assessment arising out of its failure to comply with the warranties and representations contained in this Agreement.

(d) Independent Contractor Status. It is the intent of the parties for Contractor to retain the status of an independent contractor in business for federal and state law purposes. Carrier's control over Contractor shall be limited to that control required by federal and state statutes and regulations governing the conduct of motor carriers. Contractor shall train all of its driver personnel in accordance with U.S. DOT requirements and shall submit all driver personnel to carrier for qualification, safety and training to the extent required by federal regulations. To meet the Federal motor carrier safety obligations under the FMCSR, contractor will cooperate by requiring attendance of its driver personnel at conveniently scheduled safety meetings for which reasonable compensation will be provided. Contractor shall have the right to substitute other

5



qualified drivers to perform the services subject to carrier's confirmation that Contractor's driver meets the driver qualifications established by the U.S. DOT and its insurers.

Contractor warrants that no driver will be used until the driver has been qualified by carrier in accordance with federal safety requirements. At all times, Contractor shall remain responsible for hiring and supervising his employees and for paying their salaries and all relevant taxes. Contractor warrants compliance with all federal and state employment laws and shall indemnify and hold carrier harmless from its failure to discharge such obligations.

Contractor shall at all times be free to set its hours of operations consistent with the federally imposed hours of service requirements and the scope of the work accepted and the customer's service expectations. Contractor is free to work when and where it chooses and shall accept or reject work assignments on a load by load basis. Contractor agrees to comply with any scope of work requirement imposed by the customer service conditions when accepting a job assignment but is otherwise free to schedule the order of its work.

Where shipper requires same and to facilitate efficient dispatch, Contractor agrees to provide electronic notification of its operating status including when equipment is loaded, unloaded or otherwise available to dispatch. Otherwise no oral or written report other than the supporting documents and logs required by the DOT, bills of lading and shipping documents required by the customer for payments and fuel taxes as required by IFTA shall be required.

Contractor shall be solely responsible for furnishing the power equipment used to provide service and shall keep same in good repair in accordance with federal regulation and inspection requirements. Contractor shall be solely responsible for the payments on the leased equipment on the subject equipment and shall have the right to make all crucial decisions with respect to the maintenance and operation of such equipment.

Contractor warrants as a condition of this contract that all equipment will be continually operated in accordance with U.S. DOT safety regulations in a non-negligent fashion.

6



Contractor shall accept work assignments on a job by job or load by load basis and agrees to comply with any ground rules or scope of work requirements established by the shipper as a service condition imposed on the work provided. Carrier does not guarantee Contractor a profit or limit its profit margin for contracts performed.

The parties acknowledge that pursuant to federal regulation Carrier is fully responsible for the safe operation of the leased vehicle and the driver's compliance with all federal motor carrier safety regulations. In order to comply with federal regulations, and not to exercise prescribed control or dominion over Contractor's drivers, the parties agree that Contractor will comply with driver qualification requirements including providing PSP data, drug testing, ensuring full compliance with hours of service, the reporting of all driving infractions, and safety monitoring systems required by federal motor carrier safety regulations, including but not limited to the SMS safety initiative.

10. <u>Driver Qualification</u>. Contractor warrants that each driver of the Equipment shall be qualified to drive under USDOT regulations which requires among other things the driver to have a validly issued Commercial Driver's License, health card and any other documentation required by the USDOT. Contractor agrees that the person will not operate the Equipment during the term of this lease without first being qualified by Carrier. Contractor acknowledges its driver must pass all of the USDOT tests, including drug and alcohol tests and agrees to submit to and bear the costs of such testing. Contractor further agrees to be solely responsible for compensating its driver, including but not limited to, wages, withholding taxes, FICA, worker's compensation, overtime and any and all other costs associated with employing its driver.

11. <u>Carrier's Duty</u>. During the term of this Agreement, Carrier agrees to make freight available to Contractor for transportation by Contractor; provided, however, Contractor understands and agrees that in no event shall Carrier guarantee to Contractor any specific number of miles or loads, any specific amount of freight or any specific times, dates or routes.

12. <u>Warranties of Contractor</u>. Contractor agrees and warrants as follows:

7



a.   Contractor is the owner of the equipment described in this lease, within the meaning of 49 C.F.R. §376.2(d).

b.   Equipment Warranties. The above-described equipment is in good condition and fully complies with all safety regulations and requirements of the USDOT and that Contractor will maintain such equipment in good condition and compliance during the term of this lease. Costs of all expenses to maintain that equipment in good and lawful condition in compliance with USDOT standards shall be borne by Contractor. The U.S. Department of Transportation Federal Motor Carrier Safety Regulations found at 49 C.F.R. 396 et seq. or any successor regulations specify that all motor vehicles subject to an independent contractor operating agreement be subjected to systematic inspections and repairs. Contractor hereby agrees that, pursuant to said regulations and at such times as Carrier may reasonably require, Contractor shall cause the Equipment to be inspected at such facilities as Carrier shall have approved (such approval not to be unreasonably withheld) and to effect needed repairs at Contractor's sole cost and expense. Contractor shall submit to Carrier records of inspections, repairs and maintenance as required by Federal Safety Regulations.

c.   Expenses. Contractor shall bear the operational expenses incurred in performing the transportation services requested by Carrier under this lease agreement. These expenses are limited to: all fuel, oil, tires and equipment, accessories, or devices used in connection with the operation of the equipment; maintenance costs including repairs; taxes and assessments; fuel and fuel use taxes; fines and penalties resulting solely from the acts or omissions of Contractor and its employees; insurance costs relating to insurance coverage required to comply with this agreement; federal highway use tax on the equipment; federal, provincial, state or city income taxes, and any self-employment or payroll taxes; and any sales, use, excise and other taxes due and owing to ownership or operation of the equipment. Contractor shall also bear any expenses necessary to maintain

8



the equipment in compliance with all applicable federal and state safety laws and regulations.   Contractor shall be responsible for all costs associated with detention, loading and unloading.  Carrier will compensate Contractor for such services in accordance with the schedule set forth in Appendix B. Upon termination of this lease if there are any costs associated with unused portions of any of the above referenced operational expenses, those costs shall be borne by Contractor unless otherwise specified in this lease.

d.    Services and Compliance.  Contractor agrees to transport the freight tendered to it by Carrier from point of origin to point of destination in a reasonable and timely manner. If Contractor does not or cannot complete the load, Contractor will be responsible for the costs of re-powering the load – unless Carrier's acts or omissions have caused Contractor's inability to complete the load.  Contractor and its drivers shall comply with all laws, rules and regulations of the USDOT and other federal, state and local governmental agencies. Nothing contained herein shall require the Contractor to violate the safe transportation of the equipment or the hours-of-service rules of the USDOT, and Contractor may refuse to transport the freight tendered to it by Carrier if Contractor believes that the transportation would result in such violation.

e.    Use of Carrier Equipment.  Contractor will be responsible for Carrier's actual costs in recovering any "non-owned" trailer for which Contractor has accepted dispatch and which he/she has also wrongfully abandoned.  For the purposes of this Agreement, a "non-owned" trailer is a trailer that either Carrier or Carrier's customer has provided to Contractor for providing his/her transportation services for Carrier.  In the event Contractor uses the trailers for any other purpose, Carrier shall, in addition to any other remedies, be entitled to liquidated damages for the loss of use of each such trailer in the amount of twenty cents ($0.20) per mile of unauthorized use plus Fifty Dollars ($50.00) for each day, or portion of a day, of such unauthorized use.  Unauthorized use of the

9



trailers shall constitute a material breach of this Agreement. Carrier shall have the right to deduct the amount of such liquidated damages from the Contractor's settlements or escrow funds.

f.      Service Standards.  Contractor shall perform freight transportation services in compliance with all applicable laws and regulations and further shall make every reasonable effort to perform freight transportation services hereunder in a prompt, competent and diligent manner consistent with Carrier's standards of customer service and satisfaction.  Contractor shall immediately report to Carrier any disagreements, altercations or other circumstances or disputes involving shippers or their agents, employee or consignees that would tend, in any way, to detract from the quality and reliability of Carrier's service or to damage Carrier's reputation.

g.      Acceptance of Loads.  Contractor shall have the right to reject any shipment tendered to it by Carrier.  When Contractor accepts a shipment tendered to it for transportation, Contractor agrees to perform its services hereunder in such a manner as to satisfy the requirements of Carrier's customers including, but not limited to, complying with pick-up and/or delivery dates and times specified by Carrier's customers and by complying with the Carrier's operating policies and procedures.  The failure of the Contractor to fulfill this obligation will constitute a material breach of this Agreement. Contractor agrees that it is liable and will reimburse Carrier for the entire amount of any claims paid by Carrier as the result of late delivery of shipments accepted by Contractor where such late delivery is the Contractor's fault.  Carrier shall have the right to deduct the amount of such claims from Contractor's settlements or escrow account.

h.      Taxes.

        (1)      Income Taxes. Contractor shall pay all taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government on account of the receipt of income by Contractor for freight transportation services rendered



under this Agreement.  Contractor understands and agrees that Carrier shall not be required to withhold any income or other taxes imposed on income earned by Contractor hereunder and Contractor agrees to take any action necessary to ensure that Carrier is not subject to such a requirement.  Contractor shall file all Federal, Provincial, State or local government tax forms and returns as required in connection with the receipt of income by Contractor and shall pay when due all taxes and contributions reported in such forms and returns.  Contractor shall furnish Carrier with such evidence of compliance with the foregoing as Carrier shall reasonably request.

(2)     Operating Taxes.  Contractor shall pay all fuel taxes, road taxes, mileage taxes, property taxes and all other taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government related to the use and operation of the equipment leased by Contractor to Carrier hereunder.  Carrier will set aside funds from the Contractor's weekly settlement for this purpose and will reconcile actual Contractor liabilities on a quarterly basis.  Carrier will file all Federal and State government tax forms and returns as required in connection with the use and operation of the equipment hereunder.

(3)     Employment Taxes.  Contractor shall pay or withhold all employment-related taxes and fees and other related taxes and fees (including penalties and interest) imposed by any Federal, Provincial, State or local government by virtue of Contractor's status as an employer or sole proprietor, as the case may be.  Contractor shall file all Federal, Provincial, State or local government tax forms and returns as required in connection with its status as an employer or sole proprietor and shall pay or withhold when due all taxes and contributions reported in such forms and returns.  Contractor shall furnish Carrier with such evidence of compliance with the foregoing as Carrier shall reasonably request.

11



(4)    Toll Operating Costs.  When applicable, Carrier shall provide Contractor an E-Z Pass to be attached to the tractor for toll transactions in all E-Z Pass participating states for the duration of this Agreement.  Carrier shall also provide toll charge cards to Contractor for other states as needed.  Carrier will deduct a one time charge of $28 from Contractor as the cost for the E-Z Pass and $5 for each additional toll card issued.  Carrier will charge Contractor for any toll violations incurred by Contractor.

i.    Employment Laws:  As an independent business enterprise, contractor warrants its compliance with all applicable federal and state employment laws, including but not limited to, workers compensation insurance requirements where applicable, with respect to all drivers and other workmen selected by contractors to provide services for carrier pursuant to this agreement. Contractor agrees to indemnify and hold harmless carrier from any demand, claim, fine, penalty, or assessment arising out of or caused by breach of this warranty.

13.  Insurance:  Carrier will provide primary insurance for the protection of the public pursuant to USDOT regulations presently found under 49 U.S.C. 13906. Non-Trucking "Bobtail" insurance must be provided by Contractor in the amount of $1,000,000 per occurrence and Carrier will be provided with a suitable certificate of insurance naming Carrier as additional insured.  If Contractor desires to purchase insurance through Carrier's insurance agent, Contractor will so signify by signing Appendix C of this Agreement and will authorize a deduction from compensation in the amount shown thereon. Carrier will provide Contractor with a copy of any policy for which a deduction is agreed to upon request.

14. Worker's Compensation/Occupational Accident Insurance:

a.    Insurance.  During the term of this Agreement, Contractor shall, at Contractor's expense, carry and maintain in full force and effect either worker's compensation and other employer's liability insurance as required by applicable law covering all persons employed by Contractor, or a substitute policy acceptable to Carrier if Contractor is a sole proprietor,

12



such as occupational accident insurance providing similar coverages and benefits, in connection with the performance of freight transportation services hereunder as will fully protect Contractor from any and all claims under applicable law.

b.   Certificate of Insurance.  All such insurance policies required under Paragraph 14(a) above shall be non-cancellable and non-amendable without at least thirty (30) days prior written notice to Carrier.  Such insurance may be furnished under any blanket policy carried by Contractor or under a separate policy therefor.  Contractor shall furnish to Carrier the most current certificates of insurance for such policies.  Carrier shall be named as an additional insured on Contractor's policy.  Contractor acknowledges that its worker's compensation or occupational accident insurance shall be its sole source of recovery and that no claim to Carrier's own worker's compensation policy exists at any time during the term of this contract.

c.   Purchase of Policy through Carrier.  In the event Contractor purchases the worker's compensation and/or occupational accident insurance above, through the Carrier for the Contractor's convenience, Contractor shall pay the premiums therefor in advance to Carrier.  Such premiums shall be refundable only to the extent allowed under the terms and conditions of the insurance policy.  If Contractor fails to pay Carrier the premium for such policy when due, Carrier shall make the necessary set-offs and deductions pursuant to paragraph 22-23 below.  Carrier shall furnish to Contractor the most current certificates of insurance for all such policies purchased through Carrier, and Carrier shall otherwise comply with the requirements of 49 C.F.R. §376.12(j)(2) or any successor regulations.

d.   Disclaimer.  With respect to the insurance policy purchased through the Carrier for the Contractor's convenience pursuant to Paragraph (c) above, Contractor understands and agrees that Carrier is not an agent of nay insurance company that may issue such insurance coverage.  CONTRACTOR UNDERSTANDS AND AGREES THAT CARRIER DOES NOT MAKE ANY REPRESENTATION THAT ANY INSURANCE OFFERED TO

13



CONTRACTOR BY CARRIER IS ADEQUATE TO COVER CONTRACTOR'S EXPOSURES. Under no circumstances shall Contractor attempt to hold Carrier responsible for any failure on the part of any insurance company to honor the terms and conditions of any policy Contractor may purchase through Carrier.

15. Purchase of Items from Carrier. Contractor is not required to purchase or rent any products, equipment, or services from Carrier as a condition of this Agreement. Any product, equipment, or service which Contractor elects to purchase or rent from Carrier shall be set forth with specificity in this Agreement and Appendix B and C hereto.

16. Shortage, Loss or Damage to Cargo: Contractor will be responsible for the loading and unloading of freight under this Agreement, and shall be compensated in the event of hand loading or unloading in accordance with Appendix B. Contractor is responsible for making sure the freight is properly counted and is in apparently good condition when loaded and is responsible for viewing the freight when being unloaded. If there is any loss, shortage or damage of the freight when in Contractor's possession, Contractor shall indemnify Carrier as specified in Paragraph 20 of this Agreement. In the event of any such claim, Carrier will deliver to Contractor a written explanation and itemization of any deductions for cargo or property damage made from Contractor's compensation prior to taking such deduction from Contractor's compensation.

17. Trailers: In the event either Carrier or a customer provides a trailer for the use of Contractor in providing its transportation services, Contractor shall inspect the trailer for prior damage and road worthiness. If Contractor notices any damage to the trailer or road unworthiness, Contractor shall immediately notify Carrier. Contractor shall not commence operation until the problem has been repaired. Any physical damage to the trailer while in the possession of Contractor will be assessed to Contractor if no notification has been presented to Carrier, except as provided under Paragraph 18 of this Agreement. The parties acknowledge CDL drivers are required to inspect all equipment including trailers before commencing transportation. Upon notification, Carrier will cause repairs to the trailer to be made as soon as possible.



18.  Fines, Penalties, Court Costs:  Contractor will reimburse Carrier for the actual cost to Carrier of all fines, penalties and reasonable attorney fees and costs resulting from Contractor's improper operation of the Equipment.  Contractor will notify Carrier if it has an overweight load so that corrective action may be taken.  Except when the violation results from the acts or omissions of Contractor, Carrier shall assume the risks and costs of fines for overweight and oversized trailers when the trailers are preloaded, sealed, or the load is containerized, or when the trailer or lading is otherwise outside of Contractor's control and for improperly permitted over-dimension and overweight loads and shall reimburse the Contractor for any fines paid by Contractor.  Contractor shall assume responsibility for inspecting and weighing all loads prior to departure to ensure that the trailers are loaded and otherwise in accordance with all applicable law and regulations.  Any penalties or fines resulting from Contractor's failure to undertake such responsibilities promptly and properly or failure to take appropriate action to bring the loads and trailers in compliance with all applicable law and regulations, including fines and penalties for overweight trailers shall be deemed to be the obligation of Contractor, if such action is within the control of Contractor.

19.  Administrative Costs:   Contractor agrees to bear the costs associated with monies advanced to Contractor in accordance with paragraphs 22 and 23 of this Agreement.

20.  Indemnification:   Contractor agrees to indemnify, defend, save and hold harmless Carrier from any and all claims, fines, or other expenses (including reasonable attorney fees) imposed by reason of Contractor's (or Contractor's employee's or driver's) wrongful actions, wrongful omissions, negligence, or wrongful violation of the terms of this Agreement, when such expenses are based upon the following: damage to property; any violation by Contractor of USDOT regulations or those regulations of any state or local authority; the loss, shortage, or damage to cargo while in Contractor's possession; the damage to owned trailers while in the Contractor's possession.  When any claim, fine, or other expense for which Contractor must indemnify Carrier is covered by Carrier's insurance, Contractor will only have to indemnify Carrier for the amount of the insurance deductible that Carrier actually pays for such covered expense, minus any related insurance proceeds due Carrier.  The

15



provisions of this paragraph are subject to the exceptions contained in Paragraph 18 above. This indemnification shall apply to the first $500.00 of any cargo loss and to the first $1,500 per occurrence for property damage and personal injury resulting from preventable accidents.

21. On-Board Communications. A portion of the cost of establishing and maintaining on-board communications between Carrier dispatch and the leased unit shall be borne by the Contractor. Carrier's customers require each owned or leased tractor to carry compatible on-board equipment which Contractor, at its option, may purchase, install and maintain. If Contractor elects to rent such equipment from Carrier, Contractor will reimburse Carrier in accordance with paragraph 23. Carrier's duties and obligations with respect to on-board communication devices are set forth in Appendix E.

22. Charge-Back Items. Carrier may, at its option, advance monies directly to Contractor for the benefit of Contractor, including advances for single state registration, fuel, fuel advances, cash advances, and repair costs. Contractor hereby agrees that Carrier may deduct from Contractor's compensation the costs of: fuel advances, cash advances, and cash advance charges and items which Contractor elects to purchase or rent from Carrier pursuant to paragraph 15. Contractor further agrees that Carrier may deduct from Contractor's compensation for shortage, loss and damage to cargo that Contractor is responsible for under Paragraph 16, for damage to trailers that Contractor is responsible for under Paragraph 17, for re-powering and abandoned trailer recovery costs that Contractor is responsible for under Paragraph 12, for indemnification in accordance with paragraph 20, and for insurance charges that Contractor is responsible for under Appendix C. Contractor further authorizes Carrier to deduct whatever amount is required by law in the event of a garnishment or attachment. Carrier is authorized to deduct for any federal, state or provincial taxes, fines, or benefits that Carrier is required to pay as a result of Contractor's failure to comply with the terms of this Agreement. Carrier is authorized to deduct the replacement cost of any equipment issued by it to Contractor which is lost or destroyed and the repair cost for damaged items. Other miscellaneous charge-back items and the amount of authorized deductions are set forth in Appendix B. The computations of the above deductions are stated in Paragraph 23 below.

16



23.  Computation of Deductions/Copies:   All deductions from Contractor's compensation shall be equal to the exact net amount paid by Carrier and charged by the provider of the item charged, minus any related rebates, discounts, or refunds due Carrier.  The computation of deductions will be made as follows:

    a.    Cash Advances Requested by Contractor.  Carrier pays a fee for each transaction requested by Contractor (or its driver).  The amount to be deducted from Contractor's compensation for each advance will be the amount of the advance plus the provider's transaction charge, which is currently $1.20 plus an $8.80  administrative charge.  Should the transaction provider alter its fee, Carrier shall provide Contractor written notice of the amount of the new charge before such new amount is deducted from Contractor's compensation.

    b.    Insurance:   The amount of any insurance premium to be charged back to Contractor shall be shown on Appendix C.

    c.    On-board Communications:   The charge to Contractor for onboard communications which is installed and maintained by Carrier shall be $25.00 per month for a 3-piece unit and $50.00 per month for a 2-piece unit, deducted from Contractor's weekly settlement.

    d.    Fines/Penalties/Court Costs:   The amount of chargeback for costs and expenses to Carrier within the limitations of Paragraphs 18 and 20 of this Agreement shall be the exact net amount paid by Carrier and imposed by the charging authority, minus any related rebates, discounts, or refunds due Carrier.  The amount of reasonable attorney fees and costs due Carrier under Paragraphs 18 and 20 shall be equal to the actual fees and costs paid by Carrier in connection with the particular court proceeding.

    e.    Shortage, Loss and Damage:  The amount for shortage, loss or damage to freight that Contractor must pay to Carrier pursuant to Paragraph 20 of this Agreement shall be equal to the exact net amount paid by Carrier, minus any related rebates, discounts, or



refunds due Carrier and subject to the per occurrence limitations set forth above. When any claim, fine, or other expense for which Contractor must indemnify Carrier under Paragraph 20 is covered by Carrier's insurance, Contractor will only have to pay to Carrier the actual cost to Carrier for such covered expense, minus any related insurance proceeds due Carrier. The amount of reasonable attorney fees and costs due Carrier under Paragraph 20 shall be equal to the actual fees and costs paid by Carrier in connection with the particular court proceeding. Contractor's maximum liability is $500 per incident.

f.      Repowering/Recovery of Trailers:  The repowering charge will be computed by the actual amount paid to driver/contractor to reposition its equipment and deliver the freight to the customer pursuant to Paragraph 12(d) of this Agreement.  The abandoned trailer recovery charge pursuant to Paragraph 12(e) of this Agreement will be computed by actual cost to Carrier to recover the abandoned trailer.

g.      Base Plates and Single State Registration:  Carrier shall pay the costs associated with base plates and compliance with single state registration.

h.      Other Charge-Back Items:  For any additional charge-back items specifically authorized under the terms of this lease, but not specifically enumerated in this paragraph, the computation of the deduction and the calculation method of said deduction will be the exact net amount paid by Carrier and charged by the provider of the item charged, minus any related rebates, discounts, or refunds due Carrier.  Carrier may make deductions for operating taxes on an accrual basis.

i.      Copies:  Upon request, Carrier will provide Contractor with all documentation supporting the validity of the charge-back items under the terms of this Agreement, and the validity of all deductions taken from Contractor's compensation.

j.      Equipment Purchase Agreement:  If Contractor has elected to acquire ownership of the subject equipment through a lease purchase agreement with Carrier or its affiliate or through a sublease guaranteed in whole or in part by Carrier, the terms and conditions of

18



that agreement will be attached as Appendix F and incorporated by reference. *Note: Additional chargeback items may be set forth in Appendix B if applicable.*

24. **Escrow Funds:** Carrier may require an escrow fund under the following terms:

    a.    **Amount:** The minimum amount of the escrow fund or performance bond which Carrier may require from Contractor is $1,500

    b.    **Specific Items:** The specific items for which Carrier may deduct from the escrow fund under the terms of this lease are those items specified in the Chargeback and Computation of Deductions Paragraphs and Appendix B and C of this lease. The failure of Carrier to take monies from such fund for the benefit of Contractor will not be waived by Carrier if Carrier does not deduct those amounts from previous settlements.

    c.    **Right to Replenish Funds.** In the event Escrow Funds are reduced below the required balance as a result of deductions made therefrom pursuant to the terms of this agreement, Carrier shall have the right to replenish the Escrow Funds by setting off amounts from compensation due Contractor over a period of time as may be necessary to reach again the required balance at the rate of $50.00 per week.

    d.    **Accountings:** While the escrow fund is under the control of Carrier, Carrier shall provide an accounting to the Contractor of any transaction involving the escrow fund by clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund. Furthermore, the Contractor has the right to demand at any time an accounting of any transactions involving the escrow fund.

    e.    **Interest:** While the escrow fund is under the control of Carrier, Carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, Carrier will deduct a sum equal to the average advance made to the Contractor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91 day, 13-

19



week Treasury bills as established by the Department of Treasury at the beginning of the quarter.

f.   Return of Escrow Fund.  At the time of the return of the escrow fund, Carrier may deduct monies for those obligations incurred by the Contractor which have been previously specified in this lease, and Carrier shall provide a final accounting to the Contractor for all such final deductions made to the escrow fund.  In no event shall the escrow fund be returned later than 45 days from the date of termination of this lease.

g.   Excess Funding.  Contractor at its election may deposit funds above the required escrow minimum with Carrier for Contractor's unrestricted use.  Carrier will fully comply with Section (a) through (e) with respect to such funds reserving its full rights of deduction.

25.   Identification of Equipment and Return of Identification Upon Termination:  During the period of the lease, and while the equipment is being operated on behalf of Carrier, the equipment shall be identified in accordance with all applicable federal regulations.  Contractor agrees that upon termination of this Agreement, Contractor will promptly return all placards and will no longer operate its equipment under Carrier's authority from the USDOT or other state agencies.  If Carrier's identification numbers are "painted," Contractor will warrant or exhibit to Carrier or its agent that the painted numbers have been removed from the equipment.  Contractor warrants it will not perform motor carrier service under Carrier's USDOT operating authority or have Carrier's USDOT numbers or state numbers on the equipment as working for Carrier while not dispatched by Carrier.  Upon termination of the lease, Carrier may withhold final payment to Contractor until Contractor either returns the above-referenced identification devices, or sends a letter to Carrier certifying that such devices have been lost or stolen. If Contractor does not provide Carrier with a receipt for the equipment upon termination and either return the above-described identification devices or offer evidence that painted signage has been removed, Carrier shall have the right to immediate possession of the equipment to secure removal of signage and Contractor shall bear all reasonable cost, including attorney's fees to accomplish this result.



26.     Surrender of Possession at Termination:  In the event of breach or default by Contractor of its obligation to surrender possession of any trailer, base plate, or equipment as reflected in Appendix B, Contractor shall be liable to Carrier for all expenses and damages including, but not limited to, attorney's fees, court costs and loss of use, incurred by Carrier in reacquiring possession.  In the event Contractor retains custody of property of Carrier or otherwise fails or refuses to deliver possession thereof to Carrier, upon demand or upon termination of this Agreement, in addition to any other remedies available to Carrier, Contractor shall be liable to Carrier in the amount of Fifty Dollars ($50.00) for each day or portion thereof that the item is not returned to the actual or constructive possession of the Carrier, not as a penalty, but as liquidated damages to cover the cost to Carrier of the loss of use.

27.     Condition Upon Surrender of Possession:  Contractor agrees it will surrender possession of items to Carrier in as good a condition as they were when Contractor received them, normal wear and tear from use excepted.

28.     Effect of Termination.  Upon termination of this Agreement as to any or all tractors leased hereunder:

        a.      Contractor shall do all of the following:  (A) submit to Carrier all necessary delivery documents and other paperwork showing full and proper performance of all trips, (B) all identification, permits, plates and decals of Carrier on each tractor shall have been removed by Contractor and returned to Carrier in accordance with the provisions of paragraph 26 above, or if such identification, permits, plates and decals have been lost or stolen, Contractor shall have given written notice to Carrier certifying that same have been removed from the tractor, (C) any OBC shall have been returned to Carrier in accordance with the provisions of paragraph 21 above, and (D) any other Carrier-issued equipment utilized by Contractor shall have been returned to Carrier in accordance with the provisions of paragraph 12 above.

21



b.      Notwithstanding anything contained in paragraph 28(a) above to the contrary, and without affecting Carrier's rights under paragraph 20 above, the final IC compensation settlement, and funds on deposit in the Escrow Funds, shall be paid and disbursed to Contractor within forty-five (45) days of termination.  Carrier shall provide Contractor with an accounting of all such final settlements and disbursements, and any set-offs and deductions thereto, as to any or all tractors so terminated.

c.      Neither party hereto shall, by reason of the termination of this Agreement as to any or all tractors leased hereunder or otherwise, be liable to the other for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated revenues or on account of any expenditures, investments or commitments made in connection with the business or goodwill of Contractor or Carrier or for any other loss arising by reason of the termination hereof.  Any effect of termination on Contractor's rights with respect to any lease/purchase options concerning involved equipment will be set forth in Appendix C.

29.  Assignment:  This Agreement is not assignable by either party without the written consent of both parties.

30.  Entire Agreement:   This Agreement, and Appendices A-E, constitutes the entire agreement and understanding between the parties and shall not be modified, altered or changed without the express written consent of both parties. In the event of any inconsistent provisions, the terms and conditions of signed appendices and addendums shall take priority.

31.  Waiver:  No waiver by Contractor or Carrier of any provision of this Agreement shall be deemed to be a waiver of any other provision hereof.

32.  Multiple Copies:  This Agreement is made in multiple copies.  Contractor shall keep one (1) copy for himself or herself, and keep one (1) copy in the equipment at all times while operating under dispatch for Carrier.

22



33. Jurisdiction and Venue:  This Agreement is executed in Arkansas and any legal proceeding, whether state or federal, involving this Agreement shall be brought in the State of Arkansas.

J.B. HUNT TRANSPORT, INC.

By: _____
(Signature)

_____
Bill Dietrich
(Typed or Printed Name)

Title: _____ Sr. VP of Intermodal Operations _____


INDEPENDENT CONTRACTOR

By: _____
(Signature)

_____
KIET NGUYEN
(Typed or Printed Name)

SSN



Intermodal

**J.B. Hunt Transport, Inc.**
**Intermodal Independent Contractor Operating Agreement**
**Appendix A: Certificate of Authorized Operation and Customer Specifications**

**Contractor Information**

Name:  KIET  NGUYEN

Address:  14318  RAGUS ST , LA PUENTE , CA  91746

**Description of Equipment**

Tractor No:  388767

Make:  FREIGHTLINER  CASCADIA

Year:  2009          VIN:  1FUJGLDRO9LAB4378

Tractor Weight:  17,000

Wheel Base:  242

Fifth Wheel Height:  42

License No:               State:  IN

Independent Contractor Operating Agreement Start Date:
Hub Reading at Start Date:

**Carrier's Customers' Specifications:**

Contractor agrees to perform services in accordance with customer specifications, identified in this Appendix A, that may be safely complied with without violation applicable law or Carrier's Policies or Procedures, and without endangering the public, Contractor's workers, and the property being transported.

**I. Service Standards**

1.   Contractor shall transport such shipments, that Contractor accepts, as Carrier's customer may require by motor vehicle from and to such points between which service may be required, without delay, subject to the availability of suitable equipment for the traffic offered and the specific shipment instructions.

2.   Contractor agrees to perform loading and unloading services as required by Carrier's customer. Each shipment shall be evidenced by a bill of lading or other receipt. Such bill of lading or receipt is to be signed by Contractor, or Contractor's driver or worker, and will



show the kind, condition and quantity of commodities received and delivered by Contractor at the loading and unloading points.

3.   Contractor understands and agrees in performing services under the Agreement that time is of the essence in the pickup, transportation and delivery of individual shipments and that it agrees to meet all prearranged pickup and delivery times.

*On-Time Service Percentage*

Contractor agrees Carrier's customer requires, and Contractor will use best efforts to provide 98% on-time performance. Carrier's customer may require that Contractor, or Contractor's driver, is disqualified and removed from its account temporarily after two service failures within a quarter, and permanently in the event of a third service failure during the next six-month period.

A Service Failure includes incidents of driver error or mechanical error. A Service Failure does not include shipper or receiver delays, railroad, dispatch error, weather, abnormal traffic flow, and/or other Acts of God.

II. Provision of Proof of Delivery

Contractor shall provide Carrier with copies of signed bills of lading and signed delivery receipts as evidence of the complete performance of such services.

III. Refused and Rejected Shipments

In the event Contractor attempts to deliver a shipment at the customer's designated delivery location and such shipment is refused or rejected by the consignee, or Contractor is unable to deliver it for any reason, Contractor shall notify Carrier in order to receive disposition instructions from Carrier or Carrier's customer. Contractor shall provide constant and sufficient security and safety for the shipment until such disposition instructions are received.

IV.   Confidentiality

Contractor hereby agrees to the following terms of confidentiality related to the performance of services for Carrier's customer. They are:

Without the express written consent of the other party, no party shall disclose the terms of Carrier's customer's service specifications and/or shipment information to any third party, except (a) as required by law or regulation, (b) to an authorized audit agency designated by a party for audit purposes or (c) to an affiliate or potential affiliate of a party.

V.   *The following are additional factors related to service performed for Carrier's customer:*

*Primary Traffic Lanes or areas of Service: Within a 125-mile radius of South Gate CA.*
This Appendix A is agreed to by the undersigned parties on the latest date set forth below.

Carrier:  J.B. Hunt Transport, Inc.                     Contractor:   KIET   NGUYEN

By: _____                            By: _____
Signature                                               Signature



## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

This Appendix B to the Intermodal Independent Contractor Operating Agreement applies to services rendered at the Intermodal location of South Gate CA and shall be effective  04/27, 2017.

| | |
|---|---|
| Linehaul-Loaded (Per Mile) | $0.85 |
| Linehaul-Empty (Per Mile) | $0.85 |
| Pick-up / Delivery (Drop/Hook) | $40 |
| Pick-up / Delivery (Live) | $70 |
| Otay Mesa, CA Border Repowering of Load | $45 |
| Empty Trailer Reposition | $30 |
| Hazmat Load | $20 |
| Customer Refused Load | $70 |
| Truck Ordered Not Used (TONU) | $30 |
| Safety Training | $30/Hour |
| Driver Orientation (Per Truck) (After 4 day's holdover rate is $50/day) | $75/Day |
| Fuel Surcharge (Revised 3-29-17) | Surcharge Schedule |
| Tolls | Carrier Paid |
| Base Plates | Carrier Paid |
| Permits | Carrier Paid |
| Scales | Reimbursed |

Initials:  _____     Initials;  _____
For:   J.B. Hunt Transport, Inc.     For:   Independent Contractor



SSN:

### Intermodal ®

## J.B. Hunt Transport, Inc.
### Intermodal Independent Contractor Operating Agreement

### Appendix B:  Compensation and Fees

**Fees, Charges, Balances and Other Amounts**

Pursuant to the applicable provisions of the Independent Contractor Agreement, Contractor shall be liable for the fees, charges, balances and other amounts as set forth in the table below, including, but not limited to the following:

| | |
|---|---|
| Truck Lease/Purchase Payment | NA |
| Independent Contractor-Initiated Re-Power: Minimum Charge | $50 |
| Non-trucking Liability Insurance (Single Limit) | $1,000,000 |
| Preventable Loss: Personal Injury/Property Damage | $1,500 |
| Preventable Loss: Cargo Shortage/Damage | $500 |
| Escrow Funds: Required Balance | $1,500 |
| Escrow Funds: Minimum Weekly Set-Off for Required Balance | $50 |
| Annual Administrative Fee | No Charge |
| Fuel Use/Tax Reserve (per Carrier Directed Mile) | $0.01 |
| Miscellaneous Equipment Issued to Independent Contractor | Equipment Value |
| OBC Monthly Usage Charge | $25 |
| OBC Replacement Value | $2,000 |
| OBC Daily Liquidated Damages (Improper Turn-In) | $50 |
| OBC Maximum Liquidated Damages (Improper Turn-In) | $2,000 |
| Failure to Return Decals/Permits/Plates: Daily Liquidated Damages | $50 |
| Road Service Fee (Tractor Maintenance) | $20/Event |
| Annual Motor Carrier Property Tax (AR, KS, KY, TN) | $55/Year |

Initials:  _LM_   Initials:  _KT_
For:  J.B. Hunt Transport, Inc.   For:  Independent Contractor



SSN: 

**J.B. Hunt Transport, Inc.**
**Intermodal Independent Contractor Operating Agreement**

Appendix B:  Compensation and Fees

**Miscellaneous**

A.  Carrier's Right to Modify or Terminate

Contractor specifically understands and agrees that Carrier, in its sole discretion, shall have the right to modify or terminate from time to time the compensation rates as set forth in Part I of this Schedule and the fees and related amounts set forth in Part II of this Schedule. Carrier shall give Independent Contractor not less than thirty (30) days written notice prior to the effective date of any such change with the exception of the fuel surcharge payment which will vary at the discretion of the Carrier. The terms of this document supersede any previously executed agreement.

| Initials: | _____ | Initials: | _____ |
| For: | J.B. Hunt Transport, Inc. | For: | Independent Contractor |

Page 5 of 6



SSN:

## Intermodal

### J.B. Hunt Transport, Inc.
#### Intermodal Independent Contractor Operating Agreement

##### Appendix B:  Compensation and Fees

**Detention Schedule**

Contractor will be eligible for compensation (detention) in the event that he/she is detained longer than 1.5 hours at a customer.  Contractor will be paid following his arrival or customer appointment time, whichever comes last.  Contractor becomes ineligible if JBHT is unable to charge the customer detention *due to a driver related service failure.*  After 1.5 hours of detention, pay is $30.00 per hour excluding any time the driver is legally required to be off duty or taking a 10-hour break.   All detention pay will be paid in 15 minute increments and administered as follows:

| Detention Minutes Incurred | Detention Hours Paid |
|---|---|
| 0-7 minutes | 0 hours |
| 8-22 minutes | ¼ hour the hourly rate |
| 23-37 minutes | ½ hour the hourly rate |
| 38-52 minutes | ¾ hour the hourly rate |
| 53-60 minutes | 1 hour |

Initials: _L m_                Initials: _KT_
For: ___J.B. Hunt Transport, Inc.___        For: ___Independent Contractor___