**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com
ckennedy@marlinsaltzman.com

*Attorneys for Plaintiffs Duy Nam Ly and Kiet Nguyen, individually and on behalf of all others similarly situated and aggrieved*

**U.S. DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**DUY NAM LY and KIET NGUYEN**, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

**J.B. HUNT TRANSPORT, INC.**, an Arkansas corporation; and **DOES 1 to 100**, inclusive,

Defendants.

**Case No. 2:19-cv-01334-SVW-SS**
**Hon. Steven V. Wilson**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Declaration of Adam M. Tamburelli, Request for Judicial Notice and Proposed Order filed concurrently herewith]

Hearing Date: April 29, 2019
Time: 1:30 p.m.
Courtroom: 10A

Complaint Filed: June 25, 2018
Trial Date: Not Set

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 5

A. There Is a Strong Presumption Against Removal and All Inferences Are Drawn in Favor of Remand ..... 5

B. Defendant's Notice of Removal Was Untimely, As It Could Have Intelligently Ascertained That the AIC Was Over $75,000 from the Allegations in the Complaint Alone ..... 6

1. The AIC Under Plaintiffs' Labor Code/UCL Claims ..... 7

2. The AIC Under Plaintiffs' PAGA Claim ..... 11

3. Plaintiffs' Claims for Injunctive Relief and Attorneys' Fees ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases**

*Arias v. Superior Court (Angelo Dairy)*
46 Cal.4th 969 (2009) .......... 11

*Bluford v. Safeway Stores, Inc.*
216 Cal.App.4th 864 (2013) .......... 9

*Carter v. Mae*
2014 WL 7339208 (C.D. Cal. Dec. 23, 2014) .......... 6

*Chavez v. JPMorgan Chase & Co.*
888 F.3d 413 (9th Cir. 2018) .......... 6

*Dynamex Operations West, Inc. v. Superior Court*
2018 WL 1999120 (2018) .......... 3

*Gaus v. Miles, Inc.*
980 F.2d 564 (9th Cir. 1992) .......... 2, 5

*In re Ford Motor Co.*
264 F.3d 952 (9th Cir. 2001) .......... 13

*Jellinek v. Advance Prods. & Sys., Inc.*
2010 WL 3385998 (S.D. Cal. Aug. 24, 2010) .......... 6

*Kroske v. U.S. Bank Corp.*
432 F.3d 976 (9th Cir. 2005) .......... 6

*Kuxhausen v. BMW Fin. Serv. NA LLC*
707 F.3d 1136 (9th Cir. 2013) .......... 6

*Levy v. Salcor, Inc.*
2014 WL 775443 (W.D. Wash. Feb. 25, 2014) .......... 6

*Lopez v. Charter Communications, Inc.*
2019 WL 763581 (C.D. Cal. Feb. 21, 2019) .......... 6

*Mendoza v. Am. Airlines, Inc.*
2010 WL 5376375 (C.D. Cal. Dec. 22, 2010) .......... 6

*Millar v. Bank of Am., N.A.*
2015 WL 5698744 (N.D. Cal. Sept. 29, 2015) .......... 13

*Pac. Mar. Ass'n v. Mead*
246 F.Supp.2d 1087 (N.D. Cal. 2003) .......... 5

*Pagel v. Dairy Farmers of Am., Inc.*
986 F.Supp.2d 1151 (C.D. Cal. 2013) .......... 11

*Patel v. Nike Retail Servs., Inc.*
58 F.Supp.3d 1032 (N.D. Cal. July 21, 2014) .......... 11

*Prize Frize, Inc. v. Matrix (U.S.) Inc.*
167 F.3d 1261 (9th Cir. 1999) .......... 5

*Rodriguez v. Boeing Co.*
2014 WL 3818108 (C.D. Cal. Aug. 1, 2014) .......... 1, 6

*Schiller v. David's Bridal, Inc.*
2070 WL 2793650 (E.D. Cal. July 14, 2010) .......... 11

*Steenhuyse v. UBS Fin. Servs., Inc.*
317 F.Supp.3d 1062 (N.D. Cal. July 5, 2018) .......... 12

*Vedachalam v. Tata Am. Int'l Corp.*
2010 WL 11484815 (N.D. Cal. Feb. 4, 2010) .......... 9

**Statutes**

28 U.S.C. § 1332 .......... 5

28 U.S.C. § 1446 .......... 1, 5

28 U.S.C. § 1447 .......... 2

Cal. Bus. & Prof. Code § 17200 .......... 3, 14

Cal. Code Civ. Proc. § 1021.5 .......... 14

Cal. Lab. Code § 1174 .......... 3, 12

Cal. Lab. Code § 1194 .......... 3, 10, 12, 14

Cal. Lab. Code § 1197 .......... 3, 12

Cal. Lab. Code § 1198 .......... 3

Cal. Lab. Code § 226.2 .......... 3

Cal. Lab. Code § 226.3 .......... 3, 12

Cal. Lab. Code § 226.7 .......... 3, 9, 12, 14

Cal. Lab. Code § 226.8 .......... 3, 12, 13

Cal. Lab. Code § 2698 .......... 3

Cal. Lab. Code § 2699 .......... 11

Cal. Lab. Code § 2802 .......... 3, 7, 14

Cal. Lab. Code § 510 .......... 3, 10, 12

Cal. Lab. Code § 512 .......... 3

Cal. Labor Code § 218.5 .......... 14
Cal. Labor Code § 226 .......... 4, 9, 10
Cal. Labor Code § 2699 .......... 12
Cal. Labor Code § 2699.3 .......... 2
Code Civ. Proc. § 1060 .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant removed this matter to this Court pursuant to 28 U.S.C. § 1441(a) on February 22, 2019, 94 days after its counsel formally accepted service of the summons and complaint, and 242 days after Defendant first received a copy of the complaint. In support of its Notice of Removal, Defendant recognizes that diversity between the parties exists, and states that "the amount in controversy for *at least some of Plaintiff Ly's claims* exceeds $75,000" and "[t]he alleged damages stemming from these claims, including Plaintiff Ly's request for attorney's fees, further support the notion that Plaintiff Ly has placed *well in excess of $75,000* in controversy in this case." *See* Notice of Removal ("NOR"), Dkt. No. 1, ¶4 (emphasis added). Plaintiffs do not dispute that the diversity and amount in controversy ("AIC") requirements are met here, but submit that the case should be remanded because Defendant's Notice of Removal was untimely as it was filed after the expiration of the statutory 30-day removal period.

Defendant argues that 28 U.S.C. § 1446's "30-day removal period has not commenced because the Complaint did not disclose the amount-in-controversy on its face, and Defendant has not received a post-complaint pleading or other paper that affirmatively and unambiguously specified an amount of damages sufficient to satisfy the federal jurisdictional minimums." NOR, Dkt. No. 1, ¶5. However, "[a] pleading need not identify a specific amount in controversy in order to trigger the thirty-day removal period under 28 U.S.C. § 1446(b)(1) …. The time for removal commences when a defendant is able to 'intelligently ascertain' that a plaintiff's claim exceeds $75,000." *Rodriguez v. Boeing Co.*, 2014 WL 3818108, at *4 (C.D. Cal. Aug. 1, 2014) (citations and quotations omitted).

Here, Defendant could have "intelligently ascertained" that Plaintiff Ly's claims exceeded $75,000 by viewing the allegations of the Complaint alone, and

without conducting any investigation. For example, Plaintiffs assert thirteen (13) causes of action against Defendant, alleging, *inter alia*, that at least since Plaintiff Ly began working for Defendant years prior to the beginning four-year statute of limitations on Plaintiffs' claims, Defendant failed to provide him and all others similarly situated and aggrieved with legally-compliant meal periods, rest periods, and pay stubs, failed to reimburse them for all business related expenses and costs they incurred including, but not limited to, fuel, maintenance, repairs, and liability and other insurance covering work place injuries or property damage, and deducted monies from their paychecks for work-related expenditures. Further, Plaintiffs also assert a claim for violation of the California Private Attorneys General Act ("PAGA"), seek injunctive relief, and seek reimbursement of attorneys' fees. As discussed *infra*, in a trucking misclassification case, that is far more than enough information to put Defendant on notice that the AIC is over $75,000, as it is well-known in the trucking industry that fuel expenses alone amount to $30,000 or more per year per driver.

Importantly, courts must "strictly construe the removal statute against removal jurisdiction," such that there is a "strong presumption" against such jurisdiction, and jurisdiction "must be rejected if there is *any doubt* as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). Accordingly, this Court should remand this matter to the Superior Court of California for the County of Los Angeles pursuant to 28 U.S.C. § 1447(c).

## II. STATEMENT OF FACTS

On June 22, 2018, pursuant to Cal. Labor Code § 2699.3, Plaintiffs provided written notice via certified mail to the California Labor and Workforce Development Agency ("LWDA") *and Defendant* of the specific provisions of the Labor Code alleged to have been violated, along with a draft of the Complaint. See Declaration of Adam M. Tamburelli ("Tamburelli Decl."), Exhibit 1, pp.1-35. Defendant

received the PAGA letter on June 26, 2018. *Id*. at p.36.

On June 25, 2018, Plaintiffs filed their Complaint in the Superior Court of California for the County of Los Angeles. *See* Compl., Dkt. No. 1-1. After Plaintiffs' counsel emailed Defendant's counsel a copy of the filed Complaint, Defendant's counsel executed a formal notice and acknowledgment of receipt, thereby accepting service, on November 21, 2018. *See* Tamburelli Decl., Exhibit 2.

On February 22, 2019, 94 days after acknowledging service and 242 days after receipt of the PAGA letter and draft Complaint, Defendant filed its Notice of Removal, removing the case to this Court. Dkt. No. 1.

In the Complaint, Plaintiffs allege that they and the putative Class/aggrieved employees are not properly classified as independent contractors pursuant to the Labor Code, as well as Wage Order No. 9 after the California Supreme Court's ruling in *Dynamex Operations West, Inc. v. Superior Court*, 2018 WL 1999120 (2018). Specifically, the Complaint asserts the following thirteen (13) causes of action: (1) declaratory relief under Cal. Code Civ. Proc. § 1060; (2) failure to pay minimum wages under Cal. Lab. Code §§ 1194 and 1197); (3) failure to pay overtime wages under Cal. Lab. Code §§ 510, 1194, and 1198 and the Wage Order; (4) failure to provide meal breaks under Cal. Lab. Code §§ 226.7, 512, and the Wage Order); (5) failure to provide rest breaks under Cal. Lab. Code §§ 226.7, 512, and the Wage Order); (6) failure to maintain adequate records under Cal. Lab. Code § 1174 and the Wage Order); (7) failure to reimburse for necessary business expenses under Cal. Lab. Code § 2802; (8) failure to provide adequate wage statements under Cal. Lab. Code §§ 226, 226.2, and 226.3; (9) unlawful deductions from wages under the Wage Order; (10) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*.); (11) quantum merit/unjust enrichment; (12) intentional misclassification under Cal. Lab. Code § 226.8); and (13) violations of PAGA, Cal. Lab. Code §§ 2698, *et seq*.).

//

As it pertains to Plaintiff Ly, whose claims Defendant asserts as a basis for removal, Plaintiffs allege that he has been working with Defendant November 10, 2011, to the present. Compl., Dkt. No. 1-1, ¶12. Plaintiffs allege that he and the others worked 10 hours per day, 5 days per week. *Id*. at ¶¶55.

As a factual basis for their claims, Plaintiffs allege that they "were solely paid on a piece rate basis. They were not compensated for any other work that they regularly performed and were generally required to work at least 10 hours a day. They were not provided meal breaks or rest periods by Defendants. They did not receive pay stubs that, among other issues, recorded their rate of pay, the number of hours that they worked, or broke out the total hours of compensable rest and recovery periods." *Id*. at ¶41. Further, "because Defendants have no rest break policy, the delivery workers are not paid, at all, for the rest periods that the Labor Code and Wage Order designate as 'hours worked.' In each and every instance, the workers receive less than the minimum wage for their mandated rest periods." *Id*. at ¶41.

Plaintiffs also allege that Defendant has "failed to reimburse Plaintiffs and Class Members for all business related expenses and costs incurred including, but not limited to, fuel, maintenance, repairs, uniform costs and expenses, scanner fees, cell phone fees, GPS service fees, and liability and other insurance covering work place injuries or property damage." *Id*. at ¶83; *see also* ¶53. Further, Defendant "also takes deductions from Plaintiffs' and Class Members' paychecks for work-related expenditures in direct consequence of their job duties." *Id*. at ¶84. And thus, "[a]s a result of J.B. Hunt's misclassification, ***Plaintiffs and Class Members are forced to absorb thousands of dollars of costs appropriately borne by their employer*****[.]**" *Id*. at ¶5 (emphasis added).

In addition to damages, Plaintiffs also seek injunctive relief. In their Eighth Cause of Action, Plaintiffs allege that they "are entitled to recover from Defendants the amounts improperly and illegally deducted from their compensation, as well as

the penalty specified in Cal. Labor Code § 226(e), an injunction to enjoin the continuation of this policy, practice and/or custom, and an award of reasonable costs and attorneys' fees." *Id*. at ¶131.[1] Additionally, pursuant to their Unfair Competition Law claim (Tenth Cause of Action), Plaintiffs seek an injunction to prohibit Defendants from engaging in the unfair business practices complained of herein, for an injunction requiring Defendants to give notice, to persons to whom restitution is owing, of the means by which to file and make claim for restitution. *Id*. at ¶143, and Prayer, ¶11 (emphasis added).

## III. ARGUMENT

### A. There Is a Strong Presumption Against Removal and All Inferences Are Drawn in Favor of Remand.

To invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a), a matter must "exceed[] the sum or value of $75,000." In determining whether Defendant met the burden, all inferences are to be drawn against Defendant and in favor of remand. "Disputed questions of fact and ambiguities in the controlling law must be resolved in favor of the remanding party." *Pac. Mar. Ass'n v. Mead*, 246 F.Supp.2d 1087, 1089 (N.D. Cal. 2003). Moreover, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of the removal in the first instance" since lack of federal jurisdiction would make litigating the disputed matter in federal court a futile effort. *Gaus*, 980 F.2d at 566; *see also Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) ("The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.").

//

//

//

[1] Plaintiffs also seek attorneys' fees in paragraphs 32, 101, 108, and 136.

**B. Defendant's Notice of Removal Was Untimely, As It Could Have Intelligently Ascertained That the AIC Was Over $75,000 from the Allegations in the Complaint Alone.**

Defendant failed to timely remove this action within the first thirty-day window mandated under 28 U.S.C. § 1446(b)(1), which is triggered after the Defendant received "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id*. The Complaint, along with the types of damages Plaintiffs are seeking here, made it facially apparent that the amount in controversy exceeds the jurisdictional minimum amount of $75,000.

Defendant incorrectly asserts that the 30-day removal period has not yet commenced because the Complaint did disclose the AIC on its face, but as this Court recently acknowledged, the appropriate standard is as follows:

> A pleading need not identify a specific amount in controversy to trigger the 30-day removal period. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Rodriguez v. Boeing Co.*, 2014 WL 3818108, at *5 (C.D. Cal. Aug. 1, 2014). Rather, "the time for removal commences when the defendant is able to intelligently ascertain that plaintiff's claim exceeds $75,000." *Rodriguez*, 2014 WL 3818108, at *4; *see also Mendoza v. Am. Airlines, Inc.*, 2010 WL 5376375, at *2 (C.D. Cal. Dec. 22, 2010) (same).

*Lopez v. Charter Communications, Inc.*, 2019 WL 763581, at *2 (C.D. Cal. Feb. 21, 2019)[2]; *see also Kuxhausen v. BMW Fin. Serv. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (Although "defendants need not make extrapolation or engage in guesswork" to determine the amount in controversy, the removal statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.").

//

---

[2] Courts in this District and others recognize that granting motions to remand is appropriate even if the plaintiffs do not explicitly state the AIC in the Complaint. *See, e.g., Rodriguez, supra*, *Carter v. Mae*, 2014 WL 7339208, at *1 (C.D. Cal. Dec. 23, 2014); *Jellinek v. Advance Prods. & Sys., Inc.*, 2010 WL 3385998, at *1 (S.D. Cal. Aug. 24, 2010); *Levy v. Salcor, Inc.*, 2014 WL 775443, at *4 (W.D. Wash. Feb. 25, 2014).

Here, Plaintiff Ly seeks damages, penalties, injunctive relief, and attorneys' fees on his own behalf as well as on behalf of all others similarly situated and aggrieved, and the AIC calculation includes "all relief claimed at the time of removal to which the plaintiff would be entitled if []he prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018).

As set forth below, Defendant could have reasonably and intelligently ascertained the AIC *immediately* upon reviewing the allegations of the Complaint, without conducing any investigation into the facts, especially in a truck driver misclassification case such as this.

**1. The AIC Under Plaintiffs' Labor Code/UCL Claims.**

At the outset, Defendant could have determined that Plaintiff Ly's claims satisfied the $75,000 jurisdictional minimum when it saw his claims for failure to reimburse for necessary business expenses under Cal. Lab. Code § 2802 (Seventh Cause of Action) and unlawful deductions from wages under the Wage Order (Ninth Cause of Action). As a basis for those claims, Plaintiffs allege that Defendant failed to reimburse Plaintiffs and Class Members for all business related expenses, and takes deductions from Plaintiffs' and Class Members' paychecks for work-related expenditures in direct consequence of their job duties. Compl., Dkt. No. 1-1, ¶¶81-86. These expenses include, inter alia, fuel, oil, tires and equipment, vehicle maintenance costs and repairs, various taxes and assessments, and expenses necessary to keep their trucks in compliance with all federal and state safety laws and regulations.

It is well-known in the trucking industry that truck drivers who are classified as independent contractors (otherwise known as "owner-operators") incur more than $30,000 per year in fuel expenses alone. Indeed, a 2015 study commissioned and published by the California Trucking Association, which bills itself as the nation's largest statewide organization representing the trucking industry," revealed that

California owner-operator truck drivers averaged more than $30,000 per year in fuel costs as far back as 2013, while their average total annual costs ranged from $34,663 to $124,659. *See* Plaintiffs' Request for Judicial Notice, Exhibit A, pp. 11-12.

Indeed, Defendant obviously knows that someone like Plaintiff Ly, who alleges that he works 10 hours per day, 5 days per week through the entire statute of limitations period, would incur over $75,000 in fuel expenses.[3] To be sure, Defendant—a publicly traded transportation corporation—states in filings with the U.S. Securities and Exchange Commission that "[w]e are one of the largest surface transportation, delivery, and logistics companies in North America."[4] On its website, it boasts that "J.B. Hunt Intermodal operates the largest fleet of company-owned 53' containers and drayage fleets in North America."[5] Further, Defendant publicly recognizes the high cost of fuel, stating "According to the American Trucking Associations (ATA), fuel is often the second-highest cost for fleets–shadowed only by driver pay."[6]

As such, the common industry knowledge of the average amount that its independent contractors spend on fuel driving their assigned routes is certainly within Defendant's purview. To hold otherwise and conclude that Defendant could not "intelligently ascertain" that Plaintiff Ly incurred less than $75,000 in fuel alone in a four-year period without conducting an investigation would require this Court to hold that Defendant is not imputed with knowledge of its core business operations, stripping the "intelligently ascertain" standard of any meaning whatsoever.

---

[3] In fact, in the Notice of Removal, Defendant admitted that it "has deducted more than $75,000 from Plaintiff Ly's compensation during the relevant time period alleged in the Complaint for fuel, maintenance, and business insurance expenses." NOR, Dkt. No. 1, ¶4.

[4] *See* Defendant's 2017 10-K, available at https://www.sec.gov/Archives/edgar/data/728535/000143774918003239/jbht20171231_10k.htm

[5] *See* https://www.jbhunt.com/freight-shipping-solutions/intermodal/

[6] https://www.jbhunt.com/blog/2018/01/08/improving-mpg-trucking/

Moreover, that the AIC exceeds $75,000 is made even more obvious by the value of Plaintiff Ly's other Labor Code claims. For example, just the violations discussed below—*not including the above reimbursement/deduction claims, PAGA penalties, injunctive relief, or attorneys' fees*—amount to **$51,257.34**. The below calculations assume Plaintiff Ly worked five days per week, 10 hours per day during the Class Period,[7] as alleged in the Complaint. Additionally, in order to provide a conservative estimate, Plaintiffs used minimum wage for the relevant periods, and only calculated the amounts at issue up through the date of service of process, not through the date of removal.

*Meal & Rest Period Premium Wages*

(Fourth and Fifth Causes of Action)

Plaintiff Ly is entitled to one hour of premium pay for each missed meal period, and one hour of premium pay for each day in which a rest period was provided. *See* Cal. Labor Code § 226 and Wage Order No. 9.

- 2014 (min wage $9/hr): $18/day x 135 workdays from June 26-EOY = $2,430
- 2015 (min wage $9/hr): $18/day x 260 workdays = $4,680
- 2016 (min wage $10/hr): $20/day x 260 workdays = $5,200
- 2017 (min wage $10.50/hr): $21/day x 260 workdays = $5,460
- 2018 (min wage $11/hr): $22/day x 232 workdays until service = $5,104

**TOTAL: $22,874**

*Unpaid Wages for working through rest periods: 20 minutes per day*

(Second Cause of Action)

Plaintiffs are entitled to be compensated for the time that they spent working while they were supposed to be relieved of duty for each of their two rest periods.

[7] Plaintiffs' Labor Code claims are predicate violations for their UCL claim, and are therefore subject to the four-year statute of limitations set forth in the UCL. *Vedachalam v. Tata Am. Int'l Corp.*, 2010 WL 11484815, at *6 (N.D. Cal. Feb. 4, 2010).

*See* Cal. Labor Code § 226.7; *see also Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864 (2013).

- 2014 (min wage $9/hr): $3/day x 135 workdays from June 26-EOY = $405
- 2015 (min wage $9/hr): $3/day x 260 workdays = $780
- 2016 (min wage $10/hr): $3.33/day x 260 workdays = $865.80
- 2017 (min wage $10.50/hr): $3.50/day x 260 workdays = $910
- 2018 (min wage $11/hr): $3.66/day x 232 workdays until removal = $849.12

**TOTAL: $3,809.92 + liquidated damages in an amount equal to wages unlawfully unpaid under Labor Code § 1194.2 ($3,809.92) = $7,619.84.**

*Failure to Pay Overtime*

(Third Cause of Action)

The below calculation assumes time-and-a-half premium pay for two hours per workday over eight hours. *See* Cal. Labor Code § 510 and Wage Order No. 9.

- 2014 (min wage $9/hr): $13.50/day x 135 workdays until EOY = $1,822.50
- 2015 (min wage $9/hr): $13.50/day x 260 workdays = $3,510
- 2016 (min wage $10/hr): $15/day x 260 workdays = $3,900
- 2017 (min wage $10.50/hr): $15.25/day x 260 workdays = $3,965
- 2018 (min wage $11/hr): $15.50/day x 232 workdays until service = $3,596

**TOTAL: $16,793.50**

*Wage Statement Violations*

(Eighth Cause of Action)

Under Cal. Labor Code § 226(e)(1), "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."

Since Defendant pays Plaintiff Ly weekly, he is entitled to the statutory maximum amount of penalties.

**TOTAL: $4,000**

**2. The AIC Under Plaintiffs' PAGA Claim.**

PAGA permits an aggrieved employee to file a civil action "on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a); *see also Baumann v. Chase Investment Services Corp.*, 747 F.3d 1117, 1119 (9th Cir. 2014) (PAGA "authorizes aggrieved employees, acting as private attorneys general, to recover civil penalties from their employers for violations of the Labor Code."). "[T]he civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699(f)(2). As an incentive for private citizens to act on behalf of the state, PAGA provides them with a 25% cut of the penalties, where they otherwise would get none. *See* Cal. Lab. Code § 2699(i). But the state, the real party in interest, receives a 75% cut. *See id*. This is because an aggrieved employee filing a civil action under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court (Angelo Dairy)*, 46 Cal.4th 969, 980 (2009).

While PAGA claims are unquestionably included in the AIC calculation, *Pagel v. Dairy Farmers of Am., Inc.*, 986 F.Supp.2d 1151, 1160 (C.D. Cal. 2013), there is a split of authority among California federal courts regarding how to calculate the AIC under PAGA claims. Many courts have held that the fact that certain alleged penalties would go to the LWDA (and not the plaintiff or individual aggrieved employees) does not remove these sums from the AIC calculation. As one court explained, "it makes little difference whether the LWDA shares in the recovery—Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in controversy." *Schiller v. David's Bridal, Inc.*, 2070 WL 2793650, at *8

(E.D. Cal. July 14, 2010) (emphasis added); *Patel v. Nike Retail Servs., Inc.*, 58 F.Supp.3d 1032, 1048 (N.D. Cal. July 21, 2014). Meanwhile, other courts have held that the LWDA's 75% share of the penalties are not part of the AIC, only the 25% attributable to Plaintiff. *See*, *e.g.*, *Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F.Supp.3d 1062, 1069 (N.D. Cal. July 5, 2018).

Here, even without investigating the number of aggrieved employees at issue, Defendant could have intelligently ascertained that Plaintiff Ly's PAGA claims are substantial. A conservative estimate of these penalties—assuming that only Plaintiff Ly and Plaintiff Nguyen are aggrieved employees, and only 25% of their PAGA claim is attributable to the AIC—places at least **$87,150** in controversy, excluding attorneys' fees and costs.

The below calculations are based on the assumption that PAGA penalties, unless otherwise noted, are assessed at $100 for the first violation and $200 for each subsequent violation (Cal. Labor Code § 2699(f)(2)), for 73 pay periods beginning one year before Defendant received Plaintiffs' PAGA letter through the date of service.

- Meal Period Claims (§ 226.7): $100 + ($200 x 72) = $14,500
- Rest Period Claims (§ 226.7): $100 + ($200 x 72) = $14,500
- Unpaid Minimum Wages Claim (§ 1197.1): $100 + ($250 x 72) = $18,050
- Unpaid Overtime Claim (§§ 510/1194): $100 + ($200 x 72) = $14,500
- Noncompliant Wage Statements (§ 226.3): $250 + ($1,000 x 72) = $72,250
- Inaccurate Records (§ 1174): $500

**TOTAL: $134,300 each for Plaintiffs Ly and Nguyen, for a total of $268,600.**

Additionally, Plaintiffs have asserted a claim for Intentional Misclassification under Labor Code § 226.8, which imposes substantial penalties against an employer if the LWDA or court determines the misclassifications were willful. Per section 226.8(b), an employer may be subject to a civil penalty of at least $5,000 and up to

$15,000 for *each* misclassification. Per section 226.8(c), if the LWDA or court finds that the employer engaged in a pattern or practice of misclassifying their employees, the employer is subject to a civil penalty of at least $10,000 and up to $25,000 for *each* violation.

Plaintiffs alleged that "Defendants engaged in a pattern and/or practice of violations of Labor Code § 226.8(a)." Compl., Dkt. No. 1-1, ¶51. Accordingly, the AIC under this claim for Plaintiffs Ly and Nguyen is $30,000 under section 226.8(b), and $50,000 under section 226.8(c), for a total of $80,000.

Thus, the total amount of penalties alleged under Plaintiffs' PAGA claim, assuming Plaintiffs Ly and Nguyen are the only aggrieved employees, is **$348,600**. If this Court follows the line of cases holding that only 25% of this amount is included in the AIC, then the AIC is **$87,150**.

There is also authority holding that the Court may only consider the PAGA penalties attributable to the named Plaintiff. *See Millar v. Bank of Am., N.A.*, 2015 WL 5698744, at *4 (N.D. Cal. Sept. 29, 2015) (collecting cases). Under that calculation, Plaintiff Ly's PAGA claim alone satisfies the jurisdictional minimum, as it would amount to **$174,300** ($134,300 + $40,000 for individual Intentional Misclassification penalties).

**3. Plaintiffs' Claims for Injunctive Relief and Attorneys' Fees.**

When viewed in conjunction with the above, Plaintiff Ly's claims for injunctive relief, attorneys' fees and costs leave little doubt that the AIC met the statutory minimum here. Even though Plaintiffs cannot identify a specific amount based on the allegations of the Complaint alone, the claims are substantial, and Defendant could intelligently ascertain that these claims push the AIC far beyond $75,000.

For example, "where the value of a plaintiff's potential recovery ... is below the jurisdictional amount, but the potential cost to the defendant of complying with

the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001). Here, Plaintiffs seek the following public injunctive relief under their Tenth Cause of Action pursuant to Bus. & Prof. Code § 17200, *et seq*.:

> to prohibit Defendants from engaging in the unfair business practices complained of herein, for an injunction requiring Defendants to give notice, to persons to whom restitution is owing, of the means by which to file and make claim for restitution.

Compl., Dkt. No. 1-1, ¶143 and at Prayer, ¶11 (emphasis added).

In other words, Plaintiffs are seeking a Court order to force Defendant to change its business practices, including changing its business model as it pertains to classifying truck drivers as independent contractors.

Further, Plaintiffs' allegations in the Complaint supports a claim for attorneys' fees under various statutes, including but not limited to Cal. Labor Code §§ 218.5, 226(e), 226.7, 1194, 2802, and 2699, and Cal. Code Civ. Proc. § 1021.5.

## IV. CONCLUSION

Strictly construing 28 U.S.C. 1441 against removal jurisdiction as required, this Court should find Defendant could have intelligently ascertained that the AIC on Plaintiff Ly's claims was well above $75,000 based on the allegations in the Complaint alone in this case. As discussed above, there were multiple methods by which Defendant could have intelligently ascertained that AIC was met here based on the Complaint without conducting any investigation into the facts, any of which by itself would have been sufficient, including:

First, it is common knowledge in Defendant's industry that truck drivers incur tens of thousands of dollars in expenses per year, including over $30,000 in annual fuel expenses, and Plaintiff Ly seeks four years of restitution for those expenses.

Second, the allegations in the Complaint reveal that Plaintiff Ly's non-

reimbursement, non-PAGA Labor Code claims amount to at least **$51,257.34**, exclusive of attorneys' fees and costs. That amount, plus the value of Plaintiff Ly's PAGA claim—no matter which of the calculations offered above is accepted, **$87,150, $174,300, or $348,600**—easily put the AIC over $75,000.

Third, to the extent that Defendant thought it was a close call, Plaintiffs' claim for an injunction changing Defendant's business practices statewide and mailing notice, along with Plaintiff Ly's entitlement to attorneys' fees, costs, and interest, should have removed any doubt that this case was removable on its face.

Accordingly, the Court should grant Plaintiffs' motion, and remand this case to state court.

DATED: March 25, 2019

**MARLIN & SALTZMAN, LLP**

By: *__/s/ Adam Tamburelli__*

Stanley D. Saltzman, Esq.
Adam M. Tamburelli, Esq.
Cody A. Kennedy, Esq.

*Attorneys for Plaintiffs and the putative Class*