1  **MARLIN &** SALTZMAN**, LLP**
   Stanley D. Saltzman, Esq. (SBN 90058)
2  29800 Agoura Road, Suite 210
   Agoura Hills, California   91301
3  Telephone:   (818) 991-8080
   Facsimile:   (818) 991-8081
4  ssaltzman@marlinsaltzman.com

5  *Attorneys for Plaintiffs, the putative Class,*
6  *and the Aggrieved Employees*

7

8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10

11 **DUY NAM LY** and **KIET NGUYEN**,    ) Case No. 2:19-cv-01334-SVW-SS
   individually and on behalf of all others    ) Hon. Stephen V. Wilson
12 similarly situated,                          )
                                                )
13                                              ) **CLASS ACTION**
              Plaintiffs,                       )
14                                              ) **PLAINTIFFS' NOTICE OF MOTION AND**
       vs.                                      ) **MOTION FOR PRELIMINARY APPROVAL**
15                                              ) **OF CLASS ACTION SETTLEMENT;**
                                                ) **MEMORANDUM OF POINTS AND**
16 **J.B. HUNT TRANSPORT, INC.**, an           ) **AUTHORITIES**
   Arkansas corporation; and **DOES 1 to**     )
17 **100**, inclusive,                          ) [Declaration of Stanley D. Saltzman,
                                                ) Proposed Order,]
18                                              )
              Defendants.                       )
19                                              )
                                                ) DATE:     August 17, 2020
20                                              ) TIME:     1:30 p.m.
                                                ) CTRM:     10A
21
22
23 _____ )
24
25
26
27
28

---

**TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that that on August 17, 2020, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 10A in the above entitled courthouse located at 350 W. First Street, Los Angeles, California, 90012, Plaintiffs, on their own behalf, and on behalf of the proposed settlement class, will move for preliminary approval of a classwide settlement reached with Defendant, J. B. Hunt Transport, Inc. (J.B. Hunt). J.B. Hunt does not oppose this Motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the Declaration of Stanley D. Saltzman (Saltzman Decl.), the Stipulated Settlement Agreement and Release (Stipulation) entered into by the parties attached as Exhibit A to the Saltzman Declaration, and upon such further evidence, both documentary and oral, as may be presented at the hearing of the Motion.

Plaintiffs hereby request that the Court enter an Order as follows:

(1) Certifying a settlement class defined as follows:

"Class" shall mean all current and former California-resident truck drivers who signed Intermodal Independent Contractor Operating Agreements with appendices (Intermodal ICOAs) under which they performed work for J.B. Hunt in California at any time during the Class Period, as defined in the Stipulation, and whose names appear on the list attached thereto as **Exhibit 1**.

(2) Preliminarily approving the proposed settlement, and issuing the [Proposed] Order Granting Preliminary Approval of the Class Action Settlement, filed herewith, or such other Order granting the Motion as the Court may issue;

(3) Directing that the settlement class be given notice of the settlement in the form of the proposed Notice agreed to by the Parties, attached as **Exhibit 2** to Stipulation, or such other Notice as the Court may deem appropriate; and

(4) Setting a final fairness hearing, at which the Court will consider final approval of the Stipulation, entry of a proposed final judgment, and class counsel's

ii

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS

application for an award of attorneys' fees and reimbursement of costs and expenses, as well as a service award for each of the Plaintiffs as class representatives.

DATED: July 6, 2020

**MARLIN & SALTZMAN, LLP**

By:    */s/ Stanley D. Saltzman*

Stanley D. Saltzman, Esq.
*Attorneys for Plaintiffs and the putative Class*

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND NATURE OF RELIEF SOUGHT ........................ 1

II.     SUMMARY OF THE LITIGATION ........................................................ 3

    A.   Nature of the Case ...................................................................... 3

III.    FACTUAL AND PROCEDURAL BACKGROUND OF ACTION ............. 3

    A.   Plaintiffs' Filing and Claims Asserted ...................................... 3

    B.   J.B. Hunt's Answer and Counterclaim ...................................... 4

    C.   Early Motion Practice ................................................................ 5

    D.   Expedited Discovery, Investigation and Research ................... 5

    E.   Mediation ................................................................................... 7

    F.   Case Status and the Benefits of Settlement .............................. 8

    G.   J.B. Hunt's Counterclaim and Denial of Wrongdoing and Liability. ..... 9

    H.   Intent of the Settlement. ............................................................ 9

IV.    SUMMARY OF THE SETTLEMENT ...................................................... 10

    A.   Summary of Settlement Terms ................................................ 10

    B.   Settlement Value ...................................................................... 11

        1.   Unreimbursed Business Expenses/Unlawful Deduction from Wages .......................................................................... 12

        2.   Failure to Pay Minimum Wages .................................... 14

        3.   Failure to Pay Meal & Rest Period Premiums .................. 14

        4.   Failure to Provide Accurate   Statements ....................... 15

        5.   Summary of Exposure Analysis .................................... 15

        6.   Additional Considerations ............................................ 16

V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE 17

    A.   Federal Rule of Civil Procedure 23(a) Requirements Are Met for the Settlement Class .................................................. 17

       1.     Numerosity ………………………………………….. 17

       2.     Commonality …………………………………………... 18

       3.     Typicality …………………………………………….. 18

       4.     The Adequacy Requirements Are Satisfied …………………. 19

   B.    The Federal Rule of Civil Procedure 23(b) Standards Are Satisfied....19

       1.     Common Issues Predominate ………………………………. 19

       2.     The Class Action Device Is Superior ………………………. 20

VI.    NO MANAGEABILITY ISSUES PRECLUDE CERTIFICATION ..........20

VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS "CLASS COUNSEL" ........................................................................................20

VIII.  THE SETTLEMENT EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL ..........................................................21

IX.    NATURE AND METHOD OF CLASS NOTICE ...................................23

X.     CLAIMS ADMINISTRATION ...........................................................24

XI.    ATTORNEYS' FEES AND COSTS......................................................24

XII.   SERVICE AWARD FOR PLAINTIFFS ...............................................24

XIII.  CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Advertising Specialty Nat'l Assoc. v. Fed'l Trade Comm'n.*,
    238 F.2d 108 (1st Cir. 1956)...........................................................................17

*Alvarez v. XPO Logistics Cartage LLC*,
    2018 WL 6271965 ...............................................................................12, 15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. Cal. 2001)....................................................................18

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992)...........................................................................21

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)......................................................................................19

*Dynamex Operations West, Inc. v. Superior Court*,
    4 Cal. 5th 903 (2018) .......................................................................................12

*Grant v. Capital Mgmt. Servs., L.P.*,
    2013 WL 6499698 (S.D. Cal. 2013).................................................................21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..............................................20, 21, 22, 23

*Huddleston v. John Christner Trucking, LLC*,
    2018 WL 6259220 (N.D. Okla. 2018)..............................................................12

*IBT, et al. v. FMCSA, et al.*,
    No. 19-70323 (9th Cir.) ....................................................................................15

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. 2005) ................................................................21

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
    2011 WL 280991 (C.D. Cal. 2011) ..................................................................23

*In re Surebeam Corp. Secs. Litig.*,
    2004 WL 51590615 (S.D. Cal. 2004)...............................................................19

*Lazarin v. Pro Unlimited, Inc.*,
    2013 WL 3541217 (N.D. Cal. 2013).................................................................20

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................20

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. Cal. 2010*)* ................................................................. 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 23

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................................ 21

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ........................................................................ 17

*Valadez v. CSX Intermodal Terminals, Inc.*,
    2017 WL 1416883 (N.D. Cal. 2017) ............................................................ 12

## **Statutes**

Labor Code § 2802 ............................................................................................. 4, 12

## **Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 17, 19

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 18

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 18

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 19

Fed. R. Civ. P. 23(b) ......................................................................................... 17, 19

Fed. R. Civ. P. 23(b)(3) ........................................................................... 17, 19, 20, 23

Fed. R. Civ. P. 23(c)(2) ........................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 23

Fed. R. Civ. P. 23(c)(3) ........................................................................................... 24

Fed. R. Civ. P. 23(g) ............................................................................................... 20

## **Other Authorities**

*Manual of Complex Litigation*, 4th, § 21.632 (2004) .............................................. 21

Newberg & Conte, *Newberg On Class Actions* § 11.41 (3d ed. 1992) ..................... 22

vii

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION AND NATURE OF RELIEF SOUGHT

Plaintiffs and the putative class they propose to represent seek preliminary approval of a substantial <u>non-reversionary</u> settlement of all claims asserted in the First Amended Complaint (Complaint) filed in this Action.  The settlement includes a compromise of all claims that have been alleged to date, as well as the California Private Attorneys General Act (PAGA) claim asserted in the Complaint pursuant to the required notice sent to the California Labor and Workforce Development Agency (LWDA) and to J.B. Hunt.  The total monetary value of the proposed non-reversionary settlement is $6,500,000.00.

This case involved novel and cutting-edge legal theories related to class certification, liability under California's wage and hour laws, and federal preemption. These legal issues have been the subject of numerous appellate disputes over the last decade in both California state court and in the Ninth Circuit, at least two of which have involved Plaintiffs' counsel, relating to truck driver wage and hour rights under California law, including preemption under the Federal Aviation Administration Authorization Act (FAAAA).  Other preemption issues for some of the claims asserted at this very time pend in the Ninth Circuit Court of Appeals, and the California Supreme Court. It is likely that preemption issues will also arise out of wage and hour claims under the California Labor Code and asserted against trucking companies by independent contractors under the Truth in Leasing Act (TILA), which will lead to additional future appellate proceedings.

Against this shifting legal playing field, Plaintiffs and J.B. Hunt (the Parties) focused on prompt and targeted legal discovery, depositions, and mediation-related informal discovery, and reached a prompt, yet substantial, settlement.

The Parties, represented by trial counsel very familiar with one another due to several prior unrelated legal battles, and thus well aware of the strengths of each of the respective counsel, faced either many years of difficult litigation, or a prompt

1

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS

resolution reflective of the realities of the case. In a prior matter involving the same Plaintiffs' counsel and J.B. Hunt, which involved employee truck drivers, the parties engaged in over eleven years of comprehensive litigation before finally achieving a resolution.  This time, J.B. Hunt's counsel reached out promptly once the litigation heated up because, in part, the Parties faced many very quick deadlines imposed by this Court.  To avoid a possible second decade of litigation, with ongoing uncertainty relating to class certification, liability, and preemption, settlement was reached.

While the Parties had engaged in formal mediation before the Honorable Edward Infante (ret.) they were unable to resolve the case at that time.  However, with the continued involvement of the mediator, and direct negotiations between counsel as well, the settlement was achieved a month later.

The details of the settlement, which triggers the payment of the stated $6,500,000.00 to the class members, of whom there are only 312, are set forth in the Class Action Settlement Agreement, attached as Exhibit A to the Declaration of Stanley D. Saltzman (Saltzman Decl.)

For Plaintiffs, the settlement represents a sizeable recovery on a per person basis, especially when recognizing the significant legal issues before them absent resolution.  For J.B. Hunt, this settlement enables it to achieve closure promptly, and to move forward in this uncertain legal environment.

The settlement provides for a ***non-reversionary*** payment of **$6,500,000.00 for a class of only 312 drivers**. ***No class member will be required to submit a claim form to receive his or her share of the settlement proceeds.*** All participating settlement class members (*i.e.*, those who do not timely opt out of the settlement), will have a check mailed to them after finality of the settlement, with each participating class member's settlement amount tied to their tenure with J.B. Hunt.

Additionally, the Parties have agreed on the form of the Notice of Class Action Settlement, attached as Exhibit 2 to the Stipulation. (Saltzman Decl. ¶¶ 20-21)   The Parties have further agreed to the designation of CPT Group, Inc., as the Settlement

Administrator. (*Id.* at ¶ 22) The Stipulation contains all necessary settlement terms.

## II.   SUMMARY OF THE LITIGATION

### A.   <u>Nature of the Case</u>

Plaintiffs and the proposed settlement class members provided services to J.B. Hunt as independent contractor truck drivers, primarily driving within the state of California. Plaintiffs allege that J.B. Hunt misclassified them as independent contractor drivers, when in fact they were treated as "employees," but denied the benefits of employment, and that J.B. Hunt required them to bear the burden of expenses that employee drivers could never be required to pay.  These basic issues formed the basis of the claims asserted in the Action.  Plaintiffs alleged that J.B. Hunt's misclassification of the drivers triggered the claims listed below.

J.B. Hunt denied that it misclassified the drivers and claimed that in all respects it treated the drivers as independent contractors and complied with California law.  It also asserted that federal law preempted certain sections of the California Labor Code, which further supported its classification of the drivers as independent contractors.  Finally, as discussed below, it filed counterclaims against Plaintiffs, placing them at personal financial risk for having brought this action on behalf of themselves and those allegedly similarly situated.

## III.   FACTUAL AND PROCEDURAL BACKGROUND OF ACTION

### A.   <u>Plaintiffs' Filing and Claims Asserted</u>

Plaintiffs filed their Class Action Complaint, captioned *Duy Nam Ly and Kiet Nguyen, individually and on behalf of all others similarly situated v. J.B. Hunt Transport, Inc., an Arkansas corporation; and Does 1 to 100, inclusive,* Case No. BC710744, in the Superior Court of Los Angeles County, California, on June 25, 2018. J.B. Hunt removed the Action under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332(a), to the Central District of California on February 22, 2019. C.D. Cal. Case No. 2:19-cv-01334 (Dkt. 1).

Plaintiffs filed their First Amended Class Action Complaint (Complaint) on

June 3, 2019. (Saltzman Decl. ¶ 4.) The Complaint asserts that J.B. Hunt intentionally misclassified Plaintiffs and a proposed class of similarly situated drivers under Cal. Lab. Code § 226.8 and alleges the following claims predicated on that finding: (1) failure to pay minimum wages pursuant to Cal. Labor Code §§ 1194 and 1197 and Wage Order No. 9-2001; (2) failure to provide meal breaks under Cal. Labor Code §§ 226.7, 512 and Wage Order No. 9-2001; (3) failure to permit and compensate for rest breaks under Cal. Labor Code §§ 226.7, 512 and Wage Order No. 9-2001; (4) failure to reimburse for necessary business expenses under Cal. Labor Code § 2802; (5) unlawful deductions from wages under Cal. Labor Code § 221 and Wage Order No. 9-2001; (6) failure to provide adequate wage statements under Cal. Labor Code §§ 226, 226.2 and 226.3 and Wage Order No. 9-2001; (7) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; (8) quantum merit/unjust enrichment; and (9) violations that support PAGA penalties under Cal. Labor Code § 2698, *et seq.*, including under Cal. Lab. Code §§ 200-203, 226, 226.2, 226.3, 226.7, 226.8, 510, 512, 558, 1174, 1192, 1194, 1197, and 2802 (the Claims).

## B.   **J.B. Hunt's Answer and Counterclaim.**

On March 1, 2019, J.B. Hunt filed its Answer and Affirmative Defenses to Plaintiffs' originally filed Class Action Complaint, plus its Counterclaim and Demand for Jury Trial. J.B. Hunt denied and continues to deny any liability to the Plaintiffs and the putative class and raised various defenses to the Claims. The Counterclaim alleged that Plaintiffs/Counterclaim Defendants signed Intermodal ICOAs with J.B. Hunt to lease a tractor trailer and a driver, pursuant to TILA and the Federal Leasing Regulations, 49 C.F.R. Part 376 (Leasing Regs.), to J.B. Hunt. Based thereon, J.B. Hunt asserted that to the extent the Plaintiffs/Counterclaim Defendants could demonstrate that they were misclassified as independent contractors, they could only avail themselves of the remedies afforded for rescission and restitution and alleged violations of the California Labor Code; and their compensation must be limited to the deficit, if any, between the amount J.B. Hunt had compensated them pursuant to the terms of their

leases less the wages they were entitled to for personally performing work and the reasonable expenses they incurred for performing that work.

C.   **Early Motion Practice**.

On March 25, 2019, Plaintiffs moved to remand the Action to state court arguing that J.B. Hunt's removal was outside the 30-day removal period in 28 U.S.C. § 1446. The Motion to Remand was fully briefed, and the Court denied the Motion, without argument, by order dated April 25, 2019.  In the same order, the Court set the Action for trial to begin less than four months later, on August 13, 2019.

On May 14, 2019, Plaintiffs filed a Motion for Leave to File a First Amended Complaint, an Ex Parte Application to Continue Trial Date, and an Ex Parte Application for Relief from Local Rule 23-3. J.B. Hunt opposed the motion and the applications in part. On May 29, 2019, the Court granted the Motion for Leave to File a First Amended Complaint and both Ex Parte Applications, vacated the August 13, 2019, trial date, and re-set the trial to begin on December 10, 2019.

D.   **Expedited Discovery, Investigation and Research**.

As a result of the extremely early August 13, 2019, trial date, and the continued date of December 10, 2019, Plaintiffs' counsel was required to alter the normal process of conducting initial discovery related to class certification issues, followed by the filing of a class certification motion, which if granted would then trigger post-certification class notice, liability and damages discovery, leading up to the dispositive motion deadline. Customarily, the Parties would then engage in summary judgment proceedings, perhaps on a cross-motion basis.  Given the unique posture of the Action triggered by the early trial date(s), Plaintiffs' counsel was required to merge all the required work into one solitary phase, in order to meet its obligations to the Plaintiffs' and the putative class members.  Therefore, while Plaintiffs' counsel was conducting the "normal" required discovery, counsel also conducted expedited investigation and preparation for class certification, as well as summary judgment outlines, and liability and damages work ups, to facilitate case presentation at both certification and trial.

(Saltzman Decl. ¶ 6-8.)

Thus, Plaintiffs' counsel set out to conduct the following discovery, investigation, and prosecution, among other tasks: (a) early motion practice; (b) meetings and conferences with the Plaintiffs; (c) inspection and analysis of documents produced by the Plaintiffs and/or J.B. Hunt; (d) analysis of the legal positions taken by J.B. Hunt; (e) written discovery and meet and confer activities both to and from J.B. Hunt; (f) investigation into the viability of class treatment of the claims asserted in the Action; (g) researching all updated law relating to class certification issues; (h) analysis of potential class-wide damages based on similar work-ups done in other similar cases involving allegations of misclassification of truck drivers as independent contractors; (i) research into the applicable law with respect to the allegations of misclassification and the claims asserted in the Complaint and the potential defenses thereto; (j) research into all of the various preemption issues raised by J.B. Hunt, including FAAAA preemption, Federal Motor Carrier Safety Administration (FMCSA) preemption relating to meal and rest break claims, TILA preemption tied to the leasing agreements and the possible limitation on recovery presented by that line of preemption which certain Ninth Circuit federal courts had recognized; (k) answering and propounding extensive written discovery; (l) defending depositions of Plaintiffs; (m) negotiating the topics and preparing for J.B. Hunt's Federal Rule of Civil Procedure 30(b)(6) (Rule 30(b)(6)) representative's deposition; (n) preparing a mediation statement; and (n) assembling data for calculating damages. At the same time, Plaintiffs' counsel outlined class certification motion issues, summary judgment motion issues and organized "hot documents" for motion practice and trial. (Saltzman Decl. ¶ 6-8.)

The foregoing is simply a summary of the many tasks handled all at the same time, which are normally dealt with over the course of a phased class action management plan. Simply stated, Plaintiffs' and their counsel vigorously prosecuted this case, for both class certification and trial, or for resolution by settlement.

On the other side of the matter, J.B. Hunt and its counsel also vigorously litigated the Action at an equally frenetic pace.  It contested this Action by (a) opposing early motion practice; (b) asserting a Counterclaim; (c) analyzing the legal positions taken by Plaintiffs; (d) answering and propounding extensive written discovery; (e) analyzing Plaintiffs' and its own documents; (f) taking the Plaintiffs' depositions; (g) negotiating the topics and preparing for J.B. Hunt's Rule 30(b)(6) representative's deposition; (h) preparing a mediation statement; and (i) assembling data for calculating potential damages.  In addition, it too faced the prospect of the same early trial date(s), and similarly had to address motion practice and trial, if one became necessary.  There was, on J.B. Hunt's side as well, no time to waste, and little time to deal with all the issues triggered by the continued trial date of December 10, 2019.

Based on the foregoing presentation of events, the Parties engaged in sufficient investigation and formal discovery to assess the relative merits of Plaintiffs' Claims and J.B. Hunt's defenses and Counterclaim to them.  In addition, as previously noted, counsel on both sides are extremely experienced in the issues presented in this type of mis-classification case. In fact, in late 2016, these counselors faced off in an employee truck driver class action against a different defendant in a four-week trial before the Honorable Susan Illston in the Northern District of California.  Complete and full knowledge of the case and its many tentacles cannot be questioned.

### E.   **Mediation**.

By agreement and based on the large amount of information, discovery and research conducted, and the further data that was exchanged via informal mediation discovery, the Parties mediated this matter before the Honorable Edward Infante (ret.), for a full day on June 24, 2019. The mediation was held open for approximately one week, but the case did not settle.  The Parties continued informal settlement discussions and finally reached the settlement almost one month later, on July 19, 2019. (Saltzman Decl. ¶¶ 9-10.) At that time, the Rule 30(b)(6) deposition of J.B. Hunt's representative was imminent. (Saltzman Decl. ¶ 8.)

**F.     Case Status and the Benefits of Settlement.**

The extensive written and document discovery conducted in this Action as well as the Plaintiffs' depositions and discussions between counsel have been adequate to give the Plaintiffs and their counsel a sound understanding of the merits of their positions and to evaluate the value of the Claims of the putative class. The Parties reached the settlement with the assistance of an experienced mediator, The Honorable Edward Infante (ret.), after arms-length bargaining during the full-day mediation, several additional discussions with the mediator, email exchanges, and discussions between counsel. The expedited discovery conducted in this Action and the information exchanged between the Parties through that discovery, and during mediation and informal settlement discussions, are sufficient to assess reliably the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.

Plaintiffs as class representatives and their counsel believe that the Claims, causes of action, allegations and contentions asserted in the Action have merit. However, they also recognize and acknowledge the expense and delay of continued lengthy proceedings necessary to prosecute the Action against J.B. Hunt through trial and through appeals. Plaintiffs' counsel as class counsel has considered the uncertain outcome and the risk of any litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of maintaining the Action as a class action. They are also mindful of the inherent problems of proof under, and possible defenses to, the Claims. Counsel believes that the settlement set forth in the Stipulation confers substantial benefits upon each of the putative class members. Based on their own independent investigation and evaluation, proposed class counsel, being experienced in this area of class action litigation, have determined that the settlement set forth in the Stipulation is in the best interests of the Plaintiffs and the putative class.

/ / /

/ / /

### G.    J.B. Hunt's Counterclaim and Denial of Wrongdoing and Liability.

J.B. Hunt has denied and continues to deny all the Claims and contentions alleged by the Plaintiffs in the Action. J.B. Hunt has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged based upon the conduct, statements, acts or omissions alleged, in the Action. J.B. Hunt contends that it complied in good faith with California wage and hour laws, including, but not limited to, properly classifying Plaintiffs and the putative class members as independent contractors, paying the California minimum wage and dealing legally and fairly with the Plaintiffs and the putative class members. J.B. Hunt further denies that, for any purpose other than settling this Action, these claims are appropriate for class or representative treatment. J.B. Hunt also believes it has viable defenses and that it would be entitled to relief pursuant to the Counterclaim.

Nonetheless, J.B. Hunt has concluded that further prosecution and defense of the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation in order to limit further expense, inconvenience, and distraction, to dispose of burdensome and protracted litigation, and to permit the operation of J.B. Hunt's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action. J.B. Hunt has also considered the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. J.B. Hunt has, therefore, determined that it is desirable and beneficial to it that the Action and its Counterclaim be settled in the manner and upon the terms and conditions set forth in the Stipulation.

### H.    Intent of the Settlement.

The settlement as summarized below, and as more fully described in the Stipulation, intends to achieve the following: (a) entry of an order approving the Settlement and granting the monetary and other relief set forth in the Stipulation to the

putative class members; (b) entry of judgment and dismissal with prejudice of the Action; (c) discharge of Released Parties from liability for any and all of the Released Claims; and (d) discharge of the Plaintiffs from liability for the Released Counterclaim.

## IV.   SUMMARY OF THE SETTLEMENT

### A.   <u>Summary of Settlement Terms</u>

The comprehensive terms of the settlement are set forth in the Stipulation attached to the Saltzman Decl. as Exhibit A. The primary terms thereof include the following:

- J.B. Hunt will pay a total of $6,500,000.00, which is the Gross Settlement Amount (GSA), all of which is non-reversionary;

- The GSA includes all payments to settlement class members, settlement administration costs, attorneys' fees and costs, service awards, as well as the payment to the LWDA under the PAGA claim;

- There will be no claims process of any kind imposed upon the settlement class members. All settlement class members who do not opt out of the settlement will be mailed their respective settlement checks following final approval;

- As a condition of the settlement, the Parties jointly request that the Court grant certification of the proposed settlement class of drivers;

- The Parties have agreed that a total of $150,000.00 of the GSA will be paid to the LWDA and the putative class members to resolve PAGA claim ($112,500.00 to the LWDA; $37,500 to the putative class members as part of the Net Settlement Amount);

- Plaintiffs' counsel as class counsel shall apply to the Court at final approval for an award of fees and costs, with the fees to include all of the work performed to date and all remaining work to be done in furtherance of the Settlement. J.B. Hunt has agreed that it will not object to a fee request by Plaintiffs' counsel in an amount not to exceed 30% of the GSA. However, Plaintiffs' counsel intend to seek a fee of only 25%, the benchmark in this District. J.B. Hunt has also

10

Plaintiffs' NTC of motion/motion for preliminary approval of class action; memo of points & authorities
Case No. 2:19-cv-01334-SVW-SS

agreed that it will not object to a request by Plaintiffs' counsel for reimbursement of reasonable costs and expenses, which will not exceed $15,000.00, as documented by their cost billings;

- Each Plaintiff, Duy Nam Ly and Kiet Nguyen, who pursued this matter for the benefit of the putative class members, and who faced the J.B. Hunt's Counterclaim, and whose invaluable anticipation will be further detailed in connection with final approval, will seek a service award of $25,000.00, to which J.B. Hunt does not object;

- Each class member who does not opt out of the settlement will be entitled to receive a proportionate share of the total Net Settlement Amount based upon his or her respective share of the total class' workweeks.  On a simple gross recovery basis, the total recovery of $6,500,000.00 will create a total GSA that will yield an average recovery for each class member of over $20,000.00, before fees and costs, incentive awards and the LWDA's PAGA payment;

- The Parties have selected CPT Group, Inc., as the Settlement Administrator. CPT is highly experienced in handling such matters, and was retained to handle the claims distribution of the prior employee driver class action settlement involving J.B. Hunt; and

- The proposed settlement provides that the putative class members will have 42 days (exactly six weeks) from the date the Notice is mailed to postmark any objections to the settlement, or to opt out of the settlement class.

### B.   Settlement Value

As with all settlements, the settlement represents a compromise, in recognition of the significant disagreements between the Parties as to the facts, the law, and the application of both to J.B. Hunt's business model. That said, given the extensive and expedited case workup, the Parties were certainly able to negotiate the claims in both an intelligent and reasonable manner, based on the relative strengths and weaknesses thereof, in order to reach a fair and just resolution of the case.

Plaintiffs now present what they believe to have been a reasonable, yet conservative evaluation of the Claims included in the settlement.

### 1.   Unreimbursed Business Expenses/Unlawful Deduction from Wages

Plaintiffs' primary claims in this action sought recovery for J.B. Hunt's alleged failure to reimburse for necessary business expenses under California Labor Code § 2802, as well as unlawful deductions from wages under the Wage Order. These claims are both based upon the common assertion that under the Intermodal Independent Contractor Operating Agreements (ICOAs), Class Members are responsible for paying for their own necessary business expenses; however, if Plaintiffs were to succeed in proving misclassification, those class members would be entitled to reimbursement for those expenses as employees.

J.B. Hunt vehemently denied Plaintiffs' allegations, maintaining that Plaintiffs' interpretation of the law and evidence was incorrect and would be wholly disproven if the case were to proceed to trial. Notably, there continues to be substantial uncertainty within the law, pending several ongoing Appellate Court matters, regarding the application of the ABC Test, in the wake of the California Supreme Court decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903, 956-957 (2018) and subsequent passage of California Assembly Bill 5.

Further, substantial risk was presented by the Leasing Regs., which at least one district court has ruled preempt Plaintiff's primary reimbursement claims. *Valadez v. CSX Intermodal Terminals, Inc.*, 2017 WL 1416883, at *11 (N.D. Cal., Apr. 10, 2017). Although Plaintiffs' contend that the *Valdez* decision was incorrect, the issue has not yet been definitively presented and determined by an intermediate court. See *Alvarez v. XPO Logistics Cartage LLC*, No. CV 18-03736 SJO (E), 2018 WL 6271965, at *7 (C.D. Cal. Nov. 15, 2018); *Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 6259220, at *11 (N.D. Okla. Nov. 30, 2018)  If J.B. Hunt's position is/was eventually upheld, the reimbursement claims would be gutted.

12

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

The valuation of these claims was based largely upon express references throughout the ICOAs designating certain expenses as the drivers' responsibility, such as fuel, maintenance, repairs, various insurance policies (bobtail, physical damage, occupational accident, and worker's compensation), truck parking, and on-board computer rental, and fees. Plaintiffs broke these expenses down into two categories: (1) unreimbursed business expenses that were automatically deducted from drivers' paychecks; and (2) unreimbursed recurring business expenses that drivers paid separately and for which J.B. Hunt does not have complete records. The second category included miscellaneous expenses such as certain maintenance costs, truck washing, parking, office expenses, and other supplies.

Based upon the ICOAs, putative class member wage statements, and extensive discovery and investigation, Plaintiffs were able to estimate the first category (*i.e.*, expenses directly <u>deducted</u> from putative class member wages) broken down as follows:

| Expense Type | Estimated Total Deductions For The Putative Class |
|---|---|
| Fuel Purchase | $15,086,996 |
| On Board Computer Usage | $212,000 |
| Bobtail Insurance | $161,091 |
| Occupational Accidental Insurance | $959,953 |
| Physical Damage Insurance | $725,134 |
| Maintenance –Tires | $436,886 |
| Maintenance – Tractor | $286,174 |
| Road Service Admin Charge | $12,880 |
| **Total Deductions from Pay** | **$17,881,556** |

Valuation of the second category was less direct because J.B. Hunt did not maintain records of the remaining miscellaneous expenses incurred by drivers. Accordingly, these damages would be vastly more difficult to establish to certify, let

alone prove at trial, due to heavy reliance on individual driver testimony. Taking these risks into consideration, Plaintiffs believe that they could expect to prove miscellaneous unreimbursed expenses outside of those already directly deducted from wage statements equaling at least $8,940,778 (approximately half the amount of the estimated deducted expenses listed in Category 1). Accordingly, the total combined estimated classwide damages for Plaintiffs' primary claim of unreimbursed business expenses and unlawful wage deductions equals approximately **$26,822,334**.

### 2. Failure to Pay Minimum Wages

Plaintiffs' claim for unpaid minimum wages was based upon allegations that putative class members were not compensated for certain work that they regularly performed, such as (a) pre-trip inspections, (b) post-trip inspections, and (c) fueling their truck. Plaintiffs further alleged that drivers spent additional unpaid time on-call and working through 10-minute rest periods

As was true of each of Plaintiffs' claims, in order to prevail Plaintiffs must succeed in establishing their underlying claim of misclassification, implicating the same risks and uncertainty previously discussed.

Plaintiffs estimate that putative class members worked approximately 2.75 hours each week performing unpaid tasks, and another 1.67 hours each week working during rest periods (*i.e.*, 4.42 hrs/week). Using a weighted average hourly minimum wage throughout the class period (*i.e.*, $10.25/hr) multiplied by the estimated number of class member workweeks derived from J.B. Hunt's records (37,250 workweeks), Plaintiffs estimated a total of **$1,687,612** in unpaid wages.

### 3. Failure to Pay Meal & Rest Period Premiums

Plaintiffs alleged that J.B. Hunt failed to provide meal and rest periods, and to provide statutory mandated premium payments to the class. Unfortunately, approximately six months after this action was filed, on December 21, 2018, the Federal Motor Carrier Safety Administration (FMCSA) reversed its own longstanding administrative determination which had previously asserted that it "has

14

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS

no authority" to preempt California's meal and rest break rules. Instead, the new FMCSA order determined that its hours-of-service (HOS) regulations do preempt California's meal and rest break laws. *See* Petition for Preemption of California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption, 83 Fed. Reg. 67470 (Dec. 28, 2018) (2018 Determination). Notably, the legality and effect of the 2018 Determination is the subject of four now-consolidated petitions for review pending before the Ninth Circuit. *See Alvarez v. XPO Logistics Cartage, LLC*, No. 2:18-CV-03736-SJO-E, 2020 WL 1289550, at *3 (C.D. Cal., Feb. 6, 2020) ("The Court notes that as of the date of this Order, the FMCSA's appeal is pending. *IBT, et al. v. FMCSA, et al.*, No. 19-70323 (9th Cir.)").

Plaintiffs initially estimated the total value of the meal and rest period claims would have been $1,909,063 each[1] ($3,818,126 combined), prior to the 2018 Determination. However, when factoring that determination into the equation, along with the risks involved in preserving the issue in hopes of a favorable finding by the Ninth Circuit, which would then hopefully be upheld by the United States Supreme Court, the estimated value of these claims had to be reasonably reduced by as much as 75%, leaving the remaining total estimated value at **$954,532**. However, these claims could be worth zero.

### 4.      Failure to Provide Accurate Wage Statements

Plaintiffs' wage statement claim is derivative of the claims discussed above and is similarly based upon the common underlying theory of misclassification. Assuming that each class member is entitled to the maximum penalty of $4,000.00 provided by statute, Plaintiffs estimate **$1,248,000** in exposure.

### 5.      Summary of Exposure Analysis

Using the damages set-forth above, Plaintiffs estimate J.B. Hunt's total

---

[1] I.e. $10.25 x 5 hours per week x 37,250 estimated workweeks.

15

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

exposure[2] was approximately $30,712,478.00 before they accounted for the risks of class certification, maintaining class certification (if such were granted), surviving summary judgment attacks, trial, and possible appellate review. Factoring in these risks the exposure could and should easily be reduced by approximately 50% of the gross number, yielding a more realistic assessment of about $15,360,000.00 net exposure.   Of that sum, the non-reversionary settlement in the amount of $6,500,000.00, results in a payment of about 42% of the net exposure, which is extremely strong.

## 6.   Additional Considerations

In evaluating settlements, courts often examine average payments. The analysis here includes a review of the payments to each "full time equivalent" driver (FTE) position, as well as average payments to each putative class member driver. Each FTE position represents a putative class member driver who has held the position for the entire class period. Based on the extensive review of the records produced by J.B. Hunt in the case, Plaintiffs estimate that there have been approximately 142 putative class member drivers performing work for J.B. Hunt <u>at any given time</u> during the class period, which is the FTE count.

The FTE payment here, on a gross basis before consideration of deductions for fees, costs, etc., would be approximately $45,774.00 for each driver holding his or her position for the entire class period. This is derived by dividing the total $6,500,000.00 by the total of 142 FTE positions. Therefore, any driver who was employed by J.B. Hunt for the entire class period would be entitled to be paid $45,774.00, before case deductions, an extraordinary recovery especially

---

[2] Plaintiffs' remaining claims for Unfair Competition (Bus. & Prof. Code § 17200, *et seq.*) and Quantum Meruit/ Unjust Enrichment were pled alternatively and seek the same damages as Plaintiffs' claims discussed previously herein. Accordingly, exposure for these other claims is addressed in those analyses and included in the total.

considering the current posture of the law and the preemption issues in play herein.

Further, even when turnover is not accounted for, and a simple across the board average for each and every putative class member driver is utilized, the instant settlement results in an average payment of approximately $20,833.00, before normal case deductions. ($6,500,000.00 divided by 312 drivers = $20,833.33).

## V. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Parties seek preliminary certification of the following Class:

**Class:** All current and former California-resident truck drivers who signed Intermodal Independent Contractor Operating Agreements with appendices (Intermodal ICOAs) under which they performed work for J.B. Hunt in California at any time during the period between June 25, 2014, through the date the Court grants preliminary approval of the Stipulation, and whose names appear on the list attached to the Stipulation as **Exhibit 1**.

### A. <u>Federal Rule of Civil Procedure 23(a) Requirements Are Met for the Settlement Class</u>

When seeking certification of a class pursuant to Rule 23, plaintiffs have the burden of showing the four requirements of Rule 23(a) as well as one of the requirements of Rule 23(b).  The four requirements of Rule 23(a) are typically referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. 2010).  In this case, the Parties agree to provisional certification of the settlement Class under Rule23(b)(3), which has the added requirement of "predominance." *Id.*

#### 1. Numerosity

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class."  *Advertising Specialty Nat'l Assoc. v. Fed'l Trade Comm'n*., 238 F.2d 108, 119 (1st Cir. 1956).  Here, with over

17

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS

300 putative class member drivers, the numerosity factor is easily met.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. Cal. 2001).

Here, Plaintiffs have alleged that all the putative class members were uniformly misclassified as independent contractor drivers for J.B. Hunt's enterprise, and that all were uniformly treated as employees, such that they were denied the benefits of employment, including the failure to be provided with compliant meals and/or rest breaks, and being required to bear the burden of expenses not required of employees. Derivative claims flowing therefrom were also alleged, which results in the Action satisfying the requirements of commonality, based on the following partial list of common questions of law and fact set forth in the Complaint:

a. Whether putative class members were improperly classified as independent contractors instead of employees
b. Whether the compensation paid to putative class members, based on hours worked, was less than the applicable minimum wage or, where applicable, less than the proper overtime wage;
c. Whether putative class members were entitled to mandatory meal and rest breaks, and if so, whether they were made available or provided, and whether premium wages should have been paid when meal and/or rest periods were missed;
d. Whether putative class members were improperly required to incur J.B. Hunt's necessary business expenses without reimbursement therefor;
e. Whether J.B. Hunt made illegal deductions from putative class members' earnings; and
f. Whether J.B. Hunt provided accurate and itemized wage statements;

These common issues satisfy Rule 23(a)(2)'s requirements.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive"

18

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

and requires only that the representative's claims are reasonably related to those of the absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal. 2010*).* Here typicality is met because the claims of all the putative class members are based on the same legal and factual claims as those of Plaintiffs.

### 4.     The Adequacy Requirements Are Satisfied

The proposed class representatives, Duy Nam Ly and Kiet Nguyen, and class counsel, Marlin & Saltzman LLP, contend they have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig*., No. 03 CV 1721JM9POR), 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004).  Here Plaintiffs' chosen counsel at Marlin & Saltzman LLP, have litigated and successfully resolved numerous wage and hour class actions, by way of settlement, arbitration and trial. (*See* Saltzman Decl. ¶¶ 23-29.)

The second prong of the adequacy test is "that the suit not be collusive and the representative plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig*., 2004 WL 5159061, at *1-2.  Plaintiffs have litigated this case in good faith and the interests of Plaintiffs are fully aligned with those of the putative class members, because both share a common interest in challenging the legality of J.B. Hunt's practices, policies, and procedures.

### B.     The Federal Rule of Civil Procedure 23(b) Standards Are Satisfied

### 1.     Common Issues Predominate

In addition to the Rule 23(a) requirements, a district court must also find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b) (3). The Claims in this case are sufficiently cohesive to warrant adjudication by representation. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013). Furthermore, because the "predominance" factor concerns liability, any variation in damages is plainly insufficient to defeat

19

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013).

In particular, Plaintiffs assert that the alleged misclassification of all of the putative class member drivers caused all of them to be denied the benefits of employment, specifically here involving meal and rest break rights, and the forced payment of what would otherwise be employer-paid expenses.

Additionally, Plaintiffs allege that as a result of the described conduct, the putative class members were not provided with wage statements that complied with California law.  Together, the common issues predominate this alleged class action.

## 2.    The Class Action Device Is Superior

The class action proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b) (3).  Provisional certification of the Class will allow putative class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide.  As in *Hanlon*, the alternative methods of resolution would require that each driver file their own individual claims, a daunting task against the much stronger defendant involved, and one not likely to be pursued by many of them.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  The class action device is the most efficient method available to present these claims.

## VI.    NO MANAGEABILITY ISSUES PRECLUDE CERTIFICATION

Finally, no issues of manageability preclude certification of the settlement Class. A court faced with a request for a settlement-only class like this <u>need not</u> inquire whether the case would present problems of trial management, even though the other requirements under Rule 23 must still be satisfied.  *See*, *e.g.*, *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *5 (N.D. Cal. July 11, 2013).  In any event, Plaintiffs believe the proposed plan of distribution and settlement process are both efficient and manageable.

## VII.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS "CLASS COUNSEL"

Rule 23(g) requires that courts consider the following four factors when

20

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS

appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at \*2-3 (S.D. Cal. Dec. 11, 2013).

Here, the proposed class counsel is highly experienced and knowledgeable regarding complex federal and state wage and hour class actions like this one. (*See* Saltzman Decl. ¶¶ 23-29). Indeed, Plaintiffs' counsel has successfully resolved literally dozens of wage and hour class actions, via settlements and trial/arbitration. In addition, Plaintiffs' counsel has fully committed its resources to represent the Class in this case, has the skill and expertise to do so properly, and will continue to do so.

## VIII. THE SETTLEMENT EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL

The district court has broad discretion to approve Rule 23 settlements and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon,* 150 F.3d at 1026. In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Court approval involves a two-step process where the court first determines whether preliminary approval is warranted, so that notice of the same can be disseminated, and then after notice is given to the class, whether final approval is warranted. *Manual of Complex Litigation*, 4th, § 21.632 (2004); *Hanlon*, 150 F.3d at 1019. At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *True v. Am. Honda Motor Co.*,749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010).

At the outset, there is a "strong initial presumption that the compromise is fair

21

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

and reasonable." *Hanlon*, 150 F.3d at 1019. A class action settlement is presumed to be fair when: (1) the settlement is reached through arm's length agreement; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg & Conte, *Newberg On Class Actions* § 11.41 (3d ed. 1992). It is clear this settlement satisfies the *Hanlon* factors.

As discussed above, the settlement was reached following a full day of mediation before Magistrate Judge Edward Infante (ret.) and then a full month of ongoing negotiations involving Judge Infante and lead counsel for the Parties. At the same time, the Parties were heavily involved in all phases of the litigation, which they handled on an overlapping basis out of necessity, and definitely at arm's length.

As also discussed above, the investigation and discovery in the case proceeded at a rapid pace and had developed to the point that the Plaintiffs' counsel was very well informed as to the law, the facts and the legal positions unfolding. Combined with counsel's many years of class action experience, including in cases of a similar nature, Plaintiffs' counsel was more than prepared to intelligently assess both the strengths and weaknesses of the case, to negotiate a fair and reasonable settlement.

As set forth in the declaration of Stanley D. Saltzman filed herewith, Mr. Saltzman and his entire firm are extremely experienced in wage and hour class action litigation. Marlin & Saltzman has been blessed to have achieved for its clients some of the largest recoveries in the area over the last 20 years and continues to do so at this time. This particular settlement, involving only 312 putative class members, is a striking example of that history of success. The fact that these putative class members will recover, on average, over $20,000.00 each, with individual recoveries reaching as high as the $50,000.00 range, speaks volumes as to the success of this case. Wage and hour class actions rarely trigger such individual payments.

The number of objectors, if any, is of course premature to determine, but it is

reasonably anticipated to be a low number.  The level of payments to be distributed to this Class following the eventual conclusion of the approval process is such that there is simply little likelihood that many class members will choose to object.

The Court's ultimate fairness determination at the final fairness hearing will include balancing several factors, including some or all the following, which will be addressed in the motion for final approval:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and [likely] duration of further litigation; (3) the risk of maintaining class [action status throughout the trial]; (4) the amount of the settlement; (5) investigation and discovery [completed]; (6) the experience and views of counsel; and (7) the reaction of class members.

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. CV 09-5416 DOC (RZx), 2011 WL 280991, at *2 (C.D. Cal. Jan. 26, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

It is evident from the foregoing discussion that this settlement will meet these standards, many of which are set forth above in the discussion of the *Hanlon* factors.

## IX.   NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b (3), the court must direct to settlement class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the Parties have agreed upon a Notice which will be mailed to all last known addresses in the J.B. Hunt's records, updated as necessary by the Settlement Administrator. This is the most efficient and effective method for notifying putative class members.

As for the content of the notice, the proposed Notice, attached to the Stipulation as Exhibit 2, satisfies the criteria in Rule 23(c)(2). It informs putative class members of (i) the nature of the action; (ii) the definition of the settlement class certified; (iii) the class claims, issues, or defenses involved in the case and being released herein, and the settlement class period; (iv) that a class member may enter

23

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). It also informs them of their right to object, and how to do so. Plaintiffs ask that the Notice be approved.

## X.   CLAIMS ADMINISTRATION

The Parties have agreed to the appointment of CPT Group, Inc., a highly experienced wage and hour class administration company, as the Settlement Administrator. (Saltzman Decl. ¶ 22.)

## XI.   ATTORNEYS' FEES AND COSTS

The Stipulation allows Class Counsel to apply for an award to be paid from the GSA established for the benefit of the settlement class, in an amount not to exceed 30% of the total fund, as well as reimbursement of costs and expenses incurred, which in this case will not exceed $15,000.00. However, as stated above, if appointed as Class Counsel, it is Plaintiffs' counsel's intent to seek approval of a 25% fee, which they ask to have included in the proposed Notice. If appointed as Class Counsel, the fee and cost motion will be filed in a timely manner such that settlement class members will have fourteen days to review the same prior to the expiration of the time to object or opt out of this settlement.

## XII.   SERVICE AWARD FOR PLAINTIFFS

The Stipulation contemplates that Plaintiffs will apply for a service award to be paid from the gross settlement fund in the amount of $25,000.00 each, and J.B. Hunt has agreed not to object to a request of up to that amount. The request for this award is also disclosed in the proposed Notice. Each of the Plaintiffs has stepped up to seek justice on behalf of the entire Class; has participated in expedited discovery; has worked with counsel to assist in the expedited case preparation; has been deposed and of course also met with counsel for extensive deposition preparation; and assisted with the mediation and settlement negotiations.  They have therefore fully

24

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-cv-01334-SVW-SS

satisfied their duties to serve as fiduciaries for the Class.

In addition, as class representatives in this technology-driven era, they have voluntarily subjected their good names to the negative impacts of the internet, such that all future prospective employers can easily determine that they have been class representatives in a suit against one of their employers. No other class member receiving a benefit hereunder will ever suffer that same level of future scrutiny.

Finally, as a result of the large individual settlement payments triggered by this settlement, their actions in coming forward will yield many payments greater than the service award sought, and the average payments of the entire class approach the amount of the requested service award for each Plaintiff as a class representative. This is rarely if ever seen, and further supports the reasonableness of the requests.

While Plaintiffs will file their motion for these awards along with Class Counsel's application for fees and costs fourteen days before the objection deadline, this summary description of the justification of the service awards requested is submitted so that the awards sought may be included in the Notice to be sent to all putative class members.   Given the amount of the class member payments anticipated, this request is more than reasonable.

## XIII. CONCLUSION

The Parties have reached this settlement following extensive, yet expedited, litigation and arm's-length negotiations. Plaintiffs respectfully request that the Court permit and order the certification of the Action for settlement purposes as requested herein, grant preliminary approval of the proposed settlement to permit the notice phase to proceed, and enter the proposed Order Granting Preliminary Approval, attached as Exhibit 4 to the Stipulation.  The Parties also request that the Court set a Final Approval Hearing for a date approximately 110 days following the issuance of the Order Granting Preliminary Approval.

DATED: July 6, 2020

**MARLIN & SALTZMAN, LLP**

By:   */s/ Stanley D. Saltzman*
         Stanley D. Saltzman, Esq.

*Attorneys for Plaintiffs and the putative Class*

4831-0455-5969, v. 5

26

PLAINTIFFS' NTC OF MOTION/MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; MEMO OF POINTS & AUTHORITIES
CASE NO. 2:19-CV-01334-SVW-SS