**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com

*Attorneys for Plaintiffs, the putative Class, and the Aggrieved Employees*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DUY NAM LY** and **KIET NGUYEN**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**J.B. HUNT TRANSPORT, INC.**, an Arkansas corporation; and **DOES 1 to 100**, inclusive,<br><br>Defendants | Case No. 2:19-cv-01334-SVW-SS<br>Hon. Stephen V. Wilson<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Stanley D. Saltzman, Proposed Order]<br><br>DATE: December 14, 2020<br>TIME: 1:30 p.m.<br>CTRM: 10A |

**TO: ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 14, 2020, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 10A in the above entitled courthouse located at 350 W. First Street, Los Angeles, California, Plaintiffs, Duy Nam Ly and Kiet Nguyen, on their own behalf, and on behalf of the proposed settlement class, will move for an order granting final approval of a class-wide settlement reached with Defendant, J.B. Hunt Transport, Inc.. Defendant does not oppose this Motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the Declaration of Stanley D. Saltzman, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

DATED: November 16, 2020       **MARLIN & SALTZMAN, LLP**

By: _s/ Stanley D. Saltzman_
    Stanley D. Saltzman, Esq.
    Attorneys for Plaintiffs.

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1
II.  THE CLASS NOTICE PROCESS WAS SUCCESSFULLY IMPLEMENTED ................................................................................................ 4
    A.   Dissemination of Class Notice ................................................................ 4
    B.   Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards ............ 4
    C.   There Were No Objections, and Only Two Exclusion Requests ................... 4
    D.   Challenges to Employment History/Information Requests .......................... 4
III. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL ..................................................................................................... 5
    A.   Terms of the Settlement .......................................................................... 5
    B.   Standard of Review ................................................................................ 6
    C.   Class Notice Comports with Rule 23 and Due Process ................................ 7
    D.   The Settlement is the Result of Good-Faith, Arm's-Length Negotiations ........................................................................................... 8
    E.   The Settlement is Fair, Reasonable, and Adequate ..................................... 9
         1.   The Strength of Plaintiffs' Case Supports Final Approval ................... 9
         2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement Approval ............................ 10
         3.   The Risk of Maintaining Class Action Status through Trial Supports Final Approval. ............................................................... 10
         4.   The Amount Offered in Settlement Supports Final Approval ............. 11
         5.   The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval ............................................. 11
         6.   The Views of Experienced Counsel Support Final Approval ............. 12
         7.   The Government Participant Factor Supports Final Approval ........... 12
         8.   The Reaction of the Settlement Class Supports Final Approval ........ 13
IV.  CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

## Cases

*Campbell v. First Inv'rs Corp.*,
  2012 WL 5373423 (S.D. Cal. 2012) ........................................................................ 11

*Feyko v. AAD Partners LP*,
  2014 WL 12572678 (C.D. Cal. 2014) ...................................................................... 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 9, 12

*In re Bluetooth Headset Products Liability Litigation*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................ 7, 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 12

*Karam v. Corinthian Colleges Inc.*,
  2017 WL 4070889 (C.D. Cal. 2017) ........................................................................ 6

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ........................................................................ 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................... 12

*McKenzie v. Fed. Express Corp.*,
  2012 WL 12882124 (C.D. Cal. 2012) .................................................................... 14

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 13, 14

*Officers for Justice v. Civil Svc. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .......................................................................... 6, 7, 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  42 F.3d 741 (9th Cir. 2006) ..................................................................................... 6

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................. 12

*Ross v. Trex Co., Inc.*,
  2013 WL 6622919 (N.D. Cal. 2013) ..................................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................................... 7, 10

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ........................................................................................ 6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................................ 6

**Statutes**

Labor Code § 2699(l) .................................................................................................. 4, 13

**Rules**

Fed. R. Civ. P. Rule 23 ................................................................................................. 7, 8

**Regulations**

83 Fed. Reg. 67470 (Dec. 28, 2018) ................................................................................ 10

## MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Plaintiffs, Duy Nam Ly and Kiet Nguyen, individually and on behalf of the conditionally certified settlement class, seek this Court's final approval of the *non-reversionary* settlement in the total amount of $6,500,000.00 ("Settlement"), which this Court preliminarily approved on August 18, 2020. Defendant, J.B. Hunt Transport, Inc., does not oppose this motion. As the Court will recall from the Motion for Preliminary approval, this Class, numbering only 326[1] of Defendant's Intermodal independent contractor drivers, is relatively small in comparison to most wage and hour class actions. Thus, the large settlement noted above, if granted final approval, will result in substantial settlement payments to the class members.

As of the date of the filing of this motion, two weeks following the final date for class members to opt-out or submit an objection, Plaintiffs are pleased to inform the Court that:

- Prior to mailing the Notice Packets, the Settlement Administrator conducted a National Change of Address (NCOA) search and updated 30 addresses of the class members.
- The Settlement Administrator mailed Notice Packets to the 326 settlement class members. Out of the total mailed notices, none were returned due to out of date or incorrect addresses;
- The Settlement Administrator re-mailed 21 Notice Packets at the request of settlement class members;

---

[1] As of the date of preliminary approval, Defendant estimated there were 312 individuals who met the class definition. However, during its final records review to produce the information necessary for the Class List, Defendant identified an additional 14 individuals who met the class definition. This modest increase of only 4% is well within the normal range of additional class members often located and was small enough that it did not trigger any further contribution to the settlement fund by Defendant.

- Therefore, at the conclusion of the mandated notice mailing process, 100% of the class members received the Notice Packets. Even allowing for the fact that this is a small number of class members, this is an extraordinary result;
- Critically, there were no objections to the Settlement; and
- Only two settlement class members elected to opt-out of the Settlement, representing an astonishingly high participation rate of 99.39%.

In short, the results reveal that the class notice process was extraordinarily successful and that the settlement class members have overwhelmingly endorsed the Settlement.

The Settlement provides that Defendant will pay $6,500,000.00 to settle the claims of the settlement class, defined as:

> All current and former California-resident truck drivers who signed Intermodal Independent Contractor Operating Agreements with appendices (Intermodal ICOAs) under which they performed work for J.B. Hunt Transport, Inc., in California at any time between June 25, 2014 and August 14, 2020.

Since the settlement is non-reversionary, the entire $6,500,000.00 will be distributed to Plaintiffs, the settlement class members, Class Counsel and the Settlement Administrator as provided in the Settlement Agreement preliminarily approved by the Court. As stated therein, no claim forms were required of any settlement class member, so if the Court grants final approval of the Settlement, the Settlement Administrator will automatically mail payments to all of the settlement class members other than the two who elected to opt-out of the Settlement.

An objective evaluation of the Settlement confirms that it is fair, reasonable and adequate. As set forth in the preliminary approval motion, the parties negotiated the Settlement at arm's length under the guidance of the Honorable Edward Infante (ret.), a well-regarded retired Magistrate Judge and mediator. Judge Infante stewarded the parties through a full mediation on June 24, 2019, and then multiple follow-up discussions with

counsel for the parties. The parties ultimately agreed to the Settlement on July 19, 2019, only days before the date set for the deposition of Defendant's Federal Rule of Civil Procedure 30(b)(6) (Rule 30(b)(6)) representative.  As explained thoroughly in Plaintiffs' Motion for Preliminary Approval, although the case was not particularly long in duration, but, in the time permitted by this Court's trial scheduling order, literally a full case work-up was accomplished by Plaintiffs' counsel. Not a day passed without progress being made in both certification and trial preparation. Thus, in the time allowed, the case was thoroughly investigated and extensively worked up, prior to the parties ultimately agreeing to the settlement now before the Court.

The Settlement provides settlement class members with valuable relief for their claims, particularly when viewed in light of the many difficult and unsettled claims and legal issues presented, in the constantly evolving area of independent contractor law in the State of California.  Federal preemption defenses were also present on multiple levels. This substantial settlement wholly eliminates the downside risk of Defendant prevailing on any one of several case-dispositive legal defenses it had asserted, whether at trial or on appeal.  The Settlement also eliminated the additional risk of any new legislation or regulatory action impacting the case, such as occurred when the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation issued its "new" FMCSA Determination as to meal and break laws, on December 21, 2018, months after the filing of the case.[2]

In sum, the Settlement meets the criteria for final approval, as it easily falls within the range of what courts consider fair, reasonable, and adequate. Accordingly, Plaintiffs

---

[2] On December 21, 2018, the FMCSA issued an Order finding that the Motor Carrier Safety Act of 1984 preempts California's meal and rest break laws. *See* https://www.fmcsa.dot.gov/regulations/californias-meal-and-rest-break-rules-preemption-determination. The legality of that Order is, even now, the subject of petitions for review in the Ninth Circuit.  That Order illustrates the legislative and regulatory risks presented by further litigation in this area of law.

respectfully request that the Court grant final approval of the Settlement.

## II.     THE CLASS NOTICE PROCESS WAS SUCCESSFULLY IMPLEMENTED

### A.     Dissemination of Class Notice

The Court appointed CPT Group, Inc., as the Settlement Administrator, and it has provided the Court with a full report of its activities. *See* Declaration of Emilio Cofinco ("Cofinco Decl."), filed herewith. The Settlement Administrator complied with this Court's orders concerning dissemination of class notice, resulting in only two requests for exclusions, and thus a 99.39 participation rate by the Class in this settlement. *Id.* at ¶¶ 2-14.

Additionally, Plaintiffs provided notice of the proposed settlement to the California Department of Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code § 2699(l). See Declaration Of Stanley D. Saltzman In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Final Approval of Fees, Costs and Incentive Awards ("Saltzman Declaration"), ¶ 5. The LWDA has not weighed in on this Settlement.

### B.     Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards

Consistent with the deadlines established by this Court in its Order on preliminary approval, Class Counsel are contemporaneously filing their motion on this date.

### C.     There Were No Objections, and Only Two Exclusion Requests

As stated above, we are pleased to be able to report that not a single class member objected to the Settlement. Additionally, we can also report that, as set forth in the Cofinco Declaration, the Settlement Administrator received two exclusion requests. Cofinco Decl., ¶¶ 13. These findings, after the conclusion of the Notice period, represent a 99.39% participation rate by the settlement class and speaks very favorably to the response of the settlement class to the Settlement.

### D.     Challenges to Employment History/Information Requests

As of the deadline to file disputes related to the assigned number of workweeks listed on a settlement class member's individually-tailored notice, and the estimated

settlement payments set forth thereon, there have not been any disputes lodged by any class members. Again, this is quite unusual, as it is not at all uncommon for there to be at least a small percentage of such disputes. Very likely, the lack of any disputes is due to the accuracy of Defendant's records and the corresponding large payments being made to so many class members.

## III. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

### A. Terms of the Settlement

Plaintiffs detailed the terms of the Settlement in their Motion for Preliminary Approval. In order to avoid undue duplication, Plaintiffs will not repeat the terms in detail; however, the critical terms are as follows: (a) $6,500,000.00 to be paid for the benefit of the settlement class; (b) the settlement is totally non-reversionary; (c) no claims forms are required of the settlement class members; and (d) 100% of the class notice mailings were successfully delivered by mail.

The gross recovery per settlement class member is of course dependent on the length of time they were worked for Defendant. The highest gross individual settlement payment is approximately $47,297.45, and the average individual gross settlement payment is approximately $20,061.73. Cofinco Decl., ¶ 14. These are not numbers commonly seen in wage and hour class action settlements. After deductions for fees, cost and incentives, if approved by the Court, the highest net individual settlement payment is approximately $34,086.91, and the average individual net settlement payment is approximately $14,458.33. *Id*. These results very likely explain the lack of any objections to the Settlement and the miniscule number of opt-outs. The class members now anxiously await distribution of their settlement funds.

The Settlement also provides that a total of $150,000.00 of the gross settlement fund will be paid to resolve the Private Attorneys General Act (PAGA) claim asserted in the action, to be divided so that $112,500.00 (75%) will be paid to the LWDA and $37,500.00 (25%) will be paid to the settlement class members as part of the Net Settlement Amount.

Finally, the Settlement release is narrow. Specifically, it provides that the settlement class members release only those claims asserted in the Complaint. *See*, Dkt. No. 52-2, Settlement Agreement, Art. II, ¶ 37, attached as Exhibit A to the Saltzman Declaration filed in support of Preliminary Approval. As courts in this District have found, releases are not overly broad where, as here, they only release claims based on claims asserted or those with the identical factual predicate as the underlying the claims. *Karam v. Corinthian Colleges Inc.*, 2017 WL 4070889, at *5 (C.D. Cal. 2017); *accord Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)

However, the individual named Plaintiffs' release is broader, and generally releases all claims against Defendant as part of the broader consideration demanded of them by Defendant, which is included in the calculation of the requested service awards.

B. **Standard of Review**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class actions readily lend themselves to compromise because of the difficulties of proof, the risks of litigation, and the extended time to resolution. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In deciding whether to approve a settlement under Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable." The district court exercises its sound discretion in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). In exercising its discretion, however, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has clearly defined the limits of the Court's inquiry:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id*. (emphasis in original).

The "higher level of scrutiny for evidence of collusion or other conflicts of interest" required in pre-certification settlements by the Ninth Circuit's decision *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011), cannot plausibly affect this Settlement. Here, in the time available to do so, the parties performed extensive work-up of the entire case, litigated and mediated at arm's length, and the mediation itself took place under the guidance of an extremely knowledgeable and experienced retired jurist, the Honorable Edward Infante. *See*, Dkt. No. 52-1, (Saltzman Declaration filed ISO of Preliminary Approval, ¶¶3-10.)  There is simply no basis or reason for this Court to find any collusion or to be concerned about any conflicts of interest. The facts before this Court full satisfy the heightened *Bluetooth* review.

### C. Class Notice Comports with Rule 23 and Due Process

Rule 23 and due process require that the settlement class receive the best notice practicable reasonably calculated under the circumstances, which the parties clearly provided here. Indeed, in this Court's Preliminary Approval Order, this Court approved the class notice as to form and content, and further found that the proposed Notice of Settlement and notice plan "will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), adequately advises class members of their rights under the Settlement and therefore meets the requirements of due process." Dkt. No. 55, ¶ 7.  In fact, as reflected in the Confinco Declaration, the notice mailing here resulted in a 100%

effective rate of receipt by class members. *See* Cofinco Decl. at ¶¶ 6-9.

The parties and the Settlement Administrator followed the schedule for the settlement process approved by the Court—including dissemination of the class notice. Defendant timely provided the settlement administrator with the Class List. As noted above, the Settlement Administrator mailed the Settlement Notice Packets to the updated list of 326 individuals on the Class List by September 15, 2020. After re-mailing the notice upon request of a class member, there were zero notices not delivered; thus, the class notice process was 100% successful.

In short, the notice process used in this case apprised settlement class members of the Settlement and gave them the chance to opt-out or object. Given the positive results, the class notice process employed here far exceeded the requirements of Rule 23 and thus satisfies due process.

### D. The Settlement is the Result of Good-Faith, Arm's-Length Negotiations

The parties reached this Agreement at mediation only after full investigation, discovery, motion practice, and ongoing certification and trial preparation. This process reflects the zealous efforts of Class Counsel to champion the interests of the settlement class. As previously indicated, the mediation was facilitated by the Honorable Edward Infante (ret.), a highly regarded class action mediator, further demonstrating the non-collusive nature of the Settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948; *see also Feyko v. AAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. 2014) ("Settlements reached with the help of a mediator are likely non-collusive.")

Moreover, the Settlement bears no signs of collusion or conflicts of interest. Instead, it followed extensive arms-length negotiations and due notice to the settlement class. Settlement class members will receive significant monetary awards from a non-reversionary common fund Settlement with no *cy pres* component, and they will receive this money without having to submit a claim form. Further, Class Counsel's request for this district's benchmark fee level of 25% of the gross fund ensures that they will not receive a disproportionate share of the Settlement, nor will they receive any separate

payment of attorneys' fees, so the interests of Class Counsel coincide precisely with the interests of the settlement class.

In sum, the parties entered into the Settlement in good faith, only after arm's-length negotiations without collusion, warranting a presumption in favor of approval. *Officers for Justice*, 688 F.2d at 625.

### E. The Settlement is Fair, Reasonable, and Adequate

In evaluating the fairness, reasonableness, and adequacy of a class settlement, courts consider and balance a number of factors, including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi*, 8 F.3d at 1375).

Under each of these factors, this Settlement easily warrants this Court's approval.

#### 1. The Strength of Plaintiffs' Case Supports Final Approval

As stated above, there can be no debate that the issues presented in this case are both complex and involve highly unsettled legal issues. This area of the law, involving claims of misclassification of truck drivers, may in fact be one of the most heavily disputed and constantly evolving areas of law.

Moreover, Plaintiffs also faced a constant challenge in terms of possible adverse legislative or administrative legal changes. In fact, approximately six months into the case, the FMCSA decided that its hours-of-service rules preempted California's meal and rest break rules. *See* 83 Fed. Reg. 67470 (Dec. 28, 2018). When the FCMSA issued that determination, ostensibly reversing its own prior order and position on the preemption issue, it wiped out potentially sizeable claims. Defendant raised other preemption defenses related to Plaintiffs' misclassification argument (which applied to all of their claims) and to their claims for unreimbursed business expenses and unlawful deductions.

Therefore, Plaintiffs' case was difficult and the outcome uncertain. If Defendant prevailed on one or more defenses at trial or on appeal, Plaintiffs and settlement class members could recover little or nothing. Given the constantly evolving state of the law and the constant threats to the maintenance of these claims on a class action basis, the settlement now presented for final approval is even more exceptional.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement Approval

As evidenced by the fact that this case involved novel and evolving issues as to whether and to what extent settlement class members were entitled to wages and work breaks, and to the other relief sought herein, uncertainty was the prevailing issue. Although the trial was only months away at the time of settlement, continued litigation of these issues through the appellate court(s) would be slow and costly. In fact, settlement class members would receive nothing unless Plaintiffs won at trial and then ultimately prevailed on the likely appeal to follow, a process that would take a minimum of two to three years. In a similar matter that Class Counsel took to trial in the fall of 2016, and recovered a $60MM plus verdict, only now (literally pending for order), following three plus years of appeal and time spent on post-trial motions, is the verdict about to be paid out and distributed. Dkt. No. 52-1, (Saltzman Declaration filed ISO of Preliminary Approval, ¶25.). Counsel thus knows from very personal experience how long appellate delays can be, even if Plaintiffs are fortunate enough to prevail at trial.

Fortunately, the non-reversionary Settlement provides substantial cash payments to members of the settlement class now, without the substantial risks and inevitable delays of further litigation. *See Campbell v. First Inv'rs Corp.*, 2012 WL 5373423, at *5 (S.D. Cal. 2012) (recognizing that the process of establishing entitlement to damages and the potential for delay and appeals weighed in favor of settlement approval).

### 3. The Risk of Maintaining Class Action Status through Trial Supports Final Approval.

This factor weighs heavily in favor of final approval because this "risk" is always

present. First, the class must succeed in its motion to certify the class. Then it must defeat the inevitable motion to decertify. Then, if successful at trial, certification can yet again be challenged in the appellate proceedings. These issues weigh heavily in favor of final approval of this Settlement.

### 4. The Amount Offered in Settlement Supports Final Approval

Defendant will pay $6,500,000.00, less approved deductions, to the 324 settlement class members (after deduction for the two opt-outs). Each settlement class member will receive a substantial settlement payment, as discussed thoroughly above.

The amount of the Settlement is unquestionably substantial, and as Plaintiffs explained in detail at pages 11–16 of the Motion for Preliminary Approval, represents approximately a 42% recovery of the total estimated recoverable damages at issue in the case. As relevant here, "the Court's inquiry 'is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Ross v. Trex Co., Inc.*, 2013 WL 6622919, at *4 (N.D. Cal. 2013) (quoting *Hanlon*, 150 F.3d at 1027); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement in which the class received payments totaling 6% of potential damages). This settlement result far exceeds most wage and hour settlements, in terms of the percentage of the value of the claims being paid.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval

When litigation has advanced to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, while the parties settled after about one year of litigation, it was also within five months of the scheduled trial date. Thus, the parties had engaged in truly intensive and extensive litigation, allowing both sides to fully evaluate and understand their respective positions. Thus, the parties had extensive information about all relevant issues and were therefore able to analyze the strengths and weaknesses of their respective positions.

For these reasons, the extent of discovery and the proximity of the trial date decisively support final approval of the Settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

### 6. The Views of Experienced Counsel Support Final Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation omitted). Courts recognize that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In this case, Class Counsel are highly skilled in class action litigation, as evidenced by the declaration of Mr. Saltzman filed in connection with the motion for preliminary approval. *See* Dkt. No. 52-1, ¶ 29. He and the attorneys at his firm have all participated in numerous class actions, regularly file contested certification motions, and often succeed in the same. Under Mr. Saltzman's guidance, the firm has actively devoted itself to the steps needed to keep this case moving forward, and evaluated the pending Settlement at length, and has concluded that the proposed Settlement offers excellent benefits to the settlement class members, which is evidenced by the lack of any objections and only two opt-outs. Additionally, Defendant was represented by a very experienced and highly capable class action defense firm, one which has built up a national reputation in truck driver litigation and preemption issues. This factor further supports the settlement's fairness, adequacy, and reasonableness, given the expertise of Defendant's legal team in the precise issues involved in the case.

### 7. The Government Participant Factor Supports Final Approval

No government entity participated directly in this case, but Plaintiffs were designated by the State of California to represent its interests under PAGA. The Settlement allocates $150,000 to the PAGA claim, with 75% of that amount to be paid to the LWDA pursuant to Labor Code § 2699(l). This amount is well above amounts allocated and

approved in most other cases. *See McKenzie v. Fed. Express Corp.*, 2012 WL 12882124, at *5 (C.D. Cal. 2012). Furthermore, the PAGA penalties in this case would be largely duplicative of monies already provided under the Settlement, and thus the PAGA allocation here recognizes that any such PAGA award is within the Court's broad discretion. Plaintiffs provided the required notice to the LWDA of the settlement allocation, and the LWDA did not oppose the allocation. Saltzman Decl., ¶ 5.

### 8. The Reaction of the Settlement Class Supports Final Approval

Not one of the 326 settlement class members objected to the Settlement. The absence of objections to a proposed class action settlement supports a conclusion that the settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 529. Also demonstrating the high level of support for the Settlement, only two drivers, representing 0.61% of the settlement class, exercised their right to opt-out of the Settlement. Accordingly, this factor also decisively favors final approval of the Settlement.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court:

(a) find that the Settlement is fair, adequate, and reasonable;

(b) enter its order finally certifying the case for settlement purposes;

(c) enter the proposed Final Approval Order filed herewith;

(d) approve the concurrently pending motion for fees, costs, and incentive awards;

(e) grant any other relief the Court deems just and proper.

DATED: November 16, 2020            **MARLIN & SALTZMAN, LLP**


By:  s/ *Stanley D. Saltzman*
     Stanley D. Saltzman, Esq.
     Attorneys for Plaintiffs


4814-9942-9074, v. 5